IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CYPRESS LAKE SOFTWARE, INC. | § § § | |
| *Plaintiff,* | § | Civil Action No. 6:18–cv–30 |
| v. | § § | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS AMERICA, INC., | § § § | |
| *Defendant.* | § § | |

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cypress Lake Software, Inc. ("Cypress") files this complaint against Samsung Electronics America, Inc. ("Samsung" or "Defendant") alleging infringement of the following validly issued United States patents (the "Patents-in-Suit"):

1.      U.S. Patent No. 8,422,858, titled "Methods, systems, and computer program products for coordinating playing of media streams" (the '858 Patent);

2.      U.S. Patent No. 8,661,361, titled "Methods, systems, and computer program products for navigating between visual components" (the '361 Patent);

3.      U.S. Patent No. 8,781,299, titled "Methods, systems, and computer program products for coordinating playing of media streams" (the '299 Patent);

4.      U.S. Patent No. 8,787,731, titled "Methods, systems, and computer program products for coordinating playing of media streams" (the '731 Patent);

5.      U.S. Patent No. 8,902,054, titled "Methods, systems, and computer program products for managing operation of a portable electronic device" (the '054 Patent);

6.      U.S. Patent No. 8,983,264, titled "Methods, systems, and computer program products for coordinating playing of media streams" (the '264 Patent);

7.      U.S. Patent No. 9,195,765, titled "Method and apparatus for presenting content" (the '765 Patent);

8.      U.S. Patent No. 9,423,923, titled "Navigation methods, systems, and computer program products" (the '923 Patent);

9.      U.S. Patent No. 9,423,938, titled "Methods, systems, and computer program products for navigating between visual components" (the '938 Patent);

10.     U.S. Patent No. 9,423,954, titled "Graphical user interface methods, systems, and computer program products" (the '954 Patent);

11.     US. Patent No. 9,817,558, titled "Methods, systems, and computer program products for coordinating playing of media streams" (the '558 Patent);

12.     US. Patent No. 9,823,838, titled "Methods, systems, and computer program products for binding attributes between visual components" (the '838 Patent); and

13.     U.S. Patent No. 9,841,878, titled "Methods, systems, and computer program products for navigating between visual components" (the '878 Patent).

## NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.      Plaintiff Cypress Lake Software, Inc., is a Texas company with its principal place of business at 318 W. Dogwood Street, Woodville, Texas 75979.  Cypress is the owner and assignee of the Patents-in-Suit.

3.      On information and belief, Samsung Electronics America, Inc. is a company with a principal place of business at 105 Challenger Road, 6th Floor, Ridgefield Park, New

Jersey 07660. Samsung Electronics America, Inc. may be served through its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.

## JURISDICTION AND VENUE

4.     This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

5.     The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in this District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas; (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here; and (5) Samsung Electronics America, Inc. has been authorized to do business in the State of Texas by the Texas Secretary of State. Furthermore, Samsung Electronics America, Inc. has designated CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201, as its representative to accept service of process within the State of Texas.

6.     Defendant's ties with Texas and this District are extensive. Defendant operates several websites that sell and solicit sales of infringing products to consumers in this District and Texas (*see, e.g.,* Exhibits A & B); Defendant has partnered with numerous retailers to sell and solicit sales of infringing products to consumers in this District and Texas, both on-line and in stores (*see, e.g.,* Exhibits C & D); Defendant offers telephonic

and electronic support services for infringing products to customers in this District and Texas (*see* Exhibits E & F); Defendant has its U.S. mobile phone headquarters in Texas (*see* Exhibit G); Defendant has a regular and established place of business that employs people in Richardson, Texas, in this District (*see* Exhibit H); and has a registered agent of service in Texas (*see* above). Given these extensive contacts, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

7.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendant has committed acts of infringement in this District and has multiple regular and established places of business in this District.  *See* Table 1 below.

Table 1 -- Listing of 10 Defendant Samsung Electronics America, Inc.'s Regular and Established Places of Business located in Collin County, E.D. Texas.

| Collin County, Texas Property Records for Samsung Electronics America, Inc. | | | |
|---|---|---|---|
| **Samsung** | **Property ID** | **Year** | **Samsung Address in Collin County** |
| 1 | 2539782 | 2018 | 1100 Klein Rd \| Plano, TX  75074 |
| 2 | 2546587 | 2018 | 1301 E Lookout Dr \| Richardson, TX  75082 |
| 3 | 2642937 | 2018 | 3000 E Plano Pkwy \| Plano, TX  75074 |
| 4 | 2668772 | 2018 | 2505 N Plano Rd #03000 \| Richardson, TX  75082 |
| 5 | 2678950 | 2018 | 2800 Technology Dr #00200 \| Plano, TX  75074 |
| 6 | 2702808 | 2018 | 2800 Central Expy \| Plano, TX  75074 |
| 7 | 2702809 | 2018 | 1751 N Central Expy #0000C \| McKinney, TX  75070 |
| 8 | 2702811 | 2018 | 190 E Stacy Rd #03000 \| Allen, TX  75002 |
| 9 | 2702813 | 2018 | 3333 Preston Rd #00200 \| Frisco, TX  75034 |
| 10 | 2734174 | 2018 | 1600 10Th St #0000B \| Plano, TX  75074 |

8.     Samsung Electronics America, Inc. has been authorized to do business in the State of Texas by the Texas Secretary of State. Furthermore, Samsung Electronics America, Inc. has designated CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201, as its representative to accept service of process within the State of Texas.

9.    Samsung donates heavily in the Eastern District of Texas, including Marshall and nearby towns. For example, Marshall's winter festival—Samsung has its corporate logo plastered all over the town's ice-skating rink, which gets set up each year in the same downtown square as the federal courthouse.[1]   Samsung consistently grants scholarships to high school students in Marshall and Tyler, giving a total of $50,000 last year. *See fn1.* Winners receive photograph-worthy giant checks with a Samsung logo on them, and those images are often published in the local newspaper. The same check was on display in the Marshall News-Messenger when Samsung made a donation to Habitat for Humanity. No Samsung donation seems to be too small for the company's public relations team to promote. The Samsung Holiday Celebration Show, an $8,000 donation of monitors to Marshall High School, and a field trip to an Austin semiconductor plant that Samsung has invested in all made the Marshall News-Messenger. *See fn1.* On information and belief Samsung's marketing via sponsorship of charitable events continues in this district.

10.    Defendant does business in the State of Texas, Defendant has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Cypress's claims happened in the District, and Defendant is subject to personal jurisdiction in the District.

### *INTER PARTES* REVIEW BARRED

11.    In October 2016, Cypress sued Defendant on six of the Patents-in-Suit: the '299 Patent, the '361 Patent, the '264 Patent, the '923 Patent, the '938 Patent, and the '954 Patent (the "Prior Patents-at-Suit").   *Cypress Lake Software, Inc. v. Samsung C&T*

---

[1]    *See*   https://arstechnica.com/tech-policy/2015/02/patent-troll-claims-to-own-bluetooth-scores-15-7m-verdict-against-samsung/ as visited on January 25, 2018.

*America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016).[2] Under the one-year statutory bar set forth in 35 U.S.C. § 315(b), a petitioner must file a petition for *inter partes* review of a patent within one year of being served with a complaint for infringement of that patent.  The Patent and Trial and Appeal board has made it clear that the bar applies to complaints dismissed with prejudice, as was the case with the prior suit against Defendant. *LG Electronics, Inc. v. Mondis Technology Ltd.*, IPR2015-00937 (September 17, 2015). Thus, Defendant is now barred from seeking *inter partes* review of the Prior Patents-in-Suit.

## THE ACCUSED DEVICES

12.     Defendant designs, develops and/or manufactures devices that come installed with, or can be upgraded to, Google's Android or Chrome operating systems, including, but not limited to, its Galaxy Amp Prime 2, Sol 2, Halo, Note, Note 3, Note 4, Note 5, Note Edge, Xcover 4, J3, J3 Prime, J5, J7, J5 Pro, J7 Neo, J7 Prime, S4, S5, S5 Active, S5 Mini, S6, S6 Active, S6 Edge, S6 Edge+, S7, S7 Edge, G8, G8+ models of smartphones (*see* Exhibit 1; the "Accused Smartphones"); its Galaxy Tab A, Galaxy Tab 4, Galaxy Tab 4 Nook, Galaxy Tab E, Galaxy Tab E Nook, Galaxy Tab E Lite, Kids Tab E Lite, Galaxy View, Galaxy Tab S2 8.0, and Galaxy Tab S3 models of tablets (*see* Exhibit 2; the "Accused Tablets"); and certain Chromebook 2, Chromebook 3, Chromebook Plus Convertible, and Chromebook Pro models of Samsung laptops (*see* Exhibit 3; the "Accused Chromebooks").  Collectively, the "Accused Smartphones," the "Accused Tablets," and the "Accused Chromebooks" are the "Accused Devices."

---

[2] Cypress Lake Software substituted Samsung C&T with the correct Samsung entity – Samsung Electronics America, Inc. into this prior lawsuit in place of Samsung C&T.  *See Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016), Dkt. 2 (Amended Complaint naming Samsung Electronics America, Inc. as defendant); Dkt. 4 (Summons Returned Executed on Samsung Electronics America, Inc. on November 28, 2016.).

## COUNT 1:
## INFRINGEMENT OF U.S. PATENT NO. 8,422,858

13.     Cypress incorporates by reference the allegations in the paragraphs above.

14.     The '858 Patent is valid, enforceable, and was duly and legally issued on April

16, 2013.  It is entitled a presumption of validity under 35 U.S.C. § 282.

15.     Without a license or permission from Cypress, Defendant has infringed and

continues to infringe on one or more claims of the '858 Patent—directly, contributorily,

or by inducement—by importing, making, using, offering for sale, or selling products

and devices that embody the patented invention, including, without limitation, one or

more of the Accused Devices, in violation of 35 U.S.C. § 271.

16.     Defendant has been and now is directly infringing by, among other things,

practicing all of the steps of the '858 Patent and/or directing, controlling, and obtaining

benefits from its partners, distributors and retailers practicing all of the steps of the '858

Patent.  Specifically, Defendant imports the Accused Devices into the United States;

offers for sale and sells the Accused Devices via its own online store (*see* Exhibits A &

B), has partnered with numerous resellers to offer for sale and sell the Accused Devices

in the United States (*see, e.g.*, Exhibits C & D), generates revenue from sales of the

Accused Devices to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone

headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this

District (*see* Exhibit H), and has attended trade shows in the United States where it has

demonstrated the Accused Devices (*see, e.g.*, Exhibit I).

17.     Although Cypress is not obligated to identify specific claims or claim elements in

its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices

infringe at least Claim 14 of the '858 Patent which teaches

A non-transitory computer readable medium embodying a computer program, executable by a machine, for coordinating playing of media streams, the computer program comprising executable instructions for:

detecting a first media player access to a first presentation device to play a first media stream;

accessing first presentation focus information for determining whether the first media player has first presentation focus for playing the first media stream;

determining based on the first presentation focus information that the first media player does not have first presentation focus;

in response to determining the first media player does not have first presentation focus, indicating that the first media player is not allowed to play the first media stream;

detecting a change in the first presentation focus information;

determining, based on the detected change, that the first media player has first presentation focus; and

indicating, in response to determining the first media player has first presentation focus, that the first media player is allowed to play the first media stream via the first presentation device.

18.     The Accused Devices employ computer software—operating systems and applications—stored in their non-volatile memory systems ("[a] computer program product embodied on a non-transitory computer readable medium"). An Accused Device's operating system can tell when a user wishes to play a video or movie using a particular program ("detecting a first media player access to a first presentation device to play a first media stream … accessing first presentation focus information for determining whether the first media player has first presentation focus for playing the first media stream"). The operating system can tell whether a media player has priority to cast (it contains code for "determining based on the first presentation focus information that the first media player does not have first presentation focus").

19.     Additionally, if a media player (*e.g.*, YouTube) does not have presentation focus, the device indicates which device does have presentation focus (*e.g.*, Google Play Video, etc.) (it contains code for "in response to determining the first media player does not have first presentation focus, indicating that the first media player is not allowed to play the first media stream").  An Accused Device can also tell the user whether the video can be played on the television or other display (it contains code for "detecting a change in the first presentation focus information"), and can tell the user whether the video can be played on the device itself (it contains code for "determining, based on the detected change, that the first media player has first presentation focus").

20.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '858 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '858 Patent.  Such products include, without limitation, one or more of the Accused Devices.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '858 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '858 Patent under 35 U.S.C. § 271. Defendant is culpable for inducing its customers, retail partners,

and/or end users of the Accused Devices to infringe the '858 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '858 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '858 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '858 Patent under 35 U.S.C. § 271.

21.     Defendant's acts of infringement of the '858 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Cypress's exclusive rights under the '858 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

22.     Defendant has had actual knowledge of Cypress's rights in the '858 patent and details of Defendant's infringement based on at least the filing and service of this complaint. Additionally, Defendant had knowledge of the '858 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '858 Patent has been and continues to be willful.  Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake*

*Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).

23.     Furthermore, asserted claims of '858 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "a non-transitory computer readable medium embodying a computer program, executable by a machine, for coordinating playing of media streams, the computer program comprising executable instructions." Claim 14, '858 Patent.

24.     There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

## COUNT 2:
## INFRINGEMENT OF U.S. PATENT NO. 8,661,361

25.     Cypress incorporates by reference the allegations in the paragraphs above.

26.     The '361 Patent is valid, enforceable, and was duly and legally issued on February 25, 2014.  It is entitled a presumption of validity under 35 U.S.C. § 282.

27.     Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '361 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

28.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '361 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '361

Patent.  Specifically, Defendant imports the Accused Devices into the United States; offers for sale and sells the Accused Devices via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of the Accused Devices to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Devices (*see*, *e.g.*, Exhibit I).

29.     Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 199 of the '361 Patent which teaches

> A computer program product embodied on a non-transitory computer-readable medium comprising:
>
> code for presenting, in a first application region of a presentation space of a display device, a first visual component of a first application in a plurality of applications;
>
> code for presenting a first navigation control, in a first navigation region determined based on the first application region, for navigating to a second visual component, of a second application in the plurality, in a second application region in the presentation space, wherein the first navigation region is determined based on a location of at least one of the first visual component, a parent visual component of the first visual component, and a child visual component of the first visual component, the first navigation control including a representation of the second visual component;
>
> code for detecting a user input corresponding to the first navigation control; and
>
> code for sending, in response to detecting the user input, navigation information to navigate to the second visual component.

30.     The Accused Devices employ the Android Nougat operating system ("[a] computer program product embodied on a non-transitory computer readable medium").

Android Nougat comprises code for presenting, in an area ("a first application region") of an Accused Device's display ("a presentation space of a display device"), a window ("a first visual component") of one of multiple open applications ("a first application in a plurality of applications").

31.    Android Nougat comprises code for displaying a split-screen menu ("a first navigation control") in an area of the screen opposite to the moved window ("in a first navigation region determined based on the first application region … wherein the first navigation region is determined based on a location of at least one of the first visual component, a parent visual component of the first visual component, and a child visual component of the first visual component"), the menu containing a thumbnail of a second window ("the first navigation control including a representation of the second visual component") and intended so that the user can choose that window and display it adjacent to the first window on the screen ("for navigating to a second visual component, of a second application in the plurality, in a second application region in the presentation space").

32.    The user then simply chooses from the split screen menu the thumbnail of the window she wants to display adjacent the first window (Android Nougat therefore also includes "code for detecting a user input corresponding to the first navigation control"), and the Accused Device will display the second application window in the leftover space on the screen (Android Nougat therefore includes "code for sending, in response to detecting the user input, navigation information to navigate to the second visual component").

33.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '361

Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '361 Patent.  Such products include, without limitation, one or more of the Accused Devices.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '361 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '361 Patent under 35 U.S.C. § 271.   Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Devices to infringe the '361 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.,* 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '361 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '361 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '361 Patent under 35 U.S.C. § 271.

34.    Defendant's acts of infringement of the '361 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271.  Defendant's infringement of Cypress's exclusive rights under the '361

Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

35.     Defendant has had actual knowledge of Cypress's rights in the '361 patent and details of Defendant's infringement based on at least the filing and service of this complaint.  Additionally, Defendant had knowledge of the '361 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '361 Patent has been and continues to be willful.  Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).  Indeed, the '361 Patent was asserted in the previous lawsuit Cypress filed against Defendant in October 2016.  *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016).

36.     Furthermore, asserted claims of '361 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "code for presenting a first navigation control, in a first navigation region determined based on the first application

region, for navigating to a second visual component, of a second application in the plurality, in a second application region in the presentation space, wherein the first navigation region is determined based on a location of at least one of the first visual component, a parent visual component of the first visual component, and a child visual component of the first visual component, the first navigation control including a representation of the second visual component."  Claim 199, '361 Patent.

37.     There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

### COUNT 3:
### INFRINGEMENT OF U.S. PATENT NO. 8,781,299

38.     Cypress incorporates by reference the allegations in the paragraphs above.

39.     The '299 Patent is valid, enforceable, and was duly and legally issued on July 15, 2014.  It is entitled a presumption of validity under 35 U.S.C. § 282.

40.     Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '299 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

41.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '299 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '299 Patent.  Specifically, Defendant imports the Accused Devices into the United States; offers for sale and sells the Accused Devices via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of the

Accused Devices to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Devices (*see, e.g.*, Exhibit I).

42.     Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 1 of the '299 Patent which teaches

> A computer program product embodied on a non-transitory computer readable medium, comprising:
>
> code for working in association with a first presentation device having a touchscreen that is capable of providing access to a plurality of applications including a first media player and a second media player in an execution environment, the first presentation device capable of communication with a second presentation device including a display via a wireless local area network on which the first presentation device resides, where execution environment presentation focus information is accessible for identifying whether at least one of the first presentation device or the second presentation device is to be utilized for presentation in connection with the applications;
>
> code for detecting access to the first media player to play a first media stream that includes video;
>
> code for indicating, if the first presentation device is to be utilized for presentation based on the execution environment presentation focus information, that the first media player is allowed to play the first media stream via the first presentation device;
>
> code for indicating, if the second presentation device is to be utilized for presentation based on the execution environment presentation focus information, that the first media player is allowed to play the first media stream via the second presentation device;
>
> code for indicating, if both the first presentation device and the second presentation device are to be utilized for presentation based on the execution environment presentation focus information, that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device;

wherein the computer program product is operable such that a change
in presentation focus is capable of being based on at least one of a
releasing of a first presentation focus in connection with the first media
player, a detected user input indication for giving the second media
player second presentation focus, a change in input focus, a change in an
attribute of a user interface element, a count of media streams being
played, a ranking of media streams being played, a transparency level of
at least one of the user interface element, or another user interface
element sharing a region of a display of the first presentation device.

43.     The Accused Devices employ computer software—operating systems and
applications—stored in their non-volatile memory systems ("[a] computer program
product embodied on a non-transitory computer readable medium").  Using various
technologies, an Accused Device can play or "cast" its audio and video media, or the
contents of its screen, or other application(s), to other enabled devices such as stereos,
televisions, projectors, and computers. An Accused Device therefore contains software
that cooperates with it ("code for working in association with a first presentation device
having a touchscreen") to provide a user access to multiple applications ("capable of
providing access to a plurality of applications"), including at least two media players—
*e.g.*, two media playback programs such as Google Home app, Google Play Video,
Chrome browser, a combination of a media play program with Android OS, etc.—
("including a first media player and a second media player in an execution
environment"), and communicate with a television or other display ("the first
presentation device capable of communication with a second presentation device
including a display") over its wireless network ("via a wireless local area network on
which the first presentation device resides").

44.     An Accused Device's operating system can tell when a user wishes to play a
video or movie using a particular program ("code for detecting access to the first media
player to play a first media stream that includes video") and whether the video can be

played on the device itself (it contains "code for indicating … that the first media player is allowed to play the first media stream via the first presentation"), if so desired ("if the first presentation device is to be utilized for presentation device based on the execution environment presentation focus information").

45.     An Accused Device can tell the user whether the video can be played on the television or other display (it contains "code for indicating … that the first media player is allowed to play the first media stream via the second presentation device"), if so desired ("if the second presentation device is to be utilized for presentation based on the execution environment presentation focus information").  An Accused Device can also tell the user whether the video can be played on both the device and the television ("code for indicating … that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device"), if so desired ("if both the first presentation device and the second presentation device are to be utilized for presentation based on the execution environment presentation focus information").

46.     An Accused Device's operating system can also switch where a particular video is being displayed, and which video that is ("wherein the computer program product is operable such that a change in presentation focus is"), based on a number of inputs ("capable of being based on at least one of"), including, for example, choosing "Cast" ("detected user input indication for giving the second media player second presentation focus"), selecting "Cast" from the actual Chrome Operating System ("another user interface element sharing a region of a display of the first presentation device"), or perhaps having a higher-priority video or advertisement pop up ("ranking of media streams being played").

47.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '299 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '299 Patent.  Such products include, without limitation, one or more of the Accused Devices.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '299 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '299 Patent under 35 U.S.C. § 271. Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Devices to infringe the '299 Patent.  *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.,* 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '299 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '299 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '299 Patent under 35 U.S.C. § 271.

48.    Defendant's acts of infringement of the '299 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to

35 U.S.C. § 271.  Defendant's infringement of Cypress's exclusive rights under the '299 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

49.    Defendant has had actual knowledge of Cypress's rights in the '299 patent and details of Defendant's infringement based on at least the filing and service of this complaint.  Additionally, Defendant had knowledge of the '299 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '299 Patent has been and continues to be willful.  Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).  Indeed, the '299 Patent was asserted in the previous lawsuit Cypress filed against Defendant in October 2016.  *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016).

50.    Furthermore, asserted claims of '299 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "code for working in

association with a first presentation device having a touchscreen that is capable of providing access to a plurality of applications including a first media player and a second media player in an execution environment, the first presentation device capable of communication with a second presentation device including a display via a wireless local area network on which the first presentation device resides,." Claim 1, '299 Patent.

51.     There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

**COUNT 4:**
**INFRINGEMENT OF U.S. PATENT NO. 8,787,731**

52.     Cypress incorporates by reference the allegations in the paragraphs above.

53.     The '731 Patent is valid, enforceable, and was duly and legally issued on July 22, 2014.  It is entitled a presumption of validity under 35 U.S.C. § 282.

54.     Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '731 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

55.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '731 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '731 Patent.  Specifically, Defendant imports the Accused Devices into the United States; offers for sale and sells the Accused Devices via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States (*see, e.g.,* Exhibits C & D), generates revenue from sales of the Accused Devices to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone

headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Devices (*see*, *e.g.*, Exhibit I).

56.     Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 1 of the '731 Patent which teaches

> A computer program product embodied on a non-transitory computer readable medium, comprising:
>
> code for detecting a first media player access to a first presentation device to play a first media stream, where presentation focus information is accessible for identifying whether the first media player has first presentation focus for playing the first media stream;
>
> code for indicating, if the first media player has first presentation focus, that the first media player is allowed to play the first media stream via the first presentation device;
>
> code for detecting a second media player access to play a second media stream while the second media player does not have second presentation focus, where the second media stream is not played via the first presentation device while the second media player does not have second presentation focus; and
>
> code for indicating, if there is a change in the presentation focus information and the second media player has second presentation focus, that the second media player is allowed to play the second media stream via the first presentation device;
>
> wherein the computer program product is operable such that the change in the presentation focus information is based on at least one of a releasing of the first presentation focus in connection with the first media player, a detected user input indication for giving the second media player second presentation focus, a change in input focus, a change in an attribute of a user interface element, a count of media streams being played, a ranking of media streams being played, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device.

57.     The Accused Devices employ computer software—operating systems and applications—stored in their non-volatile memory systems ("[a] computer program product embodied on a non-transitory computer readable medium").  An Accused Device's operating system can tell when a user wishes to play a video or movie using a particular program ("code for detecting a first media player access to a first presentation device to play a first media stream") and whether the video can be played on the device itself (it contains "code for indicating … that the first media player is allowed to play the first media stream via the first presentation device"), if so desired ("if the first media player has first presentation focus").

58.     An Accused Device's operating system can tell when a user wishes to play a video or movie using a particular program ("code for detecting a second media player access to play a second media stream"). Additionally, an Accused Device's operating system allows for a first media player (*e.g.*, one of Home, Google Play Movies, YouTube, etc.) to stream a media stream while a second media player (*e.g.*, a second one of Home, Google Play Movies, YouTube, etc.) may be used play a media stream on the Accused Device.  An Accused Device can also tell the user whether the video can be played on the television or other display (it contains "code for indicating … that the second media player is allowed to play the second media stream via the first presentation device"), if so desired ("if there is a change in the presentation focus information and the second media player has second presentation focus").

59.     An Accused Device's operating system can also switch where a particular video is being displayed, and which video that is ("the computer program product is operable such that the change in the presentation focus information is based on") based on a number of inputs, including, for example, choosing "Cast" ("detected user input

indication for giving the second media player second presentation focus"), selecting "Cast" from the actual Chrome OS ("another user interface element sharing a region of a display of the first presentation device"), or perhaps having a higher-priority video or advertisement pop up ("a ranking of media streams being played").

60.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '731 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '731 Patent.  Such products include, without limitation, one or more of the Accused Devices. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. Such products have no substantial non-infringing uses and are for use in systems that infringe the '731 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '731 Patent under 35 U.S.C. § 271. Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Devices to infringe the '731 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.,* 843 F.3d 1315, 1335 (Fed. Cir. 2016).  Defendant had knowledge of the '731 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '731 Patent by actively inducing

infringement and/or is liable as contributory infringer of one or more claims of the '731 Patent under 35 U.S.C. § 271.

61.    Defendant's acts of infringement of the '731 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271.  Defendant's infringement of Cypress's exclusive rights under the '731 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

62.    Defendant has had actual knowledge of Cypress's rights in the '731 patent and details of Defendant's infringement based on at least the filing and service of this complaint.  Additionally, Defendant had knowledge of the '731 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '731 Patent has been and continues to be willful. Defendant's infringement of the '731 Patent has been and continues to be willful. Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself.  *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).

63.     Furthermore, asserted claims of '731 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "code for detecting a first media player access to a first presentation device to play a first media stream, where presentation focus information is accessible for identifying whether the first media player has first presentation focus for playing the first media stream."  Claim 1, '731 Patent.

64.     There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

## COUNT 5:
## INFRINGEMENT OF U.S. PATENT NO. 8,902,054

65.     Cypress incorporates by reference the allegations in the paragraphs above.

66.     The '054 Patent is valid, enforceable, and was duly and legally issued on December 2, 2014.  It is entitled a presumption of validity under 35 U.S.C. § 282.

67.     Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '054 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Smartphones, in violation of 35 U.S.C. § 271.

68.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '054 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '054 Patent.  Specifically, Defendant imports the Accused Smartphones into the United States; offers for sale and sells the Accused Smartphones via its own online store (*see*

Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Smartphones in the United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of the Accused Smartphones to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Smartphones (*see*, *e.g.*, Exhibit I).

69.     Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.   For example, the Accused Smartphones infringe at least Claim 1 of the '054 Patent which teaches

> A method comprising:
>
> storing code on a computer readable medium for being executed by one or more processors for:
>
> determining whether at least one aspect of a text message is to be prevented based on at least one of a plurality of policies, the determining whether the at least one aspect of the text message is to be prevented including presenting to at least one of an operator or a user, via a portable electronic device, at least one user interface element for allowing the at least one of the operator or the user to provide at least one user input for preventing the at least one aspect of the text message;
>
> determining whether at least one aspect of a call is to be prevented based on at least one of the plurality of policies, the determining whether the at least one aspect of the call is to be prevented including presenting to at least one of the operator or the user, via the portable electronic device, at least one user interface element for allowing the least one of the operator or the user to provide at least one user input for preventing the at least one aspect of the call;
>
> receiving, from a component of an automotive vehicle, a first information attribute about at least one component of the automotive vehicle at the portable electronic device, the first information attribute including an identifier;
>
> receiving the first information attribute about the automotive vehicle including the identifier via the portable electronic device by presenting

at least one user interface element via the portable electronic device and detecting user input via the portable electronic device; and

after receiving the first information attribute both from the component of the automotive vehicle and via the user input via the portable electronic device and determining that the portable electronic device is communicatively coupled to the component of the automotive vehicle via a particular protocol, automatically preventing:

the at least one aspect of the text message based on the determination whether the at least one aspect of the text message is to be prevented, and

the at least one aspect of the call based on the determination whether the at least one aspect of the call is to be prevented.

70.    The Accused Smartphones employ computer software—operating systems and applications—stored in their non-volatile memory systems ("[a] computer program product embodied on a non-transitory computer readable medium").   An Accused Smartphone's operating system can restrict a message from being displayed while the device is in Android Auto mode.   Android Auto includes configurable settings ("a plurality of policies") which can be set by the user ("to provide at least one user input for preventing the at least one aspect of the text message").

71.    An Accused Smartphone's operating system can connect to a vehicle via a Bluetooth connection. The Bluetooth pairing process will reveal information (*e.g.*, source, identification, device pairing key, device id, etc.) ("a first information attribute about at least one component of the automotive vehicle at the portable electronic device, the first information attribute including an identifier").  A user can provide a selection of the vehicle to which it is desired to pair the device ("at least one user interface element via the portable electronic device and detecting user input via the portable electronic device").

72.     An Accused Smartphone's operating system can determine if the device is connected (*e.g.*, via Bluetooth, via Auto launch, etc.) to the vehicle. In response, calls may be restricted and messages may be prevented from being displayed while Android Auto is activated ("after receiving the first information attribute both from the component of the automotive vehicle and via the user input via the portable electronic device and determining that the portable electronic device is communicatively coupled to the component of the automotive vehicle via a particular protocol, automatically preventing: the at least one aspect of the text message based on the determination whether the at least one aspect of the text message is to be prevented, and the at least one aspect of the call based on the determination whether the at least one aspect of the call is to be prevented.").

73.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '054 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '054 Patent.  Such products include, without limitation, one or more of the Accused Smartphones.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '054 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. By making, using, importing offering for sale, and/or selling such products, Defendant

injured Cypress and is thus liable to Cypress for infringement of the '054 Patent under 35 U.S.C. § 271. Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Smartphones to infringe the '054 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '054 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '054 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '054 Patent under 35 U.S.C. § 271.

74.    Defendant's acts of infringement of the '054 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271.  Defendant's infringement of Cypress's exclusive rights under the '054 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

75.    Defendant has had actual knowledge of Cypress's rights in the '054 patent and details of Defendant's infringement based on at least the filing and service of this complaint. Additionally, Defendant had knowledge of the '054 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '054 Patent has been and continues to be willful.  Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*,

Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).

76.     Furthermore, asserted claims of '054 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "determining whether at least one aspect of a text message is to be prevented based on at least one of a plurality of policies, the determining whether the at least one aspect of the text message is to be prevented including presenting to at least one of an operator or a user, via a portable electronic device, at least one user interface element for allowing the at least one of the operator or the user to provide at least one user input for preventing the at least one aspect of the text message." Claim 1, '054 Patent.

77.     There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

### COUNT 6:
### INFRINGEMENT OF U.S. PATENT NO. 8,983,264

78.     Cypress incorporates by reference the allegations in the paragraphs above.

79.     The '264 Patent is valid, enforceable, and was duly and legally issued on March 17, 2015.  It is entitled a presumption of validity under 35 U.S.C. § 282.

80.     Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '264 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products

and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

81.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '264 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '264 Patent.   Specifically, Defendant imports the Accused Devices into the United States; offers for sale and sells the Accused Devices via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States (*see, e.g.,* Exhibits C & D), generates revenue from sales of the Accused Devices to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Devices (*see, e.g.,* Exhibit I).

82.     Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.   For example, the Accused Devices infringe at least Claim 61 of the '264 Patent which teaches

> A computer program product embodied on a non-transitory computer readable medium, comprising:
>
> code for working in association with a first presentation device having a touchscreen that is capable of providing access to a first media player and a second media player in an execution environment, the first presentation device capable of communication with a second presentation device including a display via a wireless local area network on which the first presentation device resides, where presentation focus information is accessible for identifying whether at least one of the first presentation device or the second presentation device is to be utilized for presentation;
>
> code for detecting access to the first media player to play a first media stream that includes video;

code for indicating, if the first presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the first presentation device; and

code for indicating, if the second presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the second presentation device;

wherein the computer program product is operable such that a change in presentation focus is capable of being based on at least one of a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player a second presentation focus, a change in input focus, a change in an attribute of a user interface element, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device.

83.    The Accused Devices employ computer software—operating systems and applications—stored in their non-volatile memory systems ("[a] computer program product embodied on a non-transitory computer readable medium").   Using various technologies, an Accused Device can play or "cast" its audio and video media, or the contents of its screen, or other application(s), to other enabled devices such as stereos, televisions, projectors, and computers. An Accused Device therefore contains software that cooperates with it ("code for working in association with a first presentation device having a touchscreen") to provide a user access to multiple applications ("capable of providing access to a plurality of applications"), including at least two media players—*e.g.*, two media playback programs such as Google Home app, Google Play Video, a combination of a media play program with Android OS, etc.—("including a first media player and a second media player in an execution environment"), and communicate with a television or other display ("the first presentation device capable of communication

with a second presentation device including a display") over its wireless network ("via a wireless local area network on which the first presentation device resides").

84.     An Accused Device's operating system can tell when a user wishes to play a video or movie using a particular program ("code for detecting access to the first media player to play a first media stream that includes video") and  whether the video can be played on the device itself (it contains "code for indicating … that the first media player is allowed to play the first media stream via the first presentation device"), if so desired ("if the first presentation device is to be utilized for presentation based on the presentation focus information").

85.     An Accused Device can also tell the user whether the video can be played on the television or other display (it contains "code for indicating … that the first media player is allowed to play the first media stream via the second presentation device"), if so desired ("if the second presentation device is to be utilized for presentation based on the presentation focus information").

86.     An Accused Device's operating system can also switch where a particular video is being displayed, and which video that is ("the computer program product is operable such that a change in presentation focus is capable") based on a number of inputs, including, for example, choosing "Cast" ("detected user input indication for giving the second media player second presentation focus"), selecting "Cast" from the actual Chrome Operating System ("another user interface element sharing a region of a display of the first presentation device"), or perhaps having a higher-priority video or advertisement pop up ("ranking of media streams being played").

87.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '264

Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '264 Patent.  Such products include, without limitation, one or more of the Accused Devices. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. Such products have no substantial non-infringing uses and are for use in systems that infringe the '264 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '264 Patent under 35 U.S.C. § 271. Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Devices to infringe the '264 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016).  Defendant had knowledge of the '264 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '264 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '264 Patent under 35 U.S.C. § 271.

88.     Defendant's acts of infringement of the '264 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271.  Defendant's infringement of Cypress's exclusive rights under the '264

Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

89.     Defendant has had actual knowledge of Cypress's rights in the '264 patent and details of Defendant's infringement based on at least the filing and service of this complaint. Additionally, Defendant had knowledge of the '264 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '264 Patent has been and continues to be willful.  Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).  Indeed, the '264 Patent was asserted in the previous lawsuit Cypress filed against Defendant in October 2016.  *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016).

90.     Furthermore, asserted claims of '264 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "wherein the computer program product is operable such that a change in presentation focus is capable of being

based on at least one of a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player a second presentation focus, a change in input focus, a change in an attribute of a user interface element, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device." Claim 61, '264 Patent.

91.     There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

## COUNT 7:
## INFRINGEMENT OF U.S. PATENT NO. 9,195,765

92.     Cypress incorporates by reference the allegations in the paragraphs above.

93.     The '765 Patent is valid, enforceable, and was duly and legally issued on November 24, 2015.  It is entitled a presumption of validity under 35 U.S.C. § 282.

94.     Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '765 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, certain Accused Smartphones and Accused Tablets, in violation of 35 U.S.C. § 271.

95.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '765 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '765 Patent.  Specifically, Defendant imports the Accused Smartphones and Accused Tablets into the United States; offers for sale and sells the Accused Smartphones and Accused Tablets via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Smartphones and Accused Tablets in the

United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of the Accused Smartphones and Accused Tablets to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Smartphones and Accused Tablets (*see*, *e.g.*, Exhibit I).

96.     Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.   For example, the Accused Smartphones and Accused Tablets infringe at least Claim 1 of the '765 Patent which teaches

> An apparatus, comprising:
>
> a mobile device including at least one processor communicatively coupled to at least one input/output component, at least one interface, a memory, and at least one location sensor, the mobile device configured for:
>
> displaying, utilizing the at least one input/output component, a plurality of packages developed by a plurality of different third party developers, at least one of the plurality of packages including at least one rule with at least one event criteria for controlling presentation triggering;
>
> receiving, utilizing the at least one input/output component, a user selection of the at least one package, resulting in one or more selected packages including the at least one rule with the at least one event criteria for controlling presentation triggering;
>
> receiving, utilizing the at least one interface, at least a portion of the one or more selected packages;
>
> storing, utilizing the memory, the one or more selected packages;
>
> receiving, utilizing the at least one external interface, at least a portion of content from at least one server in communication with the mobile device via a network, after the at least portion of the one or more selected packages is received;

identifying, utilizing the at least one location sensor, location data, after the at least portion of the one or more selected packages is received;

identifying, utilizing the at least one processor, an event, based on the at least one rule with the at least one event criteria, and the location data, after the at least portion of the one or more selected packages is received;

presenting, utilizing the at least one input/output component, a message in response to the identification of the event;

receiving, utilizing the at least one input/output component, user input after the presentation of the message; and

presenting, utilizing the at least one input/output component, at least part of the content, in response to the user input.

97.     Each of Samsung's Accused Smartphones and Accused Tablets running the Android Nougat Operating System is an apparatus comprised of at least one processor (*e.g.*, Qualcomm Snapdragon) configured to communicate with an input/output component display (*e.g.*, touch display), at least one interface (keyboard and/or touchscreen), memory (RAM and hard drive) and a location sensor (*e.g.*, GPS, etc.). An Accused Smartphone or Accused Tablet can display loyalty cards, gift cards, offers, and credit cards.   Such cards can be developed by third-party companies (*e.g.*, Walgreens, Coca-Cola, Chase, etc.) and include event criteria (*e.g.*, localization, geolocation, geonotification, etc.).   Such event criteria can be used to control presentation of the card.

98.     An Accused Smartphone or Accused Tablet can receive content updates from a server after the card has been added to Android Pay (capable of "receiving, utilizing the at least one external interface, at least a portion of content from at least one server in communication with the mobile device via a network, after the at least portion of the one or more selected packages is received").

99.     An Accused Smartphone or Accused Tablet can identify a location (capable of "identifying, utilizing the at least one location sensor, location data, after the at least portion of the one or more selected packages is received"). Additionally, Android Pay can notify the user of the Accused Smartphone or Accused Tablet if, for example, the device comes within a set proximity of a predetermined location (capable of "identifying, utilizing the at least one processor, an event, based on the at least one rule with the at least one event criteria, and the location data, after the at least portion of the one or more selected packages is received").

100.    In response to identifying the location, an Accused Smartphone or Accused Tablet can present a message (capable of "presenting, utilizing the at least one input/output component, a message in response to the identification of the event").  A user can then select the message (capable of "receiving, utilizing the at least one input/output component, user input after the presentation of the message") and content may then be displayed (capable of "presenting, utilizing the at least one input/output component, at least part of the content, in response to the user input").

101.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '765 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '765 Patent.  Such products include, without limitation, one or more of the Accused Smartphones and Accused Tablets.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '765 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding

that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '765 Patent under 35 U.S.C. § 271. Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Smartphones and Accused Tablets to infringe the '765 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '765 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '765 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '765 Patent under 35 U.S.C. § 271.

102.    Defendant's acts of infringement of the '765 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Cypress's exclusive rights under the '765 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

103.    Defendant has had actual knowledge of Cypress's rights in the '765 patent and details of Defendant's infringement based on at least the filing and service of this complaint. Additionally, Defendant had knowledge of the '765 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '765 Patent has been and continues to be willful. Cypress has sued several other manufacturers and distributors of Android

smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).

104.    Furthermore, asserted claims of '765 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "displaying, utilizing the at least one input/output component, a plurality of packages developed by a plurality of different third-party developers, at least one of the plurality of packages including at least one rule with at least one event criteria for controlling presentation triggering." Claim 1, '765 Patent.

105.    There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

## COUNT 8:
## INFRINGEMENT OF U.S. PATENT NO. 9,423,923

106.    Cypress incorporates by reference the allegations in the paragraphs above.

107.    The '923 Patent is valid, enforceable, and was duly and legally issued on August 23, 2016.  It is entitled a presumption of validity under 35 U.S.C. § 282.

108.     Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '923 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and Smartphones that embody the patented invention, including, without limitation, one or more of the Accused Smartphones and Accused Tablets, in violation of 35 U.S.C. § 271.

109.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '923 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '923 Patent.  Specifically, Defendant imports the Accused Smartphones and Accused Tablets into the United States; offers for sale and sells the Accused Smartphones and Accused Tablets via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Smartphones and Accused Tablets in the United States (*see, e.g.,* Exhibits C & D), generates revenue from sales of the Accused Smartphones and Accused Tablets to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Smartphones and Accused Tablets (*see, e.g.,* Exhibit I).

110.     Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.   For example, the Accused Smartphones and Accused Tablets infringe at least Claim 4 of the '923 Patent which teaches

An apparatus, comprising:

at least one processor configured for communication with:

a display,

at least one input device, and

memory;

said apparatus configured to:

utilize the memory to store a plurality of applications including a first application and a second application;

utilize the display to display a first window of the first application of the plurality of applications;

utilize the at least one input device to receive first user input for at least one of moving or re-sizing the first window of the first application;

utilize the display to at least one of move or re-size the first window of the first application, in response to the first user input;

utilize the display to display a menu in a first location with respect to a location of the first window, if the first user input takes the form of a first input and is predetermined to cause menu display, where the menu in the first location is outside the first window and includes a plurality of elements corresponding to the plurality of applications that are operating except the first application;

utilize the display to display the menu in a second location with respect to the location of the first window, if the first user input takes the form of a second input and is predetermined to cause menu display, where the menu in the second location is outside the first window and includes the plurality of elements corresponding to the plurality of applications that are operating except the first application;

utilize the at least one input device to receive second user input on one of the plurality of elements of the menu corresponding to the second application;

utilize the display to display a second window of the second application of the plurality of applications, in response to the second user input;

utilize the at least one input device to receive third user input for at least one of moving or re-sizing the second window of the second application; and

utilize the display to at least one of move or re-size the second window of the second application, in response to the third user input.

111.    Each of Samsung's Accused Smartphones and Accused Tablets running the Android Nougat Operating System is an apparatus comprised of at least one processor (*e.g.*, Qualcomm Snapdragon) configured to communicate with an input/output component display (*e.g.*, touch display), at least one interface (keyboard and/or touchscreen), memory (RAM and hard drive) and a location sensor (*e.g.*, GPS, etc.).

112.    An Accused Smartphone or Accused Tablet can receive a user input via keyboard and/or touchscreen ("utilize the at least one input device to receive first user input") to move and re-size the window ("mov[e] [and] re-siz[e] the first window of the first application, in response to the first user input"). This is accomplished by long pressing the Overview button (the square button) while the application window is displayed, dragging the application window to one area (*e.g.*, side, top, etc.) of the screen from the menu, etc., thereby causing the application window to move into place. Half of the screen will feature the application which was previously shown on the display, and the other half will show a menu of previously-used applications.

113.    An Accused Smartphone or Accused Tablet will then activate the "split screen" feature and display a menu of thumbnails of other open applications in an area of the screen opposite to the first application window.  For example, if the user input places the device in landscape mode and activates the split screen feature via the Overview button, the window is moved to the left side of the screen ("if the first user input takes the form of a first input and is predetermined to cause menu display"), the split screen feature will display a menu of thumbnails in the right half of the screen ("display a menu in a first location with respect to a location of the first window … where the menu in the first location is outside the first window and includes a plurality of elements

corresponding to the plurality of applications that are operating except the first application.").

114.   Conversely, if the user input places the device in portrait mode and thereafter activates the split screen feature via the Overview button, the window is moved to the top side of the screen ("if the first user input takes the form of a second input and is predetermined to cause menu display"), the split screen feature will display a menu of thumbnails in the bottom half of the screen ("display a menu in a second location with respect to a location of the first window … where the menu in the second location is outside the first window and includes a plurality of elements corresponding to the plurality of applications that are operating except the first application.").

115.   The user then simply chooses the thumbnail of the window he wants to display beside the first window ("utilize the at least one input device to receive second user input on one of the plurality of elements of the menu corresponding to the second application"), and the Accused Smartphone or Accused Tablet will display the second application window in the leftover space on the screen ("utilize the display to display a second window of the second application of the plurality of applications, in response to the second user input").

116.   The user may then select the vertical border between the two windows and drag it left or right to re-size the second window relative to the first ("utilize the at least one input device to receive third user input for at least one of moving or re-sizing the second window of the second application") and the Accused Smartphone or Accused Tablet will re-size the windows on the screen accordingly ("utilize the display to at least one of move or re-size the second window of the second application, in response to the third user input").

117.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '923 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '923 Patent.  Such products include, without limitation, one or more of the Accused Smartphones and Accused Tablets.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '923 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '923 Patent under 35 U.S.C. § 271. Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Smartphones and Accused Tablets to infringe the '923 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016).  Defendant had knowledge of the '923 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '923 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '923 Patent under 35 U.S.C. § 271.

118.    Defendant's acts of infringement of the '923 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to

35 U.S.C. § 271.  Defendant's infringement of Cypress's exclusive rights under the '923 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

119.   Defendant has had actual knowledge of Cypress's rights in the '923 patent and details of Defendant's infringement based on at least the filing and service of this complaint.  Additionally, Defendant had knowledge of the '923 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '923 Patent has been and continues to be willful.   Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).   Indeed, the '923 Patent was asserted in the previous lawsuit Cypress filed against Defendant in October 2016.  *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016).

120.   Furthermore, asserted claims of '923 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "utilize the display to display a

menu in a first location with respect to a location of the first window, if the first user input takes the form of a first input and is predetermined to cause menu display, where the menu in the first location is outside the first window and includes a plurality of elements corresponding to the plurality of applications that are operating except the first application."  Claim 4, '923 Patent.

121.    There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

## COUNT 9:
## INFRINGEMENT OF U.S. PATENT NO. 9,423,938

122.    Cypress incorporates by reference the allegations in the paragraphs above.

123.    The '938 Patent is valid, enforceable, and was duly and legally issued on August 23, 2016.  It is entitled a presumption of validity under 35 U.S.C. § 282.

124.    Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '938 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and Smartphones that embody the patented invention, including, without limitation, one or more of the Accused Smartphones and Accused Tablets, in violation of 35 U.S.C. § 271.

125.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '938 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '938 Patent.  Specifically, Defendant imports the Accused Smartphones and Accused Tablets into the United States; offers for sale and sells the Accused Smartphones and Accused Tablets via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Smartphones and Accused Tablets in the

United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of the Accused Smartphones and Accused Tablets to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Smartphones and Accused Tablets (*see*, *e.g.*, Exhibit I).

126.    Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.   For example, the Accused Smartphones and Accused Tablets infringe at least Claim 1 of the '938 Patent which teaches

> A computer program product embodied on a non-transitory computer readable medium, comprising:
>
> code configured to work in conjunction with an apparatus including:
>
> at least one processor,
>
> a display in communication with the at least one processor,
>
> at least one input device in communication with the at least one processor, and
>
> memory in communication with the at least one processor;
>
> said code configured to:
>
> utilize the memory to store a plurality of applications including a first application and a second application;
>
> utilize the display to display a first window of the first application of the plurality of applications;
>
> utilize the at least one input device to receive first user input;
>
> utilize the at least one processor to determine if the first user input is predetermined to cause menu display, and to determine if the first user input takes a form of a first input or a second input;
>
> utilize the display to display a menu in a first location with respect to a location of the first window, if it is determined that the first user input takes the form of the first input and is predetermined to cause menu

display, where the menu in the first location is outside the first window and includes a plurality of elements corresponding to the plurality of applications that are operating except the first application since the first window is already displayed;

utilize the display to display the menu in a second location with respect to the location of the first window, if it is determined that the first user input takes the form of the second input and is predetermined to cause menu display, where the menu in the second location is outside the first window and includes the plurality of elements corresponding to the plurality of applications that are operating except the first application since the first window is already displayed;

utilize the at least one input device to receive second user input for at least one of moving or re-sizing the first window of the first application;

utilize the display to at least one of move or re-size the first window of the first application, in response to the second user input;

utilize the display to at least one of move or re-size the elements of the menu, in response to the second user input;

utilize the at least one input device to receive third user input on one of the plurality of elements of the menu corresponding to the second application; and

utilize the display to display a second window of the second application of the plurality of applications, in response to the third user input.

127. Each of Samsung's Accused Smartphones and Accused Tablets employ computer software—operating systems and applications—stored in their non-volatile memory systems ("[a] computer program product embodied on a non-transitory computer readable medium"). Further, such OS may be configured to work with a accused device comprised of at least one processor (*e.g.*, Qualcomm Snapdragon), a display (*e.g.*, touch display), at least one input device (keyboard and/or touchscreen), and memory (RAM and hard drive), all in communication with the processor.

128. An Accused Smartphone or Accused Tablet can store multiple applications ("a plurality of applications") in its memory—for example, an instance of Photos ("a first application") and an instance of Chrome ("a second application")—and display the first

application in a window ("display a first window of the first application of the plurality of applications").

129.    An Accused Smartphone Accused Tablet can receive a user input via keyboard and/or touchscreen ("utilize the at least one input device to receive first user input") to move and re-size the window. This is accomplished by long pressing the Overview button (the square button) while the application window is displayed, dragging the application window to one area (*e.g.*, side, top, etc.) of the screen from the menu, etc., thereby causing the application window to move into place. Half of the screen will feature the application which was previously shown on the display, and the other half will show a menu of previously-used applications.

130.    An Accused Smartphone Accused Tablet will then activate the "split screen" feature and display a menu of thumbnails of other open applications in an area of the screen opposite to the first application window.  For example, if the user input places the device in landscape mode and activates the split screen feature via the Overview button, the window is moved to the left side of the screen ("if it is determined that the first user input takes the form of the first input and is predetermined to cause menu display"), the split screen feature will display a menu of thumbnails in the right half of the screen ("display a menu in a first location with respect to a location of the first window … where the menu in the first location is outside the first window and includes a plurality of elements corresponding to the plurality of applications that are operating except the first application.").

131.    Conversely, if the user input places the Accused Smartphone or Accused Tablet in portrait mode and thereafter activates the split screen feature via the Overview button, the window is moved to the top side of the screen ("if it is determined that the

first user input takes the form of the second input and is predetermined to cause menu display"), the split screen feature will display a menu of thumbnails in the bottom half of the screen ("display the menu in a second location with respect to the location of the first window … where the menu in the second location is outside the first window and includes the plurality of elements corresponding to the plurality of applications that are operating except the first application.").

132.    The user may then select the vertical border between the two windows and drag it left or right to re-size the second window relative to the first ("utilize the at least one input device to receive third user input for at least one of moving or re-sizing the second window of the second application") and the Accused Smartphone or Accused Tablet will re-size the windows on the screen accordingly ("utilize the display to at least one of move or re-size the second window of the second application, in response to the third user input").

133.    The user then simply chooses the thumbnail of the window he wants to display beside the first window (the Accused Smartphone or Accused Tablet "receive[s] third user input on one of the plurality of elements of the menu corresponding to the second application"), and the Accused Smartphone or Accused Tablet will display the second application window in the leftover space on the screen ("display a second window of the second application of the plurality of applications, in response to the third user input").

134.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '938 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one

or more claims of the '938 Patent.  Such products include, without limitation, one or more of the Accused Smartphones and Accused Tablets.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '938 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '938 Patent under 35 U.S.C. § 271. Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Smartphones and Accused Tablets to infringe the '938 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.,* 843 F.3d 1315, 1335 (Fed. Cir. 2016).  Defendant had knowledge of the '938 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '938 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '938 Patent under 35 U.S.C. § 271.

135.    Defendant's acts of infringement of the '938 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271.  Defendant's infringement of Cypress's exclusive rights under the '938 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

136.    Defendant has had actual knowledge of Cypress's rights in the '938 patent and details of Defendant's infringement based on at least the filing and service of this

complaint. Additionally, Defendant had knowledge of the '938 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '938 Patent has been and continues to be willful.   Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).   Indeed, the '938 Patent was asserted in the previous lawsuit Cypress filed against Defendant in October 2016.  *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016).

137.   Furthermore, asserted claims of '938 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "utilize the at least one processor to determine if the first user input is predetermined to cause menu display, and to determine if the first user input takes a form of a first input or a second input." Claim 1, '938 Patent.

138.   There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

## COUNT 10:
## INFRINGEMENT OF U.S. PATENT NO. 9,423,954

139.    Cypress incorporates by reference the allegations in the paragraphs above.

140.    The '954 Patent is valid, enforceable, and was duly and legally issued on August 23, 2016.  It is entitled a presumption of validity under 35 U.S.C. § 282.

141.    Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '954 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

142.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '954 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '954 Patent.  Specifically, Defendant imports the Accused Devices into the United States; offers for sale and sells the Accused Devices via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States (*see, e.g.*, Exhibits C & D), generates revenue from sales of the Accused Devices to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Devices (*see, e.g.*, Exhibit I).

143.    Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 14 of the '954 Patent which teaches

       An apparatus, comprising:

at least one processor configured for coupling with memory and a touchscreen, and further configured for:

storage of a plurality of applications including a first application, a second application, and a third application, utilizing the memory, the applications including a first program component and a second program component;

detection of a first user input;

in response to the first user input, presentation of, utilizing the touchscreen, a first window associated with the first program component including at least one user interface element;

detection of a second user input in connection with the at least one user interface element of the first window;

in response to the second user input in connection with the at least one user interface element of the first window, creation of a second window associated with the second program component and presentation thereof, utilizing the touchscreen, adjacent to and not overlapping with respect to the first window, for presenting, in the second window, data associated with the at least one user interface element of the first window;

detection of a third user input; and

in response to the third user input, change, utilizing the touchscreen, the presentation of the first window and the second window, such that a first size of the first window and a second size of the second window are both changed, and the second window remains adjacent to and not overlapping with respect to the first window.

144.     Each of Samsung's Accused Devices running the Android Nougat Operating System is an apparatus comprised of at least one processor (*e.g.*, Qualcomm Snapdragon) configured to communicate with an input/output component display (*e.g.*, touch display), at least one interface (keyboard and/or touchscreen), memory (RAM and hard drive) and a location sensor (*e.g.*, GPS, etc.). An Accused Device running Android Nougat can store three (or more) applications in its memory ("storage of a first application, a second application, and a third application, utilizing the memory"), the

applications including at least two instances running ("the applications including a first program component and a second program component") in separate tabs.

145.    An Accused Device can detect a user input via the touchscreen ("detection of a first user input") to move and re-size an application window to either side of the screen. This is accomplished by long pressing the Overview button (the square button) while the application window is displayed, dragging the application window to one area (*e.g.*, side, top, etc.) of the screen from the menu, etc., thereby causing the application window to move into place. Half of the screen will feature the application which was previously shown on the display, and the other half will show a menu of previously-used applications. The Accused Device will display the first instance of the Chrome application ("present[], utilizing the touchscreen, a first window associated with the first program component"), for instance, and its graphical user interface "tab" ("including at least one user interface element").

146.    The user may then (the Accused Device "detect[s] a second user input") select and "pull" the second tab out of the first window, e.g. by selecting to "Move to other window," etc. ("in connection with the at least one user interface element of the first window") and the Device will display it in a window ("creat[e] a second window associated with the second program component and presentation thereof, utilizing the touchscreen [and] present[], in the second window, data associated with the at least one user interface element of the first window") in the other half of the screen ("adjacent to and not overlapping with respect to the first window").

147.    The user may then select the vertical border between the two windows and drag it left or right to re-size the second window relative to the first (the Accused Touchscreen Device "detect[s] a third user input") and the Accused Touchscreen

Device will then re-size the windows on the screen accordingly ("in response to the third user input, change, utilizing the touchscreen, the presentation of the first window and the second window, such that a first size of the first window and a second size of the second window are both changed, and the second window remains adjacent to and not overlapping with respect to the first window").

148.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '954 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '954 Patent.  Such products include, without limitation, one or more of the Accused Devices.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '954 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '954 Patent under 35 U.S.C. § 271.  Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Devices to infringe the '954 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.,* 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '954 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '954 Patent by

actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '954 Patent under 35 U.S.C. § 271.

149.    Defendant's acts of infringement of the '954 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271.  Defendant's infringement of Cypress's exclusive rights under the '954 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

Defendant has had actual knowledge of Cypress's rights in the '954 patent and details of Defendant's infringement based on at least the filing and service of this complaint. Additionally, Defendant had knowledge of the '954 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '954 Patent has been and continues to be willful. Cypress sued two other manufacturers and distributors of Android smartphones, HP and LG, in October 2016, more than six months before filing the original complaint in this case.  *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016).  Indeed, the '954 Patent was asserted in the previous lawsuit Cypress filed against Defendant in October 2016.  *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016).

150.    Furthermore, asserted claims of '954 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "in response to the second user

input in connection with the at least one user interface element of the first window, creation of a second window associated with the second program component and presentation thereof, utilizing the touchscreen, adjacent to and not overlapping with respect to the first window, for presenting, in the second window, data associated with the at least one user interface element of the first window." Claim 14, '954 Patent.

151.    There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

## COUNT 11:
## INFRINGEMENT OF U.S. PATENT NO. 9,817,558

152.    Cypress incorporates by reference the allegations in the paragraphs above.

153.    The '558 Patent is valid, enforceable, and was duly and legally issued on November 14, 2017.  It is entitled a presumption of validity under 35 U.S.C. § 282.

154.    Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '558 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Devices, in violation of 35 U.S.C. § 271.

155.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '558 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '558 Patent.  Specifically, Defendant imports the Accused Devices into the United States; offers for sale and sells the Accused Devices via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of the Accused Devices to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone

headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Devices (*see*, *e.g.*, Exhibit I).

156.   Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.  For example, the Accused Devices infringe at least Claim 1 of the '558 Patent which teaches

> A first presentation device, comprising:
>
> a non-transitory memory storing instructions;
>
> a touchscreen; and
>
> one or more processors in communication with the non-transitory memory and the touchscreen, wherein the one or more processors execute the instructions to:
>
>> provide access to a first media player and a second media player in an execution environment, the first presentation device capable of communication with a second presentation device including a display via a wireless network on which the first presentation device resides, where presentation focus information is accessible for identifying whether at least one of the first presentation device or the second presentation device is to be utilized for presentation;
>>
>> detect access to the first media player to play a first media stream that includes video;
>>
>> indicate, if the first presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the first presentation device; and
>>
>> indicate, if the second presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the second presentation device;
>
> wherein the first presentation device is operable such that a change in presentation focus is capable of being based on at least one of a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player a

second presentation focus, a change in input focus, a change in an
attribute of a user interface element, a count of media streams being
played, a ranking of media streams being played, a transparency level of
at least one of the user interface element, or another user interface
element sharing a region of a display of the first presentation device.

157.   The Accused Devices include a first presentation device (e.g., a Samsung Galaxy
S8 smartphone, etc.) comprising: a non-transitory memory (e.g., 64 Gigabytes of
internal read-only memory (ROM), etc.) storing instructions; a touchscreen; and one or
more processors (e.g., an MSM 8998 Octa-Core 2.3 GHz processor, etc.) in
communication with the non-transitory memory and the touchscreen.

158.   The Accused Devices contain one or more processors that execute the
instructions to: provide access to a first media player (e.g., a YouTube window, etc.) and
a second media player (e.g., a Google Play window, etc.) in an execution environment,
the first presentation device (e.g., the Samsung Galaxy S8 smartphone, etc.) capable of
communication with a second presentation device (e.g., an external device available for
screening to which the first presentation device may cast video content, etc.) including a
display via a wireless network (e.g., a home Wi-Fi network, etc.) on which the first
presentation device resides, where presentation focus information is accessible for
identifying whether at least one of the first presentation device (e.g., the Samsung
Galaxy S8 smartphone, etc.) or the second presentation device (e.g., an external device
available for screening to which the first presentation device may cast video content,
etc.) is to be utilized for presentation.

159.   The Accused Devices detect access to the first media player (e.g., the YouTube
window, etc.) to play a first media stream (e.g., a YouTube presentation, etc.) that
includes video. The Accused Devices also indicate if the first presentation device (e.g.,
the Samsung Galaxy S8 smartphone, etc.) is to be utilized for presentation based on the

presentation focus information, that the first media stream (e.g., the YouTube presentation, etc.) is allowed to be presented via the first presentation device (e.g., the Samsung Galaxy S8 smartphone, etc.).

160.    The Accused Devices indicate if the second presentation device (e.g., the external device available for screening to which the first presentation device may cast video content, etc.) is to be utilized for presentation based on the presentation focus information, that the first media stream (e.g., the YouTube presentation, etc.) is allowed to be presented via the second presentation device (e.g., the external device available for screening to which the first presentation device may cast video content, etc.).

161.    The Accused Devices (e.g., the Samsung Galaxy S8 smartphone, etc.) are operable such that a change in presentation focus is capable of being based on at least one of a releasing of a first presentation focus in connection with the first media player (e.g., the YouTube window, etc.), a detected user input indication for giving the second media player (e.g., the Google Play window, etc.) a second presentation focus (e.g., choosing Cast on the first presentation device in the first media player and/or second media player, etc.) a change in input focus, a change in an attribute of a user interface element, a count of media streams being played, a ranking of media streams being played, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display (e.g., selecting "Cast_from the actual Android Operating System, etc.) of the first presentation device (e.g., the Samsung Galaxy S8 smartphone, etc.)..

162.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '558 Patent in the State of Texas, in this judicial district, and elsewhere in the United States,

by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '558 Patent.  Such products include, without limitation, one or more of the Accused Devices.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '558 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '558 Patent under 35 U.S.C. § 271.  Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Devices to infringe the '558 Patent.  *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.,* 843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '558 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '558 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '558 Patent under 35 U.S.C. § 271.

163.    Defendant's acts of infringement of the '558 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271.  Defendant's infringement of Cypress's exclusive rights under the '558 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

164.     Defendant has had actual knowledge of Cypress's rights in the '558 patent and details of Defendant's infringement based on at least the filing and service of this complaint. Additionally, Defendant had knowledge of the '558 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '558 Patent has been and continues to be willful.   Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).

165.     Furthermore, asserted claims of '558 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "provide access to a first media player and a second media player in an execution environment, the first presentation device capable of communication with a second presentation device including a display via a wireless network on which the first presentation device resides, where presentation focus information is accessible for identifying whether at least one of the

first presentation device or the second presentation device is to be utilized for presentation." Claim 1, '558 Patent.

166.    There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

**COUNT 12:**
**INFRINGEMENT OF U.S. PATENT NO. 9,823,838**

167.    Cypress incorporates by reference the allegations in the paragraphs above.

168.    The '838 Patent is valid, enforceable, and was duly and legally issued on November 21, 2014.  It is entitled a presumption of validity under 35 U.S.C. § 282.

169.    Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '838 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Smartphones and Accused Tablets, in violation of 35 U.S.C. § 271.

170.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '838 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '838 Patent.  Specifically, Defendant imports the Accused Smartphones and Accused Tablets into the United States; offers for sale and sells the Accused Smartphones and Accused Tablets via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Smartphones and Accused Tablets in the United States (*see, e.g.,* Exhibits C & D), generates revenue from sales of the Accused Smartphones and Accused Tablets to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United

States where it has demonstrated the Accused Smartphones and Accused Tablets (*see*, *e.g.*, Exhibit I).

171.    Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.   For example, the Accused Smartphones and Accused Tablets infringe at least Claim 1 of the '838 Patent which teaches

> An apparatus, comprising: at least one processor; an input device operatively coupled to the at least one processor; a screen operatively coupled to the at least one processor; and memory operatively coupled to the at least one processor;
>
> said memory operatively coupled to the at least one processor configured to store a first application, a second application, and a third application;
>
> said input device operatively coupled to the at least one processor configured to detect, utilizing the at least one processor, a first user input;
>
> said screen operatively coupled to the at least one processor configured to present, utilizing the at least one processor, an application window representation group including a plurality of application window representations including a second application window representation associated with the second application and a third application window representation associated with the third application;
>
> said screen operatively coupled to the at least one processor configured to, in response to the first user input, present, utilizing the at least one processor, a first window for presenting first data associated with the first application;
>
> said input device operatively coupled to the at least one processor configured to detect, utilizing the at least one processor, a second user input;
>
> said screen operatively coupled to the at least one processor configured to, in response to the second user input, present, utilizing the at least one processor, a second window for presenting second data associated with the second application where a first size of the first window is sized to fit a second size of the second window on the screen, such that a first

border of the first window corresponds to a second border of the second window;

said input device operatively coupled to the at least one processor configured to detect, utilizing the at least one processor, a third user input;

said screen operatively coupled to the at least one processor configured to, in response to the third user input, change, utilizing the at least one processor, the presentation of the first window and the second window, such that the first border of the first window remains visible in correspondence based on the second border of the second window.

172.   The Accused Smartphones and Tablets include an apparatus, comprising: at least one processor (e.g., a 1.4GHz Octa-Core processor, etc.); an input device (e.g., a touchscreen, etc.) operatively coupled to the at least one processor; a screen (e.g., an extra-large 6" display, etc.) operatively coupled to the at least one processor; and memory (e.g., 16 Gigabytes of internal memory, etc.) operatively coupled to the at least one processor.

173.   The Accused Smartphones and Tablets include a memory operatively coupled to the at least one processor configured to store a first application (e.g., a Google Chrome application, etc.), a second application (e.g., a Google Mail application, etc.), and a third application (e.g., Google Photos application, etc.). The Accused Smartphones and Tablets also include said input device operatively coupled to the at least one processor configured to detect, utilizing the at least one processor, a first user input (e.g., pressing on the graphical representation of the Google Chrome application, etc.).

174.   The Accused Smartphones and Tablets include said screen operatively coupled to the at least one processor configured to present, utilizing the at least one processor, an application window representation group including a plurality of application window representations including a second application window representation associated with the second application (e.g., a thumbnail representation of a Google Photos application,

etc.) and a third application window representation associated with the third application (e.g., a thumbnail representation of a Google Mail application, etc.).

175.    The Accused Smartphones and Tablets include said screen operatively coupled to the at least one processor configured to, in response to the first user input (e.g., pressing on the thumbnail representation of a Google Chrome application, etc.), present, utilizing the at least one processor, a first window for presenting first data associated with the first application (e.g., the Google Chrome application, etc.).

176.    The Accused Smartphones and Tablets include said input device operatively coupled to the at least one processor configured to detect, utilizing the at least one processor, a second user input (e.g., pressing and holding the small, square window-selection button in the lower right portion of the display, etc.).

177.    The Accused Smartphones and Tablets include a screen operatively coupled to the at least one processor configured to, in response to the second user input (e.g., pressing on the thumbnail representation of another application, etc.), present, utilizing the at least one processor, a second window for presenting second data associated with the second application where a first size of the first window is sized to fit a second size of the second window on the screen, such that a first border of the first window corresponds to a second border of the second window (e.g., initiating split screen mode, etc.).

178.    The Accused Smartphones and Tablets include an input device operatively coupled to the at least one processor configured to detect, utilizing the at least one processor, a third user input (e.g., dragging the border defining the now split screen presentation in order to resize both windows simultaneously, etc.).

179.    The Accused Smartphones and Tablets include a screen operatively coupled to the at least one processor configured to, in response to the third user input (e.g., dragging the border defining the now split screen presentation in order to resize both windows simultaneously, etc.), change, utilizing the at least one processor, the presentation of the first window and the second window, such that the first border of the first window remains in correspondence (e.g., remains visually connected to, etc.)based on the second border of the second window.

180.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '838 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '838 Patent. Such products include, without limitation, one or more of the Accused Smartphones and Accused Tablets.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '838 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '838 Patent under 35 U.S.C. § 271.  Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Smartphones and Accused Tablets to infringe the '838 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.,*

843 F.3d 1315, 1335 (Fed. Cir. 2016). Defendant had knowledge of the '838 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '838 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '838 Patent under 35 U.S.C. § 271.

181.    Defendant's acts of infringement of the '838 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Cypress's exclusive rights under the '838 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

182.    Defendant has had actual knowledge of Cypress's rights in the '838 patent and details of Defendant's infringement based on at least the filing and service of this complaint. Additionally, Defendant had knowledge of the '838 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses. Defendant's infringement of the '838 Patent has been and continues to be willful. Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress*

*Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).

183.    Furthermore, asserted claims of '838 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is patentable subject matter claiming, among other things, "said screen operatively coupled to the at least one processor configured to, in response to the third user input, change, utilizing the at least one processor, the presentation of the first window and the second window, such that the first border of the first window remains in correspondence based on the second border of the second window."  Claim 1, '838 Patent.

184.    There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

## COUNT 13:
## INFRINGEMENT OF U.S. PATENT NO. 9,841,878

185.    Cypress incorporates by reference the allegations in the paragraphs above.

186.    The '878 Patent is valid, enforceable, and was duly and legally issued on December 12, 2017.

187.    Without a license or permission from Cypress, Defendant has infringed and continues to infringe on one or more claims of the '878 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Smartphones and Accused Tablets, in violation of 35 U.S.C. § 271.

188.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '878 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '878

Patent.  Specifically, Defendant imports the Accused Smartphones and Accused Tablets into the United States; offers for sale and sells the Accused Smartphones and Accused Tablets via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Smartphones and Accused Tablets in the United States (*see, e.g.*, Exhibits C & D), generates revenue from sales of the Accused Smartphones and Accused Tablets to U.S. customers via such outlets (*see id.*), has its U.S. mobile phone headquarters in Texas (*see* Exhibit G), employs people in Richardson, Texas, in this District (*see* Exhibit H), and has attended trade shows in the United States where it has demonstrated the Accused Smartphones and Accused Tablets (*see, e.g.*, Exhibit I).

189.    Although Cypress is not obligated to identify specific claims or claim elements in its complaint, it does so here for Defendant's benefit.   For example, the Accused Smartphones and Accused Tablets infringe at least Claim 1 of the '878 Patent which teaches

> An apparatus, comprising:
>
> a device including at least one processor operatively coupled to a display and non-transitory memory, the memory storing a plurality of applications including a first application and a second application, the device configured to:
>
> present, utilizing the at least one processor and the display, a first window of the first application in a presentation space of the display;
>
> detect, utilizing the at least one processor, first user input;
>
> in response to the detection of the first user input, present, utilizing the at least one processor and the display, a representation of a second window of the second application in a menu, in a particular region of the presentation space of the display, for displaying the second window of the second application in the presentation space of the display in response to a detection of a second user input in connection with the representation of the second window, the particular region:

> located in a first location adjacent to a second location of the
> first window,
>
> operable for being re-sized in response to the first window being
> re-sized, and
>
> operable for being hidden in response to the first window being
> maximized;

detect, utilizing the at least one processor, the second user input in
connection with the representation of the second window of the second
application; and

in response to the detection of the second user input in connection with
the representation of the second window of the second application,
present, utilizing the at least one processor and the display, the second
window of the second application;

wherein the apparatus is configured such that the menu is located in the
first location if the first user input includes a first particular input, and
the menu is located in a third location if the first user input includes a
second particular input.

190.    Each of Samsung's Accused Smartphones and Accused Tablets running the

Android Nougat Operating System is an apparatus comprised of a device including at

least one processor operatively coupled to a display (*e.g.*, LCD, etc.) and non-transitory

memory (*e.g.*, RAM, etc.). The memory stores a plurality of applications including a first

application (*e.g.*, Google Chrome, etc.) and a second application (*e.g.*, Google Gmail,

etc.).

191.    An Accused Smartphone or Accused Tablet can present, utilizing the at least one

processor and the display, a first window of the first application (*e.g.*, Google Chrome,

etc.) in a presentation space of the display.

192.    An Accused Smartphone or Accused Tablet can detect, utilizing the at least one

processor, first user input (*e.g.*, a long press of the Overview (square) button while the

first window is displayed, that is preceded or followed by a rotation of the Accused

Smartphone or Accused Tablet into a portrait or landscape orientation, etc.).  Further,

in response to the detection of the first user input, an Accused Smartphone or Accused Tablet can present, utilizing the at least one processor and the display, a representation of a second window of the second application (*e.g.*, Google Gmail, etc.) in a menu, in a particular region of the presentation space of the display (*e.g.*, below the first window), for displaying the second window of the second application in the presentation space of the display in response to a detection of a second user input (*e.g.*, touch input, etc.) in connection with the representation of the second window.  The particular region is: located in a first location adjacent to (*e.g.*, below, etc.) a second location of the first window, operable for being re-sized in response to the first window being re-sized, and operable for being hidden in response to the first window being maximized.

193.    An Accused Smartphone or Accused Tablet can detect, utilizing the at least one processor, the second user input (*e.g.*, touch input, etc.) in connection with the representation of the second window of the second application *(e.g.*, Google Gmail, etc.). Further, in response to the detection of the second user input in connection with the representation of the second window of the second application, an Accused Accused Smartphone or Accused Tablet can present, utilizing the at least one processor and the display, the second window of the second application.

194.    An Accused Smartphone or Accused Tablet is configured such that the menu is located in the first location (*e.g.*, below the first window, etc.) if the first user input includes a first particular input (*e.g.*, user input to rotate the Accused Smartphone or Accused Tablet into a landscape orientation before or after the long press of the Overview (square) button while the application window is displayed, etc.), and the menu is located in a third location (*e.g.*, to a side of the first window, etc.) if the first user input includes a second particular input (*e.g.*, user input to rotate the Accused Smartphone or

Accused Tablet into a landscape orientation before or after the long press of the Overview (square) button while the application window is displayed, etc.).

195.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '878 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '878 Patent. Such products include, without limitation, one or more of the Accused Smartphones and Accused Tablets.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '878 Patent. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses. *See id.* at 1321. By making, using, importing offering for sale, and/or selling such products, Defendant injured Cypress and is thus liable to Cypress for infringement of the '878 Patent under 35 U.S.C. § 271.  Defendant is culpable for inducing its customers, retail partners, and/or end users of the Accused Smartphones and Accused Tablets to infringe the '878 Patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.,* 843 F.3d 1315, 1335 (Fed. Cir. 2016).  Defendant had knowledge of the '878 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '878 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '878 Patent under 35 U.S.C. § 271.

196.    Defendant's acts of infringement of the '878 Patent have caused damage to Cypress, and Cypress is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271.  Defendant's infringement of Cypress's exclusive rights under the '878 Patent will continue to damage Cypress, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

197.    Defendant has had actual knowledge of Cypress's rights in the '878 patent and details of Defendant's infringement based on at least the filing and service of this complaint.  Additionally, Defendant had knowledge of the '878 patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses.  Defendant's infringement of the '878 Patent has been and continues to be willful.  Cypress has sued several other manufacturers and distributors of Android smartphones and Chromebooks in the last 15 months, including the Defendant itself. *See Cypress Lake Software, Inc. v. HP, Inc.*, Case No. 6:16-cv-1249-RWS (E.D. Tex. Oct. 22, 2016); *Cypress Lake Software, Inc. v. LG Electronics USA, Inc.*, Case No. 6:16-cv-1250-RWS (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. Samsung C&T America, Inc.*, Case 6:16-cv-1252, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ASUS Computer International*, Case 6:16-cv-1247, (E.D. Tex. Oct. 28, 2016); *Cypress Lake Software, Inc. v. ZTE (USA), INC.*, Case 6:17-cv-0300, (E.D. Tex. May 12, 2017); *Cypress Lake Software, Inc. v. Blackberry Corporation.*, Case 6:17-cv-0692, (E.D. Tex. Dec. 15, 2017).

198.    Furthermore, asserted claims of '878 Patent does not involve a law of nature, a natural phenomenon, or an abstract idea. Specifically, this is not a copyright IP right. This is not computer code that the USPTO allowed claims to issue. Instead, it is

patentable subject matter claiming, among other things, "in response to the detection of the first user input, present, utilizing the at least one processor and the display, a representation of a second window of the second application in a menu, in a particular region of the presentation space of the display, for displaying the second window of the second application in the presentation space of the display in response to a detection of a second user input in connection with the representation of the second window, the particular region."  Claim 1, '878 Patent.

199.    There is nothing abstract in the manner in which the asserted claims embody the accused functionality.

## REQUEST FOR RELIEF

Cypress incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)     enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)     enter a judgment awarding Cypress all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)     enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions,

successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)     enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Cypress all other relief that the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Cypress demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
Ian Ramage
  California Bar No. 224881
  iramage@ghiplaw.com
**GARTEISER HONEA, P.C.**
795 Folsom Street, Floor 1
San Francisco, California 94107
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*Counsel for Cypress Lake Software, Inc.*