**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| CYPRESS LAKE SOFTWARE, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:18-cv-30-JDK |
| SAMSUNG ELECTRONICS AMERICA, INC., | § § § | LEAD CONSOLIDATED CASE |
| Defendant. | § § § | |

**MEMORANDUM OPINION AND ORDER ON CLAIM CONSTRUCTION**

On March 14, 2019, the Court held a hearing to determine the proper construction of the disputed claim terms in United States Patent Nos. 8,661,361 ("the '361 Patent"), 9,423,938 ("the '938 Patent"), 9,423,923 ("the '923 Patent"), 9,841,878 ("the '878 Patent"), 9,823,838 ("the '838 Patent"), 9,870,145 ("the '145 Patent"), 9,423,954 ("the '954 Patent"), 8,781,299 ("the '299 Patent"), 8,983,264 ("the '264 Patent"), 9,871,558 ("the '558 Patent"), and 8,787,731 ("the '731 Patent") (collectively, "the Asserted Patents").[1] The Court has considered the arguments made by the parties at the hearing and in their claim construction briefs. Docket Nos. 105, 108, & 112.[2] The Court has also considered the intrinsic evidence and made subsidiary factual findings about the extrinsic evidence. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The Court issues this Memorandum and Order on Claim Construction in light of these considerations.

---

[1] Plaintiff also asserts U.S. Patent No. 8,422,858 ("the '858 Patent"), but the parties do not dispute the proper construction of any claim terms from that patent.

[2] Citations to the parties' filings are to the filing's number in the docket (Docket No.) and pin cites are to the page numbers assigned through ECF.

# TABLE OF CONTENTS

I.  BACKGROUND ........................................................................................................ 3

    A.  The '361, '938, '923, and '878 Patent ............................................................ 3

    B.  The '299, '264, '731 and '558 Patents ............................................................ 4

    C.  The '838, '145, and '954 Patent ...................................................................... 5

II.  APPLICABLE LAW ................................................................................................ 6

III.  LEVEL OF ORDINARY SKILL IN THE ART .................................................... 12

IV.  CONSTRUCTION OF AGREED TERMS .............................................................. 13

V.  CONSTRUCTION OF DISPUTED TERMS .......................................................... 16

    A.  "application" (Group A) .............................................................................. 17

    B.  ". . . presentation of . . .  a first window associated with the first program component . . .  creation of a second window associated with the second program component" (Group B) .................................................................................... 21

    C.  "more convenient" and "permits a user to conveniently enter"  (Group C)  24

    D.  "code for" terms in the '361 Patent (Group E) ............................................. 28

    E.  "navigation element handler component" and "navigation director component" (Group M) ................................................................................ 45

    F.  "code for detecting access" terms (Group F) ............................................. 54

    G.  "code for indicating" terms (Group G) ....................................................... 63

    H.  '145 Patent "instructions to" terms (Group H) ............................................ 75

    I.  '558 Patent "instructions to" terms (Group I) .............................................. 84

    J.  '938 Patent "code configured to" terms (Group J) ....................................... 96

    K.  '923 Patent and '878 Patent "device configured to" terms (Group K) ...... 103

    L.  '838 Patent "processor configured for" terms (Group L) .......................... 111

    M.  "the application window representations are presented before the detection of the first user input" (Group N) .................................................................. 116

    N.  "first window of the first application" / "application window" (Group O) 119

VI.  CONCLUSION ....................................................................................................... 122

# I. BACKGROUND

## A. The '361, '938, '923, and '878 Patents

The '361, '938, '923, and '878 Patents share substantially the same specification. These patents generally relate to navigating between different applications whose windows are simultaneously displayed on a computer screen. *See, e.g.*, '361 Patent at 1:38–51. The specification of the '361 Patent states that having multiple applications running and displayed at the same time creates a cluttered screen of overlapping windows. '361 Patent at 1:7–26. Thus, when multiple applications are simultaneously displayed in an overlapping manner, finding the desired application "may require a user to repeat a similar and/or same set of movements over and over." *Id.* According to the specification, the disclosed embodiments provide a solution to the need "for navigating between visual components." *Id.* The '938, '923, and '878 Patents claim priority to the '361 Patent.

Claim 17 of the '361 Patent is an exemplary claim and recites the following elements (disputed term in italics):

> 17. A system for navigating between visual components, the system comprising:
> a processor that executes an instruction included in at least one of a presentation space monitor component, an application navigator component, a *navigation element handler component*, and a *navigation director component* during operation of the system;
> the presentation space monitor component that during operation of the system detects, in a first application region of a presentation space of a display device, a first visual component of a first operating *application* in a plurality of operating *applications*;
> the application navigator component that during operation of the system presents a first navigation control, in a first navigation region determined based on the first application region, for navigating to a second visual component, of a second application in the plurality, in a second application region in the presentation space, wherein the first navigation region is determined based on a location of at

least one of the first visual component, a parent visual component of the first visual component, and a child visual component of the first visual component;

*the navigation element handler component that during operation* of the system *detects a user input corresponding to the first navigation control*; and

*the navigation director component that during* operation of the system *sends, in response to detecting the user input, navigation information to navigate to the second visual component.*

## B. The '858, '299, '264, '731 and '558 Patents

The '858, '299, '264, '731, and '558 Patents are all titled "Methods, Systems, and Computer Program Products For Coordinating Playing of Media Streams." These patents share a common specification. The specification states that the disclosed embodiments address a problem that occurs when multiple media streams play simultaneously, thereby creating "interference" and "lead[ing] to an unpleasant listening experience." *See, e.g.*, '299 Patent at 1:20–43. The specification adds that a need exists for coordinating playing of media streams. *Id.* To achieve this coordination, the specification discloses "presentation focus," which indicates that a first media player is allowed to play a first media stream, and a second media player is not allowed to play a second media stream. *See e.g., id.* at 12:60–13:8.

Claim 1 of the '299 Patent is an exemplary claim and recites the following elements (disputed term in italics):

1. A computer program product embodied on a non-transitory computer readable medium, comprising:

code for working in association with a first presentation device having a touchscreen that is capable of providing access to a plurality of applications including a first media player and a second media player in an execution environment, the first presentation device capable of communication with a second presentation device including a display via a wireless local area network on which the first presentation device resides, where execution environment presentation focus information is accessible for identifying whether at least one of the first presentation device or the second

presentation device is to be utilized for presentation in connection with the applications;

*code for detecting access to the first media player to play a first media stream that includes video*;

*code for indicating*, if the first presentation device is to be utilized for presentation based on the execution environment presentation focus information, *that the first media player is allowed to play the first media stream via the first presentation device*;

*code for indicating*, if the second presentation device is to be utilized for presentation based on the execution environment presentation focus information, *that the first media player is allowed to play the first media stream via the second presentation device*;

*code for indicating*, if both the first presentation device and the second presentation device are to be utilized for presentation based on the execution environment presentation focus information, *that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device*;

wherein the computer program product is operable such that a change in presentation focus is capable of being based on at least one of a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player second presentation focus, a change in input focus, a change in an attribute of a user interface element, a count of media streams being played, a ranking of media streams being played, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device.

## C.     The '838, '145, and '954 Patents

The '838, '145, and '954 Patents generally relate to the integration of applications that run simultaneously on a computer. *See, e.g.*, '954 Patent at 1:20–37. These patents share substantially the same specification. Claim 14 of the '954 Patent is an exemplary claim and recites the following elements (disputed term in italics):

14. An apparatus, comprising:
at least one processor configured for coupling with memory and a touchscreen, and further configured for:
storage of a plurality of *applications* including a first *application*, a second *application*, and a third *application*, utilizing the

memory, the applications including a first program component and a second program component;

detection of a first user input;

in response to the first user input, *presentation of*, utilizing the touchscreen, *a first window associated with the first program component* including at least one user interface element;

detection of a second user input in connection with the at least one user interface element of the first window;

in response to the second user input in connection with the at least one user interface element of the first window, *creation of a second window associated with the second program component* and presentation thereof, utilizing the touchscreen, adjacent to and not overlapping with respect to the first window, for presenting, in the second window, data associated with the at least one user interface element of the first window;

detection of a third user input; and

in response to the third user input, change, utilizing the touchscreen, the presentation of the first window and the second window, such that a first size of the first window and a second size of the second window are both changed, and the second window remains adjacent to and not overlapping with respect to the first window.

## II.    APPLICABLE LAW

### A.    Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To determine the meaning of the claims, courts start by considering the intrinsic evidence.  *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  The intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.  The general rule—subject to certain specific exceptions discussed *infra*—is that each claim

term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry. . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples

appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alts., Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported

assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* The Supreme Court recently explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

**B.    35 U.S.C. § 112(6) (pre-AIA) / § 112(f) (AIA)[3]**

A patent claim may be expressed using functional language. *See* 35 U.S.C. § 112, ¶ 6; *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347–49 & n.3 (Fed. Cir. 2015) (en banc in relevant portion). Section 112, paragraph 6, provides that a structure may be claimed as a "means . . . for performing a specified function" and that an act may be claimed as a "step for performing a specified function." *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002).

But § 112, ¶ 6 does not apply to all functional claim language. There is a rebuttable presumption that § 112, ¶ 6 applies when the claim language includes "means" or "step for" terms, and that it does not apply in the absence of those terms. *Masco Corp.*, 303 F.3d at 1326; *Williamson*, 792 F.3d at 1348. The presumption stands or falls according to whether one of ordinary skill in the art would understand the claim with the functional language, in the context of

---

[3] Because the application resulting in the '361 Patent w a s  filed before  the effective date of the America Invents Act ("AIA"), the Court refers to the  pre-AIA version of § 112.

the entire specification, to denote sufficiently definite structure or acts for performing the function. *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir. 2015) (§ 112, ¶ 6 does not apply when "the claim language, read in light of the specification, recites sufficiently definite structure" (quotation marks omitted) (citing *Williamson*, 792 F.3d at 1349; *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014))); *Williamson*, 792 F.3d at 1349 (§ 112, ¶ 6 does not apply when "the words of the claim are understood by persons of ordinary skill in the art to have sufficiently definite meaning as the name for structure"); *Masco Corp.*, 303 F.3d at 1326 (§ 112, ¶ 6 does not apply when the claim includes an "act" corresponding to "how the function is performed"); *Personalized Media Communications, L.L.C. v. International Trade Commission*, 161 F.3d 696, 704 (Fed. Cir. 1998) (§ 112, ¶ 6 does not apply when the claim includes "sufficient structure, material, or acts within the claim itself to perform entirely the recited function . . . even if the claim uses the term 'means.'") (quotation marks and citation omitted).

When it applies, § 112, ¶ 6 limits the scope of the functional term "to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson*, 792 F.3d at 1347. Construing a means-plus-function limitation involves multiple steps. "The first step . . . is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). "[T]he next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* The focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function."

*Id.* The corresponding structure "must include all structure that actually performs the recited function." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). However, § 112, ¶ 6 does not permit "incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).

For § 112, ¶ 6 limitations implemented by a programmed general purpose computer or microprocessor, the corresponding structure described in the patent specification must include an algorithm for performing the function. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999). The corresponding structure is not a general purpose computer but rather the special purpose computer programmed to perform the disclosed algorithm. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).

## C.    Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 2124. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 2130. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *Id.* at 2130 n.10. "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783

F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Likewise, when a subjective term is used in a claim, "the court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005); *accord Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (citing *Datamize*, 417 F.3d at 1351).

## III. LEVEL OF ORDINARY SKILL IN THE ART

It is well established that patents are interpreted from the perspective of one of ordinary skill in the art. *See Phillips*, 415 F.3d at 1313 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."). The Federal Circuit has advised that the "[f]actors that may be considered in determining the level of skill in the art include: (1) the educational level of the inventors; (2) the type of problems encountered in the art; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; (5) sophistication of the technology; and (6) education level of active workers in the field." *Env'tl Designs, Ltd. v. Union Oil Co. of California*, 713 F.2d 693, 696 (Fed. Cir. 1983). "These factors are not exhaustive but are merely a guide to determining the level of ordinary skill in the art." *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).

Plaintiff's expert, Dr. Ahmed Tewfik, states that he agrees with and adopts the Court's previous finding for the appropriate level of ordinary skill in the art, namely that a person of ordinary skill in the art would have (a) at least a Bachelor's degree in Electrical Engineering, Computer Engineering, Computer Science, or equivalent thereof and (b) at least two years of programming experience. Docket No. 105-15 at ¶ 27. Defendants' expert, Dr. Dan Schonfeld, opines that a person of ordinary skill in the art "would have (a) at least at least a Bachelor's degree in Electrical Engineering, Computer Engineering, Computer Science, or equivalent thereof and (b)

at least two years of work experience relating to multimedia streaming and user interfaces." Docket No. 108-2 at ¶15. Having considered the parties' proposals, and the factors that may be considered in determining the level of skill in the art, the Court finds that a person of ordinary skill in the art would have a Bachelor's degree in Electrical Engineering, Computer Engineering, Computer Science, or equivalent thereof, and at least two years of programming experience. While a person of skill in the art may have the more specific experience relating to multimedia streaming and user interfaces, the Court finds that even general programming experience is sufficient in light of the varied specifications of the Asserted Patents.

## IV.     CONSTRUCTION OF AGREED TERMS

The parties agreed to the construction of the following terms/phrases:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "presentation focus"<br><br>('731 claims 1, 10; '558 claims 14, 17; '299 claim 17; '264 claims 61, 70, 71) | "an attribute associated with a media player, directly and/or indirectly, indicating whether the media player is allowed to access one or more presentation devices for playing one or more corresponding media streams on the presentation devices; an attribute for restricting and coordinating access to an output device by one or more applications" |
| "presentation focus information"<br><br>('731 claims 1, 10; '299 claims 17, 23; '264 claims 61, 71) | "data that identifies one or more media players and whether the media players have presentation focus" |
| "input focus"<br><br>('731 claim 1; '558 claim 14; '299 claim 17; '264 claim 61) | "an attribute of a user interface element indicating whether input from one or more particular input devices is directed to the element" |
| "navigation control"<br><br>('361 claim 236) | "a user interface element for navigating between and/or among user interface elements of respective operating applications" |

Docket No. 85 at 1-2. The parties also agreed that the following terms should be given their plain and ordinary meaning.

| Claim Term/Phrase | Claim(s) |
|---|---|
| "navigation control is sent utilizing a hypertext transfer protocol (HTTP)" | '361 claim 117 |
| "drop down interface" | '361 claims 25, 117, 143 |
| "updated visual components" | '361 claim 25 |
| "execution environment presentation focus information" | '299 claim 1 |
| "first presentation focus" / "second presentation focus" | '731 claims 1, 10; '299 claim 17; '264 claims 61, 70, 71; '731 claims 1, 3, 20 |
| "first media stream" / "second media stream" | '731 claims 1, 3, 20; '558 claims 14, 17; '299 claims 17, 23;'264 claim 61 |
| "computer program product" | '731 claim 1; '299 claims 17, 23; '264 claims 61, 70, 71 |
| "non-transitory computer readable medium" / "non-transitory memory storing instructions" | '731 claim 1; '299 claim 17; '264 claim 61; '558 claim 14; '361 claim 236 |
| "play" | '858 claims 1, 6, 9; '264 claims 61, 71; '731 claims 1, 20; '299 claims 1, 3, 4, 5, 10, 11, 12; '858 claims 1, 14, 24 |
| "context switching" | '361 claim 143 |
| "navigation region moves as a function of a movement of the first application region" | '361 claim 270 |
| "associated with a web service" | '361 claim 143 |
| "capable of dynamically retrieving data" | '361 claim 143 |
| "presented . . . via an interface" | '361 claim 113 |
| "one or more rules that differ, at least in part" | '731 claim 20 |
| "user interface element displayed with a | '299 claim 23 |

| | |
|---|---|
| command interface element including a rewind icon or a forward icon for changing an operational state of the first media player in connection with the first media stream" | |
| "first navigation region" | '361 claims 236, 238, 239; '923 claim 3 |
| "detection of a first user input" | '838 claims 153, 154, 156, 180 |
| "detection of a second user input" | '145 claims 13, 52 |
| "detection of a third user input" | '954 claim 14 |
| "a first media player access to a first presentation device" | '858 claims 1, 6 |
| "a first media player access to a second presentation device" | '858 claims 1, 6 |
| "a second media player access to play a second media stream" | '858 claims 1, 6 |
| "utilized for presentation" | '558 claims 1, 24; '264 claims 61, 63; '299 claims 1, 10, 11, 13, 17, 19, 26, 28. |
| "access to a resource" | '731 claim 5 |

Docket No. 85-6 at 2-4. Finally, during the claim construction hearing, the parties agreed to the construction of the following term:

| Claim Term | Agreed Construction |
|---|---|
| **(Term No. 20 – Group D)** "visibility"<br><br>('838 claims 153, 154, 156, 180; '145 claims 13, 52) | "state of being able to be seen" |

In view of the parties' agreement on the construction of the identified terms, the Court **ADOPTS** the parties' agreed constructions.

## V.    CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning and scope of thirty-two terms/phrases in the Asserted Patents.  As an initial matter, the Court notes that the parties dispute whether several "software" limitations are subject to § 112, ¶ 6.  Both sides agree with the general proposition that "software" claims do not automatically invoke or exclude a claim from being subject to § 112, ¶ 6.  But both sides also argue that ***all*** the disputed "software" limitations either are subject to or are not subject to § 112, ¶ 6.  Given their extreme positions, the parties offer little help construing the diverse cross section of "software" limitations in the Asserted Patents.  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298-1299 (Fed. Cir. 2014) ("Requiring traditional physical structure in software limitations lacking the term means would result in all of these limitations being construed as means-plus-function limitations and subsequently being found indefinite.").  The parties' positions thus further complicate the analysis and confirm that "[p]aragraph 6 has morphed from a clear legal instruction into a litigator's delight." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1362 (Fed. Cir. 2015) (Newman, J., dissenting).

For the convenience of the parties, the Court provides its constructions of the disputed terms in table form in the Appendix to this Order.

## A.     "application" (Group A)[4]

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 15)** "application" | Plain and ordinary meaning. | "software program that performs a specific function, such as word processors, database programs, web browsers, and image-editing programs, as contrasted with a utility or operating system" |

### 1.  The Parties' Positions

In *ZTE*, Plaintiff agreed that an "application" is "a software program that performs a specific function."[5]  The parties in this case dispute whether the term requires construction.

Plaintiff argues that "application" has a plain and ordinary meaning with no construction needed.  Docket. No. 105 at 20.  Plaintiff also argues that "application" is also used as a modifier to distinguish one particular component from another.  *Id.* (citing '361 Patent at 6:5–6, 3:47–51, 6:33–34, 9:3–7).

Defendants respond that Plaintiff has not provided any basis for deviating from the Court's prior analysis in *ZTE*.  Docket No. 108 at 54.  Defendants argue that Figure 1 of the patents shows that "applications 122" are separate and distinct from the "operating system 120."  *Id.*  Defendants also contend that the patents provide examples of different applications that track the Court's construction in *ZTE*.  *Id.* (citing '954 Patent at 1:27–37, 8:25–28; '361 Patent at 6:38–61, Fig. 4).

Plaintiff replies that Defendants' construction is improper because it uses examples picked from the background section of just one asserted patent.  Docket No. 112 at 16.  According to Plaintiff, unlike in *ZTE*, where "application" appeared only in the '954 Patent, here the term applies

---

[4] Before the claim construction hearing, the parties submitted a Joint Claim Construction Chart ("the Chart").  Docket No. 121.  In the Chart, the parties proposed presenting the term/phrases in groups and agreed to an order of prioritization of the groups.  *Id.* at 1.  The groups identified in this Order are the ones that were presented to the Court in the Chart, and the "Term No." is the one the parties identified in the Chart.  *Id.* at 1-8.

[5] The Court addressed some of the same arguments and several of the same patents in *Cypress Lake Software, Inc. v. ZTE, Inc.*, Case No. 6:17-CV-300-RWS, Docket No. 123 ("*ZTE*").

to a host of figures and disputed phrases from several asserted patents.  *Id.*  Because of this, Plaintiff argues, the Court should not include the examples Defendants selected from just one patent, but should provide a construction that applies to all appearances of the disputed term "application" across all the patents-in-suit.  *Id.*  According to Plaintiff, the plain and ordinary meaning of "application" is "a software program that provides a specific function."  *Id.* (citing Docket No. 105-15 at ¶¶ 831–832).  In the alternative, Plaintiff argues that "application" should be construed to mean "a collection of software components used to perform specific types of user-oriented works on a computer."  *Id.* (citing Docket No. 108-5).

For the following reasons, the Court finds that the term **"application"** should be construed to mean **"a software program that performs a specific function.  For example, a word processor, a database program, a web browser, or an image-editing program."**

### 2. Analysis

The term "application" appears in asserted claim 14 of the '954 Patent; asserted claims 236, 238, 239 of the '361 Patent; asserted claims 3, 4, 7, 11, 12 of the '923 Patent; asserted claims 1, 15, 23 of the '938 Patent; asserted claims 1, 153, 154, 156, 164, 166 of the '838 Patent; asserted claim 1 of the '878 Patent; and asserted claims 13, 30, 52 of the '145 Patent.  The Court finds that the term is used consistently in the claims and is intended to have the same general meaning in each claim.  The Court further finds that the specifications for *all* of the Asserted Patents that include this claim term state that "FIG. 1 illustrates execution environment 102 including operating system 120, one or more applications 122, and other program code and/or data components illustrated by other libraries and subsystems 124."  *See, e.g.*, '954 Patent at 4:35–38.  As shown below, Figure 1 illustrates "applications 122" distinct from "operating system 120."



Fig. 1

'954 Patent at Figure 1 (highlighted). To the extent that Plaintiff argues that "application" as used in the asserted claims may include only the operating system, the Court rejects this argument.

In addition to Figure 1, the specification provides context for the term and further provides examples of applications. The Background section of the '954 Patent, '145 Patent, and '838 Patent describes the problem with a lack of "integration and/or cooperation between or among applications used at the same time by a user." *See, e.g.*, '954 Patent at 1:23–25. The specifications also provide examples of applications and further explain:

> For example, documents often include both text and media such as images from pictures, graphs, and drawings. *Word processors* provide rich feature sets for creating and editing text, but provide relatively weak or no features for creating and editing other forms of data. As a result, users work on text for a document in *a word processor, images in an image editor, and drawings using a drawing tool such as a computer aided design (CAD) tool.* Users spend significant time managing the user interfaces of *these various applications* in order to access the data desired in the application desired.

*See, e.g.*, '954 Patent at 1:27–37 (emphasis added). As another example, each specification states that Figures 4a and 4b illustrate web browser 403b as an equivalent to an application 403a. The

specifications explain that "FIG. 4a illustrates execution environment 401a *hosting application 403a*," while "FIG. 4b illustrates execution environment 401b *hosting browser 403b*." *See, e.g.*, '954 at 8:25–28 (emphasis added). Accordingly, the Court finds that these examples will help clarify the disputed term for the jury.

Plaintiff replies that Defendants' construction is improper because it uses examples picked from the background section of just one asserted patent. As illustrated above, these examples do not appear in only one patent. The word processor, image editor, and CAD tool examples appear not only in the '954 Patent, but also in the '145 Patent and the '838 Patent. *See* '145 Patent at 1:27–37; '838 Patent at 1:23–33. Moreover, the web browser example cited above appears in all of the Asserted Patents related to this term. Thus, Plaintiff's argument that the examples appear in only the '954 Patent is incorrect. Further, the Court's construction clearly indicates that these are non-limiting **examples** of applications—not an exhaustive list—that will aid the jury in understanding the term. In summary, Plaintiff has not provided a persuasive reason for construing "application" differently across the Asserted Patents or to alter the construction adopted in *ZTE*. Finally, in reaching its conclusion, the Court has considered the extrinsic evidence submitted by the parties and has given it its proper weight in light of the intrinsic evidence.

### 3. Court's Construction

The term **"application"** (Term No. 15) means **"a software program that performs a specific function. For example, a word processor, a database program, a web browser, or an image-editing program."**

## B. "... presentation of ... a first window associated with the first program component ... creation of a second window associated with the second program component" (Group B)

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 22)**<br>"... presentation of ... a first window associated with the first program component"<br><br>"creation of a second window associated with the second program component" | Plain and ordinary meaning. | Indefinite. |

### 1. The Parties' Positions

The parties dispute whether the terms "the first program component" and "the second program component" lack antecedent basis.

Defendants argue that the "associated with the [first/second] program component" terms found in claim 14 of the '954 Patent are indefinite because a person of ordinary skill in the art ("POSITA") would not be able to ascertain the scope of these terms with reasonable certainty. Docket No. 108 at 55. Defendants contend that based on a plain reading of claim 14, each of the first, second, and third applications includes a first program component and a second program component, resulting in six total claimed program components. *Id.* Defendants further argue that claim 14 does not indicate which first program component and which second program component (of the three first program components, and three second program components) are associated with the first window and the second window, respectively. *Id.* Defendants contend that this presents an indisputable lack of antecedent basis, resulting in the disputed "associated with the [first/second] program component" terms having several potential meanings. *Id.* at 55-56. Because of this, Defendants argue, the disputed claim terms fail to inform a POSITA about the scope of the invention with reasonable certainty and are therefore indefinite. *Id.* at 57.

Plaintiff argues that the terms "first program component" and "second program component" do not lack antecedent basis. Docket No. 105 at 25; Docket No. 112 at 19. According

to Plaintiff, Defendants have not met their burden of proving by clear and convincing evidence that the phrase is indefinite. *Id.*

For the following reasons, the Court finds that the phrase **". . . presentation of . . . a first window associated with the first program component . . . creation of a second window associated with the second program component"** is not indefinite and should be given its plain and ordinary meaning.

### 2. Analysis

The phrase ". . . presentation of . . . a first window associated with the first program component . . . creation of a second window associated with the second program component" appears in asserted claim 14 of the '954 Patent. The Court finds that the terms "the first program component" and "the second program component" do not lack antecedent basis. Claim 14 recites:

> storage of *a plurality of applications* including a first application, a second application, and a third application, utilizing the memory, *the applications including a first program component and a second program component*;
> detection of a first user input;
> in response to the first user input, presentation of, utilizing the touchscreen, *a first window associated with the first program component* including at least one user interface element;
> detection of a second user input in connection with the at least one user interface element of the first window;
> in response to the second user input in connection with the at least one user interface element of the first window, creation of *a second window associated with the second program component* and presentation thereof, utilizing the touchscreen, adjacent to and not overlapping with respect to the first window, for presenting, in the second window, data associated with the at least one user interface element of the first window

'954 Patent at claim 14 (emphasis added). As indicated, claim 14 recites "a plurality of applications," and states that the applications include "a first program component and a second program component." The claim later recites "a first window associated with the first program component," and "a second window associated with the second program component." Thus, the first/second window is associated with the first/second component, and the first/second component

is included in the "plurality of applications."  Accordingly, "the first program component" and "the second program component" do not lack antecedent basis.

Defendants focus on the phrase "storage of a plurality of applications including <u>a first application, a second application, and a third application</u>," and the phrase "<u>the applications including a first program component and a second program component</u>."  Docket No. 108 at 55 (emphasis in original).  Defendants argue that a plain reading of this language results in a total of six claimed program components—three first program components, and three second program components.  *Id.*  Defendants further argue that claim 14 does not indicate which first program component and which second program component are associated with the first window and the second window.  *Id.*  According to Defendants, this presents an indisputable lack of antecedent basis, which results in the disputed "associated with the [first/second] program component" terms having several potential meanings.  *Id.* at 55-56.  The Court disagrees.

As discussed above, claim 14 recites that the first program component and the second program component are included in the "plurality of applications."  Thus, a person of ordinary skill in the art would understand that regardless of the number of applications included in the "plurality of applications," the plurality includes a first program component and a second program component.  Indeed, the recited "a first application, a second application, and a third application" are introduced as part of the "plurality of applications," and are not further recited in claim 14.

Moreover, the specification states that a visual component of a user interface may include a "window."  *See, e.g.*, '954 Patent at 5:62–5:67 ("[V]isual components of a user interface are referred to herein as visual interface elements. A visual interface element may be a visual component of a graphical user interface (GUI). Exemplary visual interface elements include windows . . . .").  Claim 14 recites that a first/second window is associated with the first/second

component, and the first/second component is included in the "plurality of applications." Thus, the claims, viewed in light of the specification, inform those skilled in the art about the scope of the invention with reasonable certainty. Accordingly, the Court finds that Defendants have failed to prove by clear and convincing evidence that the terms "the first program component" and "the second program component" lack antecedent basis. Finally, in reaching its conclusion, the Court has considered the extrinsic evidence submitted by the parties and has given it its proper weight in light of the intrinsic evidence.

### 3. Court's Construction

The phrases **". . . presentation of . . . a first window associated with the first program component . . ."** and **"creation of a second window associated with the second program component"** (Term No. 22) are not indefinite and will be given their plain and ordinary meaning.

### C. "more convenient" and "permits a user to conveniently enter" (Group C)

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 16)** "in an area that is more convenient than an area in which a desktop taskbar resides" | Plain and ordinary meaning. | Indefinite. |
| **(Term No. 16)** "permits a user to conveniently enter the second user input on the one of the plurality of elements of the menu corresponding to the second application for selection purposes, instead of requiring location of the second window among a clutter of different windows" | Plain and ordinary meaning. | Indefinite. |

### 1. The Parties' Positions

The parties dispute whether the use of the terms "convenient" and "conveniently" render claims 12 and 16 of the '923 Patent indefinite for failing to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

Plaintiff argues that because these terms have an objective meaning within a scope of

limited possibilities as used in the asserted claims, they are not subjective and are not indefinite. Docket No. 105 at 21 (citing Docket No. 105-15 at ¶¶ 433-437). Plaintiff contends that the phrase "in an area that is more convenient . . ." relates to an area that does not cover up a desktop taskbar as it is being displayed. *Id.* at 22. Plaintiff further contends that the phrase "permits a user to conveniently enter . . ." refers "to a thumbnail or another way that is objectively easier than, and thus more conveniently [sic] than obtaining the location of the second window among a clutter of different windows." *Id.*

Defendants respond that the claims do not provide any objective criteria for determining what is "convenient." Docket No. 108 at 51. Defendants contend that claim 16 does not specify any objective basis for determining which, if any, areas outside of a taskbar are more or less convenient than the taskbar itself. *Id.* Defendants further argue that claim 12 fails to provide any definition for what is "convenient," what constitutes "clutter," or any criteria for determining whether an area that lacks "clutter" is "convenient" or not "convenient." *Id.* Defendants also contend that the remaining intrinsic evidence fails to provide any objective guidance for evaluating "convenient." *Id.* at 52 (citing Docket No. 108-2 at ¶ 157). Finally, Defendants argue that both parties' experts agree that the term "convenient[]" is purely subjective in the context of this patent and its meaning depends on the personal preferences of the specific user accessing the user interface or display. *Id.* (citing Docket No. 108-2 at ¶ 154; Docket No. 108-3 at 143:9-13).

For the following reasons, the Court finds that the disputed phrases are **indefinite** because the terms "more convenient" and "permits a user to conveniently enter," viewed in light of the specification, fail to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

## 2. Analysis

The phrase "in an area that is more convenient than an area in which a desktop taskbar resides" appears in asserted claim 16 of the '923 Patent. The phrase "permits a user to conveniently enter the second user input on the one of the plurality of elements of the menu corresponding to the second application for selection purposes, instead of requiring location of the second window among a clutter of different windows" appears in asserted claim 12 of the '923 Patent. The Court finds that the intrinsic evidence does not provide an objective criterion for determining what is "more convenient" or "permits a user to conveniently enter" the second user input. Claims 12 and 16 of the '923 Patent require the display of a menu or window to be in a location that permits "convenient" access by a user. The claims do not provide any objective criteria for determining what is "convenient." Claim 16 recites an apparatus configured such that a window is displayed for "user interaction" in an area that is "more convenient" than a taskbar. But the claim does not specify any objective basis for determining which, if any, areas outside of a taskbar are more or less convenient than the taskbar itself. Likewise, claim 12 recites an "apparatus" configured so that the display of a menu in a particular location permits a user to "conveniently enter" user input without searching through "clutter." Simply stated, the claims fail to provide any definition for what is "convenient," what constitutes "clutter," or any criteria for determining whether an area that lacks "clutter" is "convenient" or not "convenient."

The remaining intrinsic evidence fails to provide any objective guidance for evaluating "convenient." The only instance of the term in the written description or prosecution history occurs in the patent's background, stating that a user interface "may be located in a location that is convenient for some applications but inconvenient for others for a user." '923 Patent at 1:39–42. This statement does not provide any objective scope for "convenient."

Finally, both parties' experts agree that, in the context of this patent, the term "convenient[]" is purely subjective and depends on the personal preferences of the specific user accessing the user interface or display. Docket No 108-2 at ¶ 154. Indeed, Plaintiff's expert agreed that the term "convenient" in claims 12 and 16 is subjective because "[d]ifferent people will have different interpretations of convenient or not convenient or the degrees of convenience that something refers to." Docket No. 108-3 at 143:9-13. It is well established that the meaning of a claim limitation "cannot depend on the undefined views of unnamed persons, even if they are experts, specialists, or academics." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1352 (Fed. Cir. 2005). Accordingly, the Court finds that each disputed phrase is "highly subjective and, on its face, provides little guidance to one of skill in the art." *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018). Therefore, claims 12 and 16 are indefinite because the terms "more convenient" and "permits a user to conveniently enter," viewed in light of the specification, fail to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

### 3. Court's Construction

The disputed phrases (Term No. 16) are **indefinite** because the terms "more convenient" and "permits a user to conveniently enter," viewed in light of the specification, fail to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

## D.    "code for" terms in the '361 Patent (Group E)

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 1)** "code for detecting a user input corresponding to the first navigation control" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "detecting user input corresponding to the first navigation control" Structure: none |
| **(Term No. 2)** "code for sending, in response to detecting the user input, navigation information to navigate to the second visual component" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "sending, in response to detecting the user input, navigation information to navigate to the second visual component" Structure: none |
| **(Term No. 5)** "code for presenting a first navigation control, in a first navigation region determined based on the first application region" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, 6. Function: "presenting a first navigation control, in a first navigation region determined based on the first application region" Structure: none |
| **(Term No. 11)** "code for presenting, in a first application region of a presentation space of a display device, a first visual component" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "presenting, in a first application region of presentation space of a display device, a first visual component" Structure: none |

### 1.  The Parties' Positions

The parties dispute whether the phrases "code for detecting . . .," "code for sending . . .," and "code for presenting . . ." are subject to § 112, ¶ 6.

For these terms, Plaintiff argues that because the claims do not use the word "means," the presumption is that § 112, ¶ 6 does not apply and that Defendants bear the burden to rebut this presumption—a burden they have not carried for any of these terms.  Docket No. 105 at 7, 12, 13, 15, 18.  Plaintiff also argues that the intrinsic record shows the patentee did not intend to invoke § 112, ¶ 6 because the patentee told the patent examiner: "it should be noted that no claims are

intended to be construed under 35 U.S.C. §112, paragraph 6." *Id.* at 5-6 (citing Docket No. 105-15 at ¶¶ 107-116).

Regarding "code for detecting" (Term No. 1), Plaintiff argues that a POSITA would have understood the scope and structure of these terms because implementations for "code for detecting a user input corresponding to the first navigation control . . ." were well known in the art. Docket No. 105 at 5 (citing Docket No. 105-15 at ¶¶ 113, 107-120). Plaintiff contends that Defendants'— and the *ZTE* Court's—reliance on portions of the '361 Patent specification that replace "code for" in the disputed terms with "means for" is misplaced. *Id.* at 7-8. Although "means for" appears several times in the '361 Patent specification, Plaintiff argues that the patentee used the term "means for" to show examples of how to implement the method of detection. Plaintiff argues that a POSITA would not confuse these uses in the specification with the legal term "means" that invokes § 112, ¶ 6. *Id.* at 8; *see also id.* at 9-10.

Plaintiff next argues that the specification discloses an algorithm in the prose describing the different implementations to detect a user input corresponding to the first navigation control. *Id.* (citing '361 Patent at 9:17–20, 9:20–26, 14:14–17, 15:49–52, 14:12–24; Docket No. 105-15 at ¶ 110). According to Plaintiff, this informs a POSITA what "code for detecting" to use for a particular operating environment. *Id.* (citing Docket No. 105-15 at ¶¶ 113-119). Plaintiff also argues that the specification provides additional structural support for the "code for detecting a user interface." *Id.* ('361 Patent at 3: 29–38, 4: 51–57, 4:58–60, 4:61–63, 4:63–67, 5:1–11, 5:11–26, 5: 60–62, 5:62–64, 5:64–6:2, 6:3–8, 6:7–14, 6:15–21, 9:16–18, 9:18–20, 9:21–25, 14:16–44, 14:43–15:41, 16:23–45, 17:23–27, 18:5–24, 19:40–52, 20:18–4; Docket No. 105-15 at ¶¶ 107-119). According to Plaintiff, the disputed claim language connotes sufficient structure in the context of the intrinsic evidence. *Id.* at 12.

For the remaining three "code for" terms in the '361 Patent (Term Nos. 2, 5, and 11), Plaintiff makes essentially the same short argument for each. *Id.* at 13, 15, 17-18. Plaintiff argues that each term should be provided its plain and ordinary meaning because the claim language provides sufficient structure to a POSITA in view of the intrinsic evidence, because the patentee did not clearly disavow claim scope, and because the patentee did not equate "code for" as a nonce word for "means for" to invoke § 112, ¶ 6. *Id.* at 13 (citing Docket No. 105-15 at ¶ 145), 15 (citing Docket No. 105-15 at ¶¶ 83-100), 17-18 (citing Docket No. 105-15 at ¶¶ 169-78).

Defendants respond that all four "code for" terms recite functions, but do not identify any structure to perform those functions, resulting in claims that replace "means for" with the similarly generic "code for." Docket No. 108 at 16. Defendants argue that Plaintiff's expert acknowledged that "code" is even more generic than "module," *id.* (citing Docket No. 108-3 at 10:19-11:4), and admitted that these "code for" terms describe "functionalities," *id.* (citing Docket No. 105-15 at ¶ 116).

Defendants further argue that the phrase "code for" does not convey sufficiently definite structure to perform the recited functions. *Id.* (citing Docket No. 108-2 at ¶¶ 25-27, 38, 48, 58). Defendants contend that the specification fails to provide any structural meaning for "code for" or distinguish that term from generic software. *Id.* at 17 (citing Docket No. 108-2 at ¶¶ 31-34, 41-44, 52-45, 62; Docket No. 108-3 at 14:5-1). According to Defendants, the variety of different functions that follow the phrase "code for" confirms that the phrase is a generic placeholder rather than definite structure. *Id.* (citing Docket No. 108-2 at ¶¶ 27, 39, 49, 59).

Defendants next argue that the patent repeated use of the phrase "code for" as an equivalent to the phrase "means for" solidifies the generic nature of "code for" in these claims. *Id.* (citing '361 Patent at 14:14–17, 15:49–52, 12:37–40). Defendants assert that the '361 Patent's

interchangeable use of the terms "code for" and "means for" shows that the patentee viewed the terms as synonyms. *Id.* (citing Docket No. 108-2 at ¶¶ 30, 41, 52).

Defendants further argue that Plaintiff's expert does not identify any definite structure provided in the claim language for the "code for" limitations, nor does he explain how the "code for" limitations interact or produce the desired results. *Id.* at 17-18 (citing Docket No. 105-15 at ¶¶ 90-91, 110-11, 148, 172; Docket No. 108-2 at ¶¶ 28, 40, 50, 60; Docket No. 108-3 at 167:20-25, 169:10-25; 170:11-176:13, 211:16-212:1). Based on these arguments, Defendants contend that they have rebutted the presumption that § 112, ¶ 6 does not apply. *Id.* at 18.

After concluding that § 112, ¶ 6 applies to these terms, Defendants next argue that the "code for" terms are indefinite for lack of corresponding structure. *Id.* Defendants contend that the Federal Circuit has rejected Plaintiff's argument that POSITAs "could have" developed algorithms to perform the claimed function based on the specification. *Id.* (citing *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1384–85 (Fed. Cir. 2009); Docket No. 105-15 at ¶¶ 95-99, 150-52, 115-18, 173-77).

Defendants also argue that Plaintiff indiscriminately block quotes and cites to large portions of the specification, but fails to show how or why any of the cited passages disclose definite structure for the specific "code" functions. *Id.* at 18-19. Defendants also contend that Plaintiff fails to analyze how any alleged structure is expressly linked to the claimed function. *Id.* at 19.

Regarding "code for detecting" (Term No. 1), Defendants argue that the "navigation element handler component" is not a definite structure, but merely a black box. *Id.* Similarly, regarding "code for presenting a first navigation control" (Term No. 5), while the specification states that the "application navigator component is configured" to perform the function,

Defendants argue that this too is a black box providing neither any structural detail or a step-by-step algorithm to accomplish the result. *Id.* at 13 (citing Docket No. 105-3 at 12:43-49; Docket No. 108-2 at ¶¶ 53-55). And regarding "code for presenting . . . a first visual component" (Term No. 11), Defendants contend that a "PS monitor component" is not a known structure recognizable to a POSITA, and that the '361 Patent provides neither structural detail nor algorithmic steps to achieve the function. *Id.* at 21 (citing Docket No. 108-2 at ¶ 63; Docket No. 105-3 at Figs. 3, 4a-4d; Docket No. 108-3 at 192:10-193:2, 195:1-13). For Term No. 11, Defendants further argue that the "kitchen-sink citations" in Plaintiff's expert declaration at best identify where, but not how, a first visual component is presented. *Id.* (citing Docket No. 108-2 at ¶¶ 61-63).

Plaintiff replies that the terms here are distinguishable from *Williamson*, as the limitations involving "code for" are not the source of novelty as the "distributed learning control module" was in *Williamson*. Docket No. 112 at 6. Plaintiff contends that the functions at issue here are simple, and a POSITA would not need express structural or algorithmic instructions. *Id.* at 8, 11 (citing Docket No. 105-15 at ¶ 148; Docket No. 112-9 at 57:23-59:3, 108:11–109:11; Docket No. 112-8 at 180:4-25, 216:18-218:14, 219:25-221:3), 14 (citing Docket No. 112-9 at 57:23-59:3, 108:11–109:11).

Plaintiff counters Defendants' attack on its block quotes by pointing to the declaration of Ahmed Tewfik, which Plaintiff contends provides the necessary analysis to explain how the disclosures of elements such as the input driver, UI element handler, navigation element handler, and presentation controller all work together to provide the structure a POSITA would understand. *Id.* at 10 (citing Docket No. 105-15 at ¶¶ 107-119). According to Plaintiff, Dr. Tewfik states that a POSITA would recognize that "code for detecting a user input" would refer to "an input driver,

user interface event listener or a user interface event handler corresponding to such UI elements which in 2010 were well-known functionalities available to programmers using platforms such as HTML, Jacascript, Visual Basic, MacOS, Windows, Linux and/or Android." *Id.* (citing Docket No. 105-15 at ¶ 116). Plaintiff argues that Dr. Tewfik identifies numerous publicly available documents evidencing how common those implementations were at the time. *Id.* (citing Docket No. 105-15 at ¶ 117). Plaintiff makes similar arguments for the other "code for" terms. *Id.* at 12-13, 14-15.

Finally, Plaintiff argues that the examiner allowed the claims at issue without objection. *Id.* at 11. Plaintiff contends that claiming "code for" performing basic functions was common in contemporaneously filed patents, thus indicating widespread acceptance among persons of ordinary skill that the term conveyed sufficient structure. *Id.* (citing Docket No. 112-2 at claims 23, 36, 37, Figs. 35-36, 34:15-22, 35:1–8; Docket No. 112-3 at claims 11, 14; Docket No. 112-4 at claim 15; Docket No. 112-5 at claim 9).

For the following reasons, the Court finds that the phrase **"code for detecting the user input corresponding to the first navigation control"** is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite. The Court further finds that the phrase **"code for sending, in response to detecting the user input, navigation information to navigate to the second visual component"** is governed by 35 U.S.C. § 112, ¶ 6, and is not indefinite. The Court also finds that the phrase **"code for presenting a first navigation control, in a first navigation region determined based on the first application region"** is governed by 35 U.S.C. § 112, ¶ 6, and is not indefinite. Finally, the Court finds that the phrase **"code for presenting, in a first application region of a presentation space of a display device, a first visual component"** is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite.

### 2. Analysis

The phrase "code for detecting the user input corresponding to the first navigation control" appears in asserted claims 21, 113, 160, and 236 of the '361 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same general meaning in each claim. The phrase "code for sending, in response to detecting the user input, navigation information to navigate to the second visual component" appears in asserted claims 21, 113, 160, and 236 of the '361 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same general meaning in each claim. The phrase "code for presenting a first navigation control, in a first navigation region determined based on the first application region" appears in asserted claims 21, 113, 160, and 236 of the '361 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same general meaning in each claim. The phrase "code for presenting, in a first application region of a presentation space of a display device, a first visual component" appears in asserted claims 21, 113, 160, and 236 of the '361 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same general meaning in each claim. For the following reasons, the Court finds that the phrases are subject to § 112, ¶ 6.

### a. Determining Whether the Disputed "Code For" Terms Are Means-Plus-Function Terms

"It is well settled that [a] claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, [¶] 6 applies." *Apex Inc. v. Raritan Comput., Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003) (quotation omitted). It is also equally understood that "a claim term that does not use 'means' will trigger the rebuttable presumption that § 112, [¶] 6 does not apply." *Id.* at 1371 (quotation omitted). The presumption against the application of § 112, ¶ 6 may be overcome if a party can "demonstrate[] that the claim term fails to 'recite sufficiently definite

structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson*, 792 F.3d at 1348 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). "The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* at 1349. In determining whether this presumption has been rebutted, the challenger must establish by a preponderance of the evidence that the claims are to be governed by § 112, ¶ 6. *See Apex Inc. v. Raritan Comput. Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003).

Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claims do not recite the word "means." Therefore, the analysis proceeds in two steps. First, the Court must determine whether the phrases are in means-plus-function form pursuant to 35 U.S.C. § 112, ¶ 6. *See Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1097 (Fed. Cir. 2014). If the Court determines that the phrases recite a means-plus-function limitation, then the Court proceeds to the next step and attempts "to construe the disputed claim term by identifying the corresponding structure, material, or acts described in the specification to which the term will be limited." *Id.* (internal quotation marks and citation omitted).

Starting with the first step, Defendants argue that all four "code for" terms recite functions, but do not identify any structure to perform those functions. Courts in this District have noted that in many instances, "code," like "circuit" or "processor," may connote sufficiently definite structure and is not a "nonce" or "functional" word that is necessarily subject to the limitations of § 112, ¶ 6. *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Expedia, Inc.*, 2016 U.S. Dist. LEXIS 177218, at *96-97 (E.D. Tex. Dec. 22, 2016). In other words, whether recitation of "code for" performing a function is governed by § 112, ¶ 6 depends on whether the recited objectives and operation of the code connote sufficiently definite structure. *See, e.g., Linear Tech. Corp. v. Impala Linear Corp.*,

379 F.3d 1311, 1319-21 (Fed. Cir. 2004) (finding that "circuit [for performing a function]" was sufficiently definite structure because the claim recited the "objectives and operations" of the circuit).

In the context of these claims and the intrinsic evidence here, the Court agrees with Defendants that "code for" does not connote sufficiently definite structure. Rather, in these claims, the term "code for" is defined only by the function that it performs, specifically: "code for detecting the user input corresponding to the first navigation," "code for sending, in response to detecting the user input, navigation information to navigate to the second visual component," "code for presenting a first navigation control, in a first navigation region determined based on the first application region," and "code for presenting, in a first application region of a presentation space of a display device, a first visual component." Docket No. 108-2 at ¶¶ 27, 39, 49, 59. The surrounding claim language also does not identify any specific structure of "code" to perform the recited function of "detecting the user input corresponding to the first navigation control," "sending . . . navigation information to navigate to the second visual component," "presenting a first navigation control, in a first navigation region determined based on the first application region," or "presenting, in a first application region of a presentation space of a display device, a first visual component." Docket No. 108-2 at ¶¶ 27, 28, 39, 40, 49, 50, 59, 60.

Moreover, the specification equates "code for" and "means for" by using the same functional language as in the claims except that the specification recites "means for" performing those functions, whereas the claims recite "code for" doing so. Docket No. 108-2 at ¶¶ 30, 41, 52. Specifically, the specification states that "a system for navigating between visual components includes **means for** *detecting a user input corresponding to the first navigation control*." '361 Patent at 14:14–17 (emphasis added). Likewise, the specification provides that "a system for

navigating between visual components includes ***means for*** *sending, in response to detecting the user input, navigation information to navigate to the second visual component.*" *Id.* at 15:49–52 (emphasis added). The specification also states that "a system for navigating between visual components includes ***means for*** *presenting a first navigation control, in a first navigation region determined based on the first application region.*" *Id.* at 12:37-40 (emphasis added).

Plaintiff argues that the patentee used "means for" in each of these cited portions of the specification to show examples of how to implement the method of detection. Docket No. 105 at 8. The Court disagrees. By using this parallel language, a person of ordinary skill in the art would understand that the '361 Patent uses the terms "code for" and "means for" as synonyms. Accordingly, Defendants have rebutted the presumption that § 112, ¶ 6 does not apply to the disputed "code for" terms in the '361 Patent.

Regarding the application of § 112, ¶ 6, Plaintiff first argues that the claim language itself provides sufficient structure to a POSITA in view of the intrinsic evidence, and that the patentee clearly indicated that § 112, ¶ 6 should not apply. Docket No. 105 at 5-6, 12, 13, 15, 17. Specifically, Plaintiff argues that the patentee stated in the prosecution history that "it should be noted that no claims are intended to be construed under 35 U.S.C. paragraph 6." Docket No. 105-15 at ¶ 107. But whether a claim limitation invokes § 112, ¶ 6 is a "question of law." And under the controlling precedent, the Court concludes that Defendants have rebutted the presumption that § 112, ¶ 6 does not apply. In other words, a patentee cannot "opt-out" of this legal determination by stating that his "intent" is for it not to apply. In addition, the Federal Circuit has noted that the "inventor's subjective intent is irrelevant to the issue of claim construction." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008). "Courts must view the prosecution history not for applicant's subjective intent, but as an official record."

*Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1375 (Fed. Cir. 2005).

Plaintiff next argues that the recited function is not complex and does not require express structural or algorithmic instructions. Docket No. 112 at 12, 14, 15. "Although the examples given in the [] patent might enable [a POSITA] to make and use the invention, they do not recite the particular structure that performs the function and to which the means-plus-function claim is necessarily limited." *Aristocrat Techs. v. Int'l Game Tech.*, 521 F.3d 1328, 1336 (Fed. Cir. 2008). The fact "[t]hat various methods might exist to perform a function is precisely why the disclosure of specific programming is required." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1371 (Fed. Cir. 2012) *Noah*, 675 F.3d at 1371. In the Asserted Patents, however, there is "nothing in the specification to help cabin the scope of the functional language: The patentee has in effect claimed everything that [performs the functions] under the sun." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012).

Finally, Plaintiff argues that POSITAs could have developed algorithms to perform the claimed functions based on the specification. Docket No. 108 at 18 (citing Docket No. 105-15 at ¶¶ 95-99, 150-52, 115-18, 173-77). The Federal Circuit has rejected this approach:

> [Plaintiff] argues that the process of putting together control lists through software is well known to [POSITAs] because access control lists "have been around for a long time and everyone of ordinary skill . . . would know how to construct one given the understanding conveyed in the specification . . . ." That argument, however, conflates the definiteness requirement . . . and the enablement requirement . . . . The fact that [POSITAs] might be able to design a program . . . goes to enablement.

*Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1384-85 (Fed. Cir. 2009). Accordingly, the Court finds that the terms are subject to § 112, ¶ 6.

### b. Construing the Terms That Are Subject to § 112, ¶ 6

"The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic*, 248 F.3d at 1311. The Court finds

that the recited function for Term No. 1 is "detecting the user input corresponding to the first navigation control." The Court finds that the recited function for Term No. 2 is "sending, in response to detecting the user input, navigation information to navigate to the second visual component." The Court finds that the recited function for Term No. 5 is "presenting a first navigation control, in a first navigation region determined based on the first application region." The Court finds that the recited function for Term No. 11 is "presenting, in a first application region of presentation space of a display device, a first visual component." Having determined the function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Medtronic*, 248 F.3d at 1311.

When § 112, ¶ 6 applies to a claim limitation and the corresponding structure is software that cannot be performed by a general-purpose computer, the patentee must provide an algorithm for the software to avoid indefiniteness. *See Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) (holding that the corresponding disclosure for a computer-implemented means-plus-function claim is an algorithm). An algorithm may be expressed "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (quoting *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008)). Even described "in prose," an algorithm is still "a step-by-step procedure for accomplishing a given result." *Id.* at 1385 (quoting *In re Freeman*, 573 F.2d 1237, 1245-46 (CCPA 1978)).

Regarding the phrase "code for detecting" (Term No. 1), the specification fails to disclose any structure for performing the recited function. There is no algorithm described in any form for the function of "detecting the user input corresponding to the first navigation control." Instead,

the specification merely provides functional language and does not include any process for detecting the user input.

In arguing that the specification discloses structure, Plaintiff cites to large portions of the specification but provides no analysis. *See* Docket No. 105 at 10-12 (citing '361 Patent at 3: 29–38, 4: 51–57, 4:58–60, 4:61–63, 4:63–67, 5:1–11, 5:11–26, 5: 60–62, 5:62–64, 5:64–6:2, 6:3–8, 6:7–14, 6:15–21, 9:16–18, 9:18–20, 9:21–25, 14:16–44, 14:43–15:41, 16:23–45, 17:23–27, 18:5–24, 19:40–52, 20:18–4). Plaintiff does not explain how or why any of the passages disclose definite structure for the specific "code" that "detect[s] a user input corresponding to the first navigation control." At best, the passage at 14:17-19 provides a generic statement that the "navigation element handler component is configured for detecting a user input corresponding to the first navigation control." However, as described in more detail below, the black box "navigation element handler component" itself is not a definite structure.

Moreover, Plaintiff's reliance on the specification's laundry list of user interfaces does not constitute adequate structure. Docket No. 105-15 at ¶ 136. "[A] bare statement that known techniques or methods can be used does not disclose structure." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 953 (Fed. Cir. 2007). Similarly, Plaintiff's reliance on an expert's statement that different implementations of "code for detecting a user input" were "well known in the art" does not constitute adequate structure. Docket No. 105-15 ¶¶ 116-17 (listing over thirty possible implementations of the "detecting" function). "That [POSITAs] could carry out the recited function in a variety of ways is precisely why claims written in 'means-plus-function' form must disclose the particular structure that is used to perform the recited function." *Blackboard*, 574 F.3d at 1385. This is especially true given that Plaintiff's expert, Dr. Tewfik, concedes that none of the implementations are actually found in the patent. Docket No. 108-3 at 185:12-25.

Finally, Plaintiff's expert, Dr. Tewfik, provides an alternative construction for Term No. 1, assuming it is subject to § 112, ¶ 6. In the proposed construction, Dr. Tewfik identifies the following portions of the specification as the corresponding structure: '361 Patent specification at 8:34–50, 9:16–26, 13:27–54, 14:12–26, and 14:43–15:16. Docket No. 105-15 at ¶ 120. But Dr. Tewfik does not explain how the cited passages are specifically linked to the recited function of "detecting a user input corresponding to the first navigation control." Moreover, none of the passages identified by Dr. Tewfik discloses a definite structure or step-by-step algorithm for performing the recited function. Docket No. 108-2 at ¶ 35. Accordingly, the Court rejects the alternative construction included in Dr. Tewfik's declaration.[6]

Regarding the phrase "code for presenting, in a first application region of a presentation space of a display device, a first visual component" (Term No. 11), the specification fails to disclose any structure for performing the recited function. There is no algorithm described in any form for the function of "presenting, in a first application region of presentation space of a display device, a first visual component." Instead, the specification provides functional language and does not include any process for presenting a first visual component. Plaintiff's expert cites to a number of portions of the specification, but these portions do not indicate or show how a first visual component is presented. Docket No. 105-15 at ¶¶ 173-74. The cited passages are "hardly more than a restatement of the ['presenting'] function itself." *Triton, LLC v. Nintendo, Inc.,* 753 F.3d 1375, 1379 (Fed. Cir. 2014). Also, while the passages refer to a PS monitor component, a "PS monitor component" is not a known structure recognizable to a POSITA, and the specification does not provide any structural detail nor any algorithmic steps performed to achieve the function.

---

[6] The Court notes that Plaintiff did not present or argue this alternative construction in its briefing.

Docket No. 108-2 at ¶ 63; Docket No. 105-3 at Figs. 3, 4a-4d; Docket No. 108-3 at 192:10-193:2, 195:1-13.

Finally, Plaintiff's expert Dr. Tewfik provides an alternative construction for Term No. 11, assuming it is subject to § 112, ¶ 6. In the proposed construction, Dr. Tewfik identifies the following portions of the specification as the corresponding structure: '361 Patent specification at 3:38–39, 7:42–48, 8:51–9:15, 11:22–36, 11:46–56, 11:57–12:2. Docket No. 105-15 at ¶ 178. Dr. Tewfik does not explain how the cited passages are specifically linked to the recited function of "presenting, in a first application region of presentation space of a display device, a first visual component." Moreover, none of the passages identified by Dr. Tewfik discloses a definite structure or step-by-step algorithm for performing the recited function. Docket No. 108-2 at ¶ 63. Accordingly, the Court rejects the alternative construction included in Dr. Tewfik's declaration.[7]

Regarding the phrase "code for sending . . . navigation information . . . " (Term No. 2), the specification discloses corresponding structure for performing the recited function. Specifically, the specification states the following:

> *Sending the navigation information may includ*e sending the navigation information by invoking a function, a method, and/or a subroutine. *Sending the navigation information may include sending* the navigation information by sending a message via a network. The message may be sent asynchronously. The message, in another aspect, may be included in a request/response exchange. *Sending the navigation information may include sending* the navigation information by sending data via an inter-process communication (IPC) including, for example, a message queue, a pipe, an interrupt, a semaphore, and/or a lock. *Sending the navigation information may include sending* the navigation information via a shared data area.

'361 Patent at 15:60–16:5 (emphasis added). Defendants' expert Dr. Schonfeld opines that this passage does not disclose a definite structure or step-by-step algorithm for performing the claimed function. Docket No. 108-2 at ¶ 45. The Court disagrees and finds that this portion of the

---

[7] The Court notes that Plaintiff did not present or argue this alternative construction in its briefing.

specification identifies one or more steps used to perform the recited function of "sending navigation information to navigate to the second visual component." Finally, Plaintiff's expert Dr. Tewfik provides an alternative construction for Term No. 2, assuming it is subject to § 112, ¶ 6. In the proposed construction, Dr. Tewfik identifies the same portion of the specification discussed above as the corresponding structure. Docket No. 105-15 at ¶ 153. Accordingly, the Court adopts the alternative construction included in Dr. Tewfik's declaration.[8]

Regarding the phrase "code for presenting a first navigation control, in a first navigation region determined based on the first application region" (Term No. 5), the specification discloses corresponding structure for performing the recited function. Specifically, the specification states the following:

> *Presenting a navigation control may include* detecting the navigation control presented in a previous navigation region determined based on a corresponding application region. *Presenting may further include* detecting a move indication (in response to a detected user input), and determining the navigation region based on at least one of a current application region and the previous navigation region. A navigation region may be determined based on the move indication. Further, *presenting the navigation control may include* determining that a corresponding application region differs from a previous application region in the presentation space, which includes a visual component that corresponded to the navigation region prior to the presenting. *Presenting may further include* presenting the navigation control in the navigation region from a previous navigation region determined based on the previous application region.

'361 Patent at 19:54–20:2 (emphasis added). Defendants' expert Dr. Schonfeld opines that this passage does not disclose a definite structure or step-by-step algorithm for performing the claimed function. Docket No. 108-2 at ¶ 55. Again, the Court disagrees and finds that this portion of the specification identifies one or more steps used to perform the recited function of "presenting a first navigation control, in a first navigation region determined based on the first application region."

---

[8] The Court notes that Plaintiff did not present or argue this alternative construction in its briefing.

Finally, Plaintiff's expert, Dr. Tewfik, provides an alternative construction for Term No. 5 assuming it is subject to § 112, ¶ 6. In the proposed construction, Dr. Tewfik identifies the same portion of the specification discussed above as the corresponding structure. Docket No. 105-15 at ¶ 153. Accordingly, the Court adopts this portion of the alternative construction included in Dr. Tewfik's declaration.[9]

### 3. Court's Construction

In light of the evidence, the Court finds that the phrase **"code for detecting a user input corresponding to the first navigation control"** (Term No. 1) is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite for failure to disclose corresponding structure.

In light of the evidence, the Court finds that the phrase **"code for presenting, in a first application region of a presentation space of a display device, a first visual component"** (Term No. 11) is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite for failure to disclose corresponding structure.

In light of the evidence, the Court finds that the phrase **"code for sending, in response to detecting the user input, navigation information to navigate to the second visual component"** (Term No. 2) is governed by 35 U.S.C. § 112, ¶ 6, and construes the phrase as follows:

**Function**: **Sending, in response to detecting the user input, navigation information to navigate to the second visual component.**

**Corresponding Structure**: **A processor programmed to perform one or more of the steps for sending navigation information disclosed in the '361 Patent at 15:60–16:5.**

In light of the evidence, the Court finds that the phrase **"code for presenting a first navigation control, in a first navigation region determined based on the first application**

---

[9] The Court notes that Plaintiff did not present or argue this alternative construction in its briefing.

region" (Term No. 5) is governed by 35 U.S.C. § 112, ¶ 6, and construes the phrase as follows:

**Function**: **Presenting a first navigation control, in a first navigation region determined based on the first application region.**

**Corresponding Structure**: **A processor programmed to perform one or more of the steps for presenting a navigation control disclosed in the '361 Patent at 19:54-20:2.**

E.     **"navigation element handler component" and "navigation director component" (Group M)**

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 3)** "navigation element handler component that . . . detects a user input corresponding to the first navigation control" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "detect a user input" Structure: none |
| **(Term No. 4)** "navigation director component that . . . sends . . . navigation information to navigate to the second visual component" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "send navigation information" Structure: none |

    **1.  The Parties' Positions**

    The parties dispute whether the phrases "navigation element handler component . . ." and "navigation director component . . ." are subject to § 112, ¶ 6.

    Plaintiff contends that Defendants have not rebutted the presumption against § 112, ¶ 6 because: (1) the claim language provides sufficient structure to a POSITA in view of the intrinsic evidence, (2) the patentee did not clearly disavow claim scope, and (3) the patentee did not equate "navigation element handler component" as a nonce word for "means for." Docket No. 105 at 14 (citing Docket No. 105-15 at ¶¶ 131, 157-165). Further, Plaintiff argues that the patent describes the necessary algorithm for the "navigation element handler component" in prose, informing the POSITA what event handler available in the prior art to use. *Id.* (citing Docket No. 105-15 at ¶¶ 135, 139).

Defendants respond that both terms are drafted in traditional means-plus-function format, merely replacing the word "means" with "component," and that both "component" and "element" are classic examples of generic nonce words. Docket No. 108 at 11. Defendants also argue that adding the functional modifiers "navigation element handler" and "navigation director" to the nonce word "component" does not impart any structure, and contend that the '361 Patent never describes "navigation element handler component" or "navigation director component" in structural terms. *Id.* at 12 (citing Docket No. 108-2 at ¶¶ 68, 69, 81, 82), 13 (citing Docket No. at 108-2 at ¶¶ 72-76, 85-90). Rather, Defendants contend, the patent only discusses these terms according to their functional attributes, tracking the claimed functions verbatim. *Id.* at 13.

Defendants again contend that Plaintiff's expert cites large portions of the specification but offers no analysis of how these passages describe structural features of the "navigation element handler component." *Id.* (citing Docket No. 105-15 at ¶ 133). Defendants also argue that Plaintiff's expert's reliance on materials that POSITAs may have known but were not disclosed in the patent cannot save the claim. *Id.* at 15 (citing Docket No. 105-115 at ¶ 138).

Regarding the term "navigation director component," Defendants argue that the specification passage at 15:60-16:5—determined to provide structure for the claimed function in *ZTE*—does not provide structure, but merely restates the function of sending navigation information in different ways . *Id.* at 15. Defendants argue that each of the items included in the passage are generic computer software constructs that do not provide any detail as to how to accomplish "sending." *Id.* (citing Docket No. 108-2 at ¶ 91). Defendants further argue that there is no disclosure of physical structure and an algorithmic "step-by-step procedure for accomplishing a given result" in that passage. *Id.* (citing *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012)).

For the following reasons, the Court finds that the phrase **"navigation element handler component that . . . detects a user input corresponding to the first navigation control"** is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite.  The Court further finds that the phrase **"navigation director component that . . . sends, in response to detecting the user input, navigation information to navigate to the second visual component"** is governed by 35 U.S.C. § 112, ¶ 6, and is not indefinite.

## 2. Analysis

The phrase "navigation element handler component that . . . detects a user input corresponding to the first navigation control" appears in asserted claim 17 of the '361 Patent.  The phrase "navigation director component that . . . sends, in response to detecting the user input, navigation information to navigate to the second visual component" also appears in asserted claim 17 of the '361 Patent.  For the following reasons, the Court finds that the phrases are subject to § 112, ¶ 6.

### a. Determining Whether the Disputed "Component" Terms Are Means-Plus-Function Terms

Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claim does not recite the word "means."  Therefore, as noted above, the analysis proceeds in two steps.[10]  Starting with the first step, Defendants argue that the phrases are drafted "in a format consistent with traditional means-plus-function claim limitations."  Docket No. 108 at 11 (citing *Williamson*, 792 F.3d at 1350).  According to Defendants, the limitations replace the term "means" with the term "component," and then recite a function performed by each component.  *Id.*  The Court agrees that the terms "navigation element handler component . . ." and "navigation director

---

[10] The applicable law relating to the determination and construction of means-plus-function terms is included in the Analysis Section of "'Code For' Terms in the '361 Patent."

component . . ." invoke § 112, ¶ 6.  Both phrases fail to describe a sufficient structure and otherwise recite abstract elements for performing functions.

The claim terms "navigation element handler component . . ." and "navigation director component . . ." do not by themselves identify a structure by its function, nor do the asserted claims suggest that the phrases connote a definite structure.  *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir. 2015) (finding that the term "compliance mechanism" invokes § 112, ¶ 6, because the asserted claims "simply state that the 'compliance mechanism' can perform various functions").  Claim 17 uses these terms "solely in relation to [their] function[s] . . . in the apparatus," but "do[es] not recite *any* structure."  *Diebold Nixdorf, Inc. v. ITC*, 899 F.3d 1291, 1298 (Fed. Cir. 2018).

Likewise, the functional modifiers "navigation," "element," "handler," and "director" fail to impart structure into the term "component."  The ordinary meanings of these terms do not connote structure, and neither the specification nor the prosecution history gives these modifiers any structural significance in this claim.  Instead, the "components" terms are coined for the purposes of the asserted patent.  Defendants' expert opines that "navigation element handler component" and "navigation director component" are not terms that are commonly used in computer science or electrical engineering, and do not have an understood meaning to a POSITA. Docket No. 108-2 at ¶¶ 68, 69, 81, 82.  Thus, the terms are not used in "common parlance or by persons of skill in the pertinent art to designate structure," such that they connote sufficient structure to avoid applying § 112, ¶ 6.  *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359 (Fed. Cir. 2004), *overruled on other grounds by Williamson*, 792 F.3d at 1348-49. Likewise, the surrounding claim language does not provide any detail about the structure of the

"navigation element handler component" and "navigation director component."  Docket No. 108-2 at ¶¶ 70, 83.

Finally, the specification explicitly uses these "components" terms as synonyms for "means for," and uses the same functional language as in the claims except that the specification recites "means for" performing those functions whereas the claims recite the respective "component" doing so.  Specifically, the specification states "a system for navigating between visual components includes ***means for*** *detecting a user input corresponding to the first navigation control*.  For example, as illustrated in FIG. 3, **navigation element handler component 306** is configured *for detecting a user input corresponding to the first navigation control*."  '361 Patent at 14:14–19 (emphasis added).  Likewise, the specification states "a system for navigating between visual components includes ***means for*** *sending, in response to detecting the user input, navigation information to navigate to the second visual component*.  For example, as illustrated in FIG. 3, **navigation director component 308** is configured *for sending, in response to detecting the user input, navigation information to navigate to the second visual component*."  '361 Patent at 15:49–55 (emphasis added).  Thus, a person of ordinary skill in the art would understand that the '361 Patent uses "component" as a synonym for "means for."  Accordingly, Defendants have rebutted the presumption that § 112, ¶ 6 does not apply to these "component" terms.

### *b.*  **Construing the Terms That Are Subject to § 112, ¶ 6**

"The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation."  *Medtronic*, 248 F.3d at 1311.  The Court finds that the recited function for Term No. 3 is "detects a user input corresponding to the first navigation control."  The Court finds that the recited function for Term No. 4 is "sends, in response to detecting the user input, navigation information to navigate to the second visual component."

After identifying the function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Medtronic*, 248 F.3d at 1311.

Regarding the phrase "navigation element handler component," the Court finds that there is no algorithm described for the recited function. The specification only provides functional language and does not contain any step-by-step process or other indication of structure. The recited functions must be performed by some component disclosed in the specification; however, the specification does not describe these components. The "algorithm" disclosed in Figure 2 only repeats the functional language recited in the claims. *See* '361 Patent at Figure 2 (Box 206 - "Detect a user input corresponding to the first navigation control"). "Merely restating the function in the specification is insufficient to provide the required algorithm." *Cloud Farm Assocs. LP v. Volkswagen Grp., Inc.*, 674 F. App'x 1000, 1010-11 (Fed. Cir. 2017). *See, also, Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1317 (Fed. Cir. 2012) ("This type of purely functional language, which simply restates the function associated with the means-plus-function limitation, is insufficient to provide the required corresponding structure."). Likewise, the "navigation element handler component 306" depicted in Figure 3 is a generic black box devoid of any physical structure or algorithm:



'361 Patent at Figure 3 (highlighted).

"While it is true that the patentee need not disclose details of structures well known in the art, . . . the specification must nonetheless disclose *some* structure." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc*., 412 F.3d 1291, 1302 (Fed. Cir. 2005) (emphasis added). Here, there is no specific algorithm disclosed in prose, as a mathematical formula, in flow charts, or otherwise. As in *Blackboard*, the "navigation element handler component" is "simply an abstraction that describes the function" to be performed. 574 F.3d at 1383. Accordingly, the Court finds that the term "navigation element handler component" is governed by § 112, ¶ 6, and fails to comply with the statute. The claim is therefore indefinite.

Plaintiff argues that a person of ordinary skill in the art would understand that the coined "navigation element handler component" is equivalent to an "event handler." Docket No. 105-15 at ¶ 129. But the term "event handler" is not used anywhere in the patent, and the materials cited by Plaintiff's expert regarding an "event handler" are not cited anywhere in the patent. Docket No. 105-15 at ¶¶ 130-132, 137-138. It is well established that Plaintiff "cannot use the declaration of its expert to rewrite the patent's specification." *Default Proof, Inc. v. Home Depot, Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005). Moreover, the examples provided by Plaintiff's expert of how a POSITA could implement the claimed components, none of which are contained in the claims or the specification of the '361 Patent, are insufficient to avoid application of § 112, ¶ 6. Docket No. 105-15 at ¶¶ 129-30, 137-39, 162-64. Indeed, the Federal Circuit has held that "merely listing examples of possible structures is insufficient to avoid invocation of § 112, ¶ 6." *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1101 (Fed. Cir. 2014).

Plaintiff's expert also cites large portions of the specification, but he offers no analysis of how these passages describe structural features of the "navigation element handler component," much less how or why the passages link any structure to perform the recited function. Docket

No. 105-15 ¶ 133. "[S]tructure disclosed in the specification is 'corresponding' only if the specification clearly links or associates that structure to the function recited in the claim." *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003). Reliance by Plaintiff's expert on materials that POSITAs may have known, but were not disclosed in the patent, cannot save the claim. Docket No. 105-115 at ¶ 138 (noting over forty possible implementations of the "detecting" function). The "fact that a [POSITA] could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed." *Williamson*, 792 F.3d at 1351.

Finally, Plaintiff's expert argues that the prosecution history is devoid of any statement that means plus function should apply, and that the prosecuting attorney indicated that "no claims are intended to be construed under 35 U.S.C. 112, paragraph 6, with the exception of the last claim." Docket No. 105-15 at 75. But whether a claim limitation invokes § 112, ¶ 6 is a question of law. Accordingly, an applicant's "intent" provides no basis for ignoring the controlling precedent, and it cannot supply structural meaning where none exists. *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003) ("Representations during prosecution cannot enlarge the content of the specification . . . ."); *see also ZTE* at 18 ("[A] patentee cannot "opt-out" of the controlling precedent by stating that his "intent" is for it not to apply.").

Regarding the phrase "navigation director component that . . . sends, in response to detecting the user input, navigation information to navigate to the second visual component," the specification does disclose corresponding structure for performing the recited function. Specifically, the specification states the following:

> *Sending the navigation information may includ*e sending the navigation information by invoking a function, a method, and/or a subroutine. *Sending the navigation information may include sending* the navigation information by sending a message via a network. The message may be sent asynchronously. The message,

> in another aspect, may be included in a request/response exchange. *Sending the navigation information may include sending* the navigation information by sending data via an inter-process communication (IPC) including, for example, a message queue, a pipe, an interrupt, a semaphore, and/or a lock. *Sending the navigation information may include sending* the navigation information via a shared data area.

'361 Patent at 15:60–16:5 (emphasis added). Defendants' expert Dr. Schonfeld opines that this passage does not disclose a definite structure or step-by-step algorithm for performing the claimed function. Docket No. 108-2 at ¶ 91. The Court disagrees and finds that this portion of the specification identifies one or more steps used to perform the recited function of sending "in response to detecting the user input, navigation information to navigate to the second visual component." Finally, the Court notes that Plaintiff's expert agrees with the Court's construction if the term is subject to § 112, ¶ 6.[11] Docket No. 105-15 at ¶ 165.

### 3. Court's Construction

In light of the evidence, the Court finds that the phrase **"navigation element handler component that . . . detects a user input corresponding to the first navigation control"** (Term No. 3) is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite for failure to disclose corresponding structure.

In light of the evidence, the Court finds that the phrase **"navigation director component that . . . sends, in response to detecting the user input, navigation information to navigate to the second visual component"** (Term No. 4) is governed by 35 U.S.C. § 112, ¶ 6, and construes the phrase as follows:

**<u>Function</u>: Sends, in response to detecting the user input, navigation information to navigate to the second visual component.**

---

[11] The Court notes that Plaintiff did not present or argue this alternative construction in its briefing.

**Corresponding Structure**: A processor programmed to perform one or more of the steps for sending navigation information disclosed in the '361 Patent at 15:60–16:5.

**F.**     **"code for detecting access" terms (Group F)**

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 6)** "code for detecting access to the first media player to play a first media stream that includes video" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "detecting a first media player access to a first presentation device to play a first media stream" Structure: none. |
| **(Term No. 7)** "code for detecting a first media player access to a first presentation device to play a first media stream, where presentation focus information is accessible for identifying whether the first media player has first presentation focus for playing the first media stream" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "detecting a first media player access to a first presentation device to play a first media stream" Structure: none |
| **(Term No. 27)** "code for detecting a second media player access to play a second media stream while the second media player does not have second presentation focus, where the second media stream is not played via the first presentation device while the second media player does not have second presentation focus" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "detecting a second media player access to play a second media stream while the second media player does not have second presentation focus, where the second media stream is not played via the first presentation device while the second media player does not have second presentation focus" Structure: none |

**1.  The Parties' Positions**

The parties dispute whether the "code for detecting access" phrases are subject to § 112, ¶ 6.

Plaintiff contends that Defendants have not rebutted the presumption against § 112, ¶ 6 because: (1) the claim language provides sufficient structure to a POSITA in view of the intrinsic evidence, (2) the patentee did not clearly disavow claim scope, and (3) the patentee did not equate

"code for" as a nonce word for "means for." Docket No. 105 at 15-16, 26 (citing Docket No. 105-15 at ¶¶ 475-483, 531-540).

Defendants argue that these "code for" terms are drafted in standard means-plus-function format, with "code" simply substituted for "means." Docket No. 108 at 42. Defendants contend that the specification repeatedly and consistently equates "code for" with "means for" performing the same functions. *Id.* at 42, 43 (citing Docket No. 105-8 at 6:23–26, 18:3–6, 23:20–23). Defendants argue that the term "code for" does not convey any definite structure to a POSITA and only serves as a generic placeholder for structure. *Id.* (citing Docket No. 108-2 at ¶¶ 254, 258, 265-66; Docket No. at 108-3 at 227:5–228:25). Defendants contend that Plaintiff's expert acknowledged that "code" is more generic than the nonce term "module." *Id.* at 42 (citing Docket No. 108-3 at 10:19–11:14). Defendants also contend that nothing in the claim language describes any definite structure or algorithm to perform the recited functions. *Id.* (citing Docket No. 108-2 at ¶ 255). Based on these arguments, Defendants conclude that these terms are subject to § 112, ¶ 6.

Defendants further argue that the "code for detecting . . . access" terms are indefinite for lack of corresponding structure. *Id.* at 43 (citing Docket No. 108-2 at ¶¶ 259-60). Defendants contend that the specification repeats the functional language at various parts of the specification, but never provides a step-by-step procedure for carrying out those functions. *Id.* (citing Docket No. 108-2 at ¶¶ 270-71). For example, Defendants argue that although the specification discloses that a "presentation access component is configured for detecting a first media player access to a first presentation device to play a first media stream," the "presentation access component" itself is a purely functional module that conveys no structure. *Id.* at 43-44 (citing Docket No. 105-8 at 6:26–29, 18:6–9, 23:23–26, Fig. 3 (352), Figs. 4a-c (452a-c), Fig. 5 (552); Docket No. 108-2 at ¶

260; Docket No. 108-3 at 240:9-23, 238:23-240:8).

Defendants contend that Plaintiff's expert cites large portions of the specification, but never explains how any of the passages he cites are clearly linked or associated with the recited functions. *Id.* at 44 (citing Docket No. 108-2 at ¶¶ 260, 271). Defendants also argue that although Plaintiff's expert states that unidentified "algorithms run by" the "focus state component" and "focus director component" perform the recited functions, the expert never states where those algorithms are disclosed in the specification or how those components are linked to the recited functions. *Id.* (citing Docket No. 105-15 at ¶ 536). Further, Defendants contend, Plaintiff concedes that the "focus director component" and "focus state component" are not terms of art and are depicted as black boxes without any structural or algorithmic detail. *Id.* (citing Docket No. 108-2 at ¶ 260; Docket No. 108-3 at 238:23-240:23; Docket No. 105-8 at Fig. 3, Figs. 4a-4d). Defendants also argue that Plaintiff's expert concedes that he is not aware of any "detecting access" functions disclosed in the specification. *Id.* at 45 (citing Docket No. 105-15 at ¶¶ 481, 538, 551).

Plaintiff responds that the recited functions are not complex, and therefore do not require express structural or algorithmic instructions for a POSITA's understanding. *Id.* Docket No. 112 at 15 (citing Docket No. 105-15 at ¶ 478, Docket No. 112-9 at 57:2359:3, 108:11–109:11). Plaintiff further argues that implementations were well-known in the art and contends that the claims themselves disclose how the "code for detecting" operates within the framework of the claimed invention on the whole. *Id.* (citing Docket No. 105-15 at ¶¶ 478-82).

For the following reasons, the Court finds that the phrase **"code for detecting access to the first media player to play a first media stream that includes video"** is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite. The Court also finds that the phrase **"code for detecting a first media player access to a first presentation device to play a first media stream, where**

**presentation focus information is accessible for identifying whether the first media player has first presentation focus for playing the first media stream"** is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite. Finally, the Court finds that the phrase **"code for detecting a second media player access to play a second media stream while the second media player does not have second presentation focus, where the second media stream is not played via the first presentation device while the second media player does not have second presentation focus"** is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite.

### 2. Analysis

The phrase "code for detecting access to the first media player to play a first media stream that includes video" appears in asserted claims 1 and 17 of the '299 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same general meaning in each claim. The phrase "code for detecting a first media player access to a first presentation device to play a first media stream, where presentation focus information is accessible for identifying whether the first media player has first presentation focus for playing the first media stream" appears in asserted claim 1 of the '731 Patent. The phrase "code for detecting a second media player access to play a second media stream while the second media player does not have second presentation focus, where the second media stream is not played via the first presentation device while the second media player does not have second presentation focus" appears in asserted claim 1 of '731 Patent. For the following reasons, the Court finds that the phrases are subject to § 112, ¶ 6.

### a. Determining Whether the Disputed "Code For" Terms Are Means-Plus-Function Terms

Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claim does not recite the word "means." Therefore, the analysis proceeds in two steps.[12] Starting with the first step, Defendants argue that the term "code for" does not convey any definite structure to a POSITA and only serves as a generic placeholder for structure. Docket No. 108 at 42. In this instance, the Court agrees with Defendants that the term "code for detecting," in the context of the asserted claims and intrinsic evidence, does not connote sufficiently definite structure. Nothing in the claim language describes any definite structure or algorithm to perform the recited functions. The term "code for" is defined only by the function that it performs—specifically, "code for detecting . . . access."

Moreover, the specification equates "code for" and "means for" by using the same functional language as in the claims, except that the specification recites "means for" performing those functions whereas the claims recite "code for" doing so. Indeed, the specification states "a system for coordinating playing of media streams includes *means for* detecting a first media player access to a first presentation device to play a first media stream." '299 Patent at 6:23–26, '731 Patent at 18:3–6 (emphasis added). Thus, a person of ordinary skill in the art would understand that the '299 Patent and the '731 Patent use the terms "code for detecting" and "means for detecting" as synonyms. Accordingly, Defendants have rebutted the presumption that § 112, ¶ 6 does not apply to the "code for" terms.

### b. Construing the Terms that Are Subject to § 112, ¶ 6

"The first step in construing [a means-plus-function] limitation is a determination of the

---

[12] The applicable law relating to the determination and construction of means-plus-function terms is included in the Analysis Section of "'Code For' Terms in the '361 Patent."

function of the means-plus-function limitation." *Medtronic*, 248 F.3d at 1311.  The Court finds that the recited function for Term No. 6 is "detecting a first media player access to a first presentation device to play a first media stream."  The Court finds that the recited function for Term No. 7 is "detecting a first media player access to a first presentation device to play a first media stream."  The Court finds that the recited function for Term No. 27 is "detecting a second media player access to play a second media stream."  After identifying the function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Medtronic*, 248 F.3d at 1311.

When § 112, ¶ 6 applies to a claim limitation and the corresponding structure is software that cannot be performed by a general-purpose computer, the patentee must provide an algorithm for the software to avoid indefiniteness.  *See Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) (holding that the corresponding disclosure for a computer-implemented means-plus-function claim is an algorithm).  An algorithm may be expressed "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure."  *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (quoting *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008)).  Even described "in prose," an algorithm is still "a step-by-step procedure for accomplishing a given result."  *Id.* at 1385 (quoting *In re Freeman*, 573 F.2d 1237, 1245-46 (CCPA 1978)).

Regarding the phrase "code for detecting," the specification fails to disclose any structure for performing the recited function.  There is no algorithm described in any form for the function of "detecting media player access to a presentation device to play a media stream."  Instead, the specification includes only functional language and does not contain any process for detecting the

user input.  The specification does state that a "presentation access component is configured for detecting a first media player access to a first presentation device to play a first media stream." '731 Patent at 6:26–29, 18:6–9, 23:23–26.  However, the "presentation access component" is a purely functional module.  Docket No. 108-2 at ¶ 260; Docket No. 108-3 at 240:9-23.  Indeed, the specification states that "the presentation access component may be included in and/or interoperate with any component configured to prepare for and/or access a presentation device, and/or configured to access a resource processed in accessing a presentation device." '731 Patent at 7:20–25.  This statement does not provide the corresponding structure or algorithm to accomplish the claimed function, but instead indicates that the presentation access component could be part of any other component that may provide access to a presentation device.

In arguing that the specification discloses structure, Plaintiff relies on its expert's citation to large portions of the specification as providing structure to perform all the "detecting access" functions.  But Plaintiff's expert does not explain how any of these passages are clearly linked or associated with the recited functions.  Docket No. 108-2 at ¶¶ 260, 271.  Plaintiff's expert also states that unidentified "algorithms run by" the "focus state component" and "focus director component" perform the recited functions.  Docket No. 105-15 at ¶ 536.  Again, Plaintiff's expert never states where those algorithms are disclosed in the specification or how those components are linked to the recited functions.

Plaintiff's expert opines that POSITAs were aware of many different implementations for the "detecting access" functions.  Docket No. 105-15 at ¶¶ 481, 538, 551.  Critically, however, Plaintiff's expert does not indicate where any such implementations are disclosed in the specification.  The Federal Circuit has rejected this approach.  In *Medical Instrumentation*, an expert opined that a claimed function could be implemented by "a software programmer having

ordinary skill in the art" because she "would be aware of the sources of routines, modules and even small programs" that "were widely available from well-known sources or available from other software developers."  344 F.3d at 1212.  The expert noted that "none" of the routines or modules were "cited in the patents" but "would have been available at the time the patent was filed."  *Id.*  The court held that whether POSITAs would have been aware of different implementations "is not the correct inquiry."  *Id.*  Rather, the "correct inquiry is to look at the *disclosure* of the patent and determine if [POSITAs] would have understood that *disclosure* to encompass software . . . to implement such a program, not simply whether [POSITAs] would have been able to write such a software program."  *Id.*  Accordingly, the court held the claims indefinite because "[i]t is important to determine whether [POSITAs] would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing that structure."  *Id.*  The Court therefore finds that the phrase is indefinite for failing to disclose corresponding structure.

Plaintiff's expert Dr. Tewfik provides alternative constructions for Terms No. 7 and 27, assuming they are subject to § 112, ¶ 6.  In the proposed constructions, Dr. Tewfik identifies the following portions of the specification as the corresponding structure in the '731 Patent: 7:1–39, 9:48–10:7, 10:53–62, 17:31–65, 17:66–21:36.  Docket No. 105-15 at ¶ 541, 553.  Dr. Tewfik does not explain how the cited passages are specifically linked to the recited functions.  Moreover, none of the passages identified by Dr. Tewfik discloses a definite structure or step-by-step algorithm for performing the recited function.  Docket No. 108-2 at ¶ 260.  Accordingly, the Court rejects the alternative construction included in Dr. Tewfik's declaration.[13]

---

[13] The Court notes that Plaintiff did not present or argue this alternative construction in its briefing.

Dr. Tewfik also provides an alternative construction for Term No. 6, assuming it is subject to § 112, ¶ 6.  In the proposed construction, Dr. Tewfik identifies the following portions of the specification as the corresponding structure in the '299 Patent: 7:1–39, 9:55–10:7, 10:53–62, 10:63–11:7, 12:19–29, 17:31–65, 17:66–21:36.  Docket No. 105-15 at ¶ 483.  Dr. Tewfik does not explain how the cited passages are specifically linked to the recited function.  Moreover, none of the passages identified by Dr. Tewfik discloses a definite structure or step-by-step algorithm for performing the recited function. (108-2 at ¶ 271).  Accordingly, the Court rejects the alternative construction included in Dr. Tewfik's declaration.[14]

### 3.  Court's Construction

In light of the evidence, the Court finds that the phrase **"code for detecting access to the first media player to play a first media stream that includes video"** (Term No. 6) is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite for failure to disclose corresponding structure.

In light of the evidence, the Court finds that the phrase **"code for detecting a first media player access to a first presentation device to play a first media stream, where presentation focus information is accessible for identifying whether the first media player has first presentation focus for playing the first media stream"** (Term No. 7) is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite for failure to disclose corresponding structure.

In light of the evidence, the Court finds that the phrase **"code for detecting a second media player access to play a second media stream while the second media player does not have second presentation focus, where the second media stream is not played via the first presentation device while the second media player does not have second presentation focus"**

---

[14] The Court notes that Plaintiff did not present or argue this alternative construction in its briefing.

(Term No. 27) is governed by 35 U.S.C. § 112, ¶ 6, and is indefinite for failure to disclose corresponding structure.

**G.    "code for indicating" terms (Group G)**

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 12)**<br>"A computer program product embodied on a non-transitory computer readable medium, comprising: . . .<br>code for indicating, if the first presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the first presentation device; and . . ."<br><br>"A computer program product embodied on a non-transitory computer readable medium, comprising . . .<br>code for indicating, if the second presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the second presentation device; wherein the computer program product is operable such that a change in presentation focus is capable of being based on at least one of a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player a second presentation focus, a change in input focus, a change in an attribute of a user interface element, a transparency level | Not subject to § 112, ¶ 6.<br>(plain and ordinary meaning) | Subject to § 112, ¶ 6.<br>Function: indicating that the first media stream is allowed to be presented via the first presentation device" / "indicating that the first media stream is allowed to be presented via the second presentation device"<br>Structure: '299 patent, 13:55-14:30, 22:58-23:4, 25:20-40 |

| | | |
|---|---|---|
| of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device."

"code for indicating, . . . , that the first media stream is allowed to be presented via the first presentation device"

"code for indicating, . . . , that the first media stream is allowed to be presented via the second presentation device" | | |
| **(Term No. 13)**
"code for indicating, . . . that the second media player is allowed to play the second media stream via the second presentation device"

"code for indicating, . . . that the first media player is allowed to play the first media stream via the first presentation device"

"code for indicating, . . . that the second media player is allowed to play the second media stream via the first presentation device"

"code for indicating, . . . that the first media player is allowed to play the first media stream via the second presentation device"

"code for indicating, . . . that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device" | Not subject to § 112, ¶ 6.
(plain and ordinary meaning) | Subject to § 112, ¶ 6.
Function: "indicating . . . that the first media player is allowed to play the first media stream via the first presentation device" / "indicating . . . that the second media player is allowed to play the second media stream via the first presentation device" / "indicating, . . . , that the second media player is allowed to play the second media stream via the second presentation device" / "indicating . . . that the first media player is allowed to play the first media stream via the second presentation device" / "indicating . . . that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device"
Structure: '299 patent, 13:55-14:30, 22:58-23:4, 25:20-40 (and corresponding text in the '731 and '264 patents) |

### 1. The Parties' Positions

The parties dispute whether the "code for indicating . . " phrases are subject to § 112, ¶ 6.

Plaintiff contends that Defendants have not rebutted the presumption against § 112, ¶ 6 because: (1) the claim language provides sufficient structure to a POSITA in view of the intrinsic evidence, (2) the patentee did not clearly disavow claim scope, and (3) the patentee did not equate "code for" as a nonce word for "means for."  Docket No. 105 at 18, 19 (citing Docket No. 105-15 at ¶¶ 486-495).

Defendants respond that the term "code for" is a nonce word acting as a placeholder for "means for."  Docket No. 108 at 46 (citing Docket No. 108-2 at ¶ 276).  Defendants argue that nothing in the claim language offers any structure or algorithm to perform the function.  *Id.* (citing Docket No. 108-2 at ¶¶ 277-80).  Defendants contend that the specification consistently and expressly equates "code for" with "means for" performing the recited functions.  *Id.* (citing Docket No. 105-7 at 13:37–41, 22:48–52, 25:10–15).  Defendants further argue that Plaintiff's expert declaration cannot create structure where none exists.  *Id.* (citing Docket No. 105-15 at ¶¶ 489-90).  Defendants also contend that the "presentation access component" referenced in the specification does not prevent the "code for indicating" limitations from being means-plus-function terms because "presentation access component" is not a term of art and does not convey any known structure to a POSITA.  *Id.* at 47 (citing Docket No. 105-15 at ¶¶ 491).  Regarding the corresponding structure, Defendants state that they do not seek to alter the structure identified in *ZTE*.

For the following reasons, the Court finds that the **"code for indicating"** terms are governed by 35 U.S.C. § 112, ¶ 6, and are not indefinite.

## 2. Analysis

The phrase "[a] computer program product embodied on a non-transitory computer readable medium, comprising: . . . code for indicating, if the first presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the first presentation device; and code for indicating, if the second presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the second presentation device; wherein the computer program product is operable such that a change in presentation focus is capable of being based on at least one of a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player a second presentation focus, a change in input focus, a change in an attribute of a user interface element, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device" appears in asserted claim 61 of the '264 Patent. The phrase "code for indicating, . . . that the first media stream is allowed to be presented via the first presentation device; code for indicating, . . . that the first media stream is allowed to be presented via the second presentation device" appears in asserted claim 17 of the '299 Patent. The phrase "code for indicating, . . . that the second media player is allowed to play the second media stream via the second presentation device" appears in asserted claim 71 of the '264 Patent. The phrase "code for indicating, . . . that the first media player is allowed to play the first media stream via the first presentation device; code for indicating, . . . that the first media player is allowed to play the first media stream via the second presentation device; code for indicating, . . . that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device" appears in asserted claim 1 of the '299 Patent. The phrase "code for indicating, . . . that the first media player is allowed to play the first

media stream via the first presentation device . . . code for indicating, . . . that the second media player is allowed to play the second media stream via the first presentation device" appears in asserted claim 1 of the '731 Patent. For the following reasons, the Court finds that the phrases are subject to § 112, ¶ 6.

### a. Determining Whether the Disputed "Code for Indicating" Terms Are Means-Plus-Function Terms

Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claim does not recite the word "means." Therefore, the analysis proceeds in two steps.[15] Starting with the first step, Defendants argue that the term "code for" does not convey any definite structure to a POSITA and only serves as a generic placeholder for structure. Docket No. 108 at 46. In this instance, the Court agrees with Defendants that the term "code for indicating," in the context of the asserted claims and intrinsic evidence, does not connote sufficiently definite structure. Nothing in the claim language describes any definite structure or algorithm to perform the recited functions. The term "code for" is defined only by the function that it performs. Specifically, code for indicating that a media steam is allowed to be presented or played by a media player.

Moreover, the specification equates "code for" and "means for" by using the same functional language as in the claims except that the specification recites "means for" performing those functions whereas the claims recite "code for" doing so. Specifically, the specification states "a system for coordinating playing of media streams includes *means for* indicating, in response to determining the first media player has first presentation focus, that the first media player is allowed to play the first media stream via the first presentation device." '299 Patent at 13:37–41, 22:48–

---

[15] The applicable law relating to the determination and construction of means-plus-function terms is included in the Analysis Section of "'Code For' Terms in the '361 Patent."

52, 25:10–15.[16]  Thus, a person of ordinary skill in the art would understand that the '299 Patent

uses the terms "code for indicating" and "means for indicating" as synonyms.  Accordingly,

Defendants have rebutted the presumption that § 112, ¶ 6 does not apply to the "code for

indicating" term.

### b.  Construing the Terms that Are Subject to § 112, ¶ 6

"The first step in construing [a means-plus-function] limitation is a determination of the

function of the means-plus-function limitation."  *Medtronic*, 248 F.3d at 1311.  The Court finds

that the recited function for Term No. 12 in claim 61 of the '264 Patent is "indicating that the first

media stream is allowed to be presented via the first presentation device" / "indicating that the first

media stream is allowed to be presented via the second presentation device."  The Court further

finds that the recited function for Term No. 12 in claim 17 of the '299 Patent is "indicating that

the first media stream is allowed to be presented via the first presentation device" / "indicating

that the first media stream is allowed to be presented via the second presentation device."  The

Court finds that the recited function for Term No. 13 in claim 71 of the '264 Patent is "indicating

. . . that the second media player is allowed to play the second media stream via the first

presentation device."  The Court finds that the recited function for Term No. 13 in claim 1 of the

'299 Patent is "indicating . . . that the first media player is allowed to play the first media stream

via the first presentation device" / "indicating . . . that the first media player is allowed to play the

first media stream via the second presentation device" / "indicating . . . that the first media player

is allowed to play the first media stream via both the first presentation device and the second

presentation device."  Finally, the Court finds that the recited function for Term No. 13 in claim 1

---

[16]  As indicated above, the '299, '264, '731, and '558 Patents share a common specification.  Unless otherwise indicated, citations are to the '299 Patent.

of the '731 Patent is "indicating . . . that the first media player is allowed to play the first media stream via the first presentation device" / "indicating . . . that the second media player is allowed to play the second media stream via the first presentation device."  After identifying the function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof."  *Medtronic*, 248 F.3d at 1311.

When § 112, ¶ 6 applies to a claim limitation and the corresponding structure is software that cannot be performed by a general-purpose computer, the patentee must provide an algorithm for the software to avoid indefiniteness.  *See Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) (holding that the corresponding disclosure for a computer-implemented means-plus-function claim is an algorithm).   An algorithm may be expressed "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure."  *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (quoting *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008)).   Even described "in prose," an algorithm is still "a step-by-step procedure for accomplishing a given result."  *Id.* at 1385 (quoting *In re Freeman*, 573 F.2d 1237, 1245-46 (CCPA 1978)).

The corresponding structure disclosed in the specification is as follows:

> In various aspects, *a play and/or a no-play indication may be provided in different ways.*  In one aspect, presentation access component 352 may call and/or otherwise instruct the first media player to change its mode of operation to play mode *to provide a play indication.*  Similarly, presentation access component 352 may instruct the first media player to enter a mode other than play mode *in providing a no-play indication.*
> In another aspect, presentation access component 352 may detect access by a first media player to the first presentation device by being included in and/or otherwise intercepting stream data sent from the first media player to the first presentation device.  Presentation access component 352 may process the data for presentation as configured, and/or pass it along unprocessed for processing by the first presentation device and/or another component included in the process of

presenting the media stream, *thus indicating the first media player is allowed to play the first media stream*.

In yet another aspect, presentation access component 352 may include and/or otherwise make use of a serialization mechanism such as a semaphore or lock. Presentation access component 352 *may provide a play indication* by not blocking and/or by unblocking a thread of execution for presenting the first media stream on the first presentation device by the first media player. Alternatively or additionally, presentation access component 352 *may provide a play indication* by being included in and/or otherwise interoperating with a thread/process scheduler to put one or more threads for playing the first media stream in a run state. Sending a no-play indicator may analogously be performed and/or otherwise provided for by presentation access component 352 by causing one or more threads for playing the first media stream to be blocked from execution by processor 104.

*Providing a play indication may further include* sending and/or receiving a message via a network to and/or from, respectively, a remote node where either the node hosting presentation access component 352 or the remote node is operatively coupled to a presentation device for presenting a media stream. Presentation access component 352 may be adapted to operate in a client node, a server node, and/or an intermediary node such as a proxy server. *A no-play indicator may be provided similarly.*

'299 Patent at 13:55–14:30 (emphasis added). The specification further states:

In FIG. 4a, presentation access component 452a *may indicate a media player is allowed to play* a media stream by passing intercepted invocations and data to a driver for the targeted presentation devices. In FIG. 4b, presentation access component 452b *may indicate a media player is allowed to play* a media stream by passing intercepted data from media content handler 434 to media UI element handler 432b allowing access to the targeted presentation device(s). In FIG. 4c, presentation access component 452c *may indicate a media player is allowed to play* a media stream by passing intercepted data from media UI element handler 432c to GUI subsystem 420c, graphics subsystem 422c, audio subsystem 428c, and/or other presentation components allowing access to the targeted presentation device(s).

Alternatively or additionally, in FIG. 4a, FIG. 4b, and FIG. 4c, presentation access component 452 may receive a request for permission to access a presentation device. Presentation access component 452 *may block or allow* a requesting thread to run based on the determination by focus director component 456 as described above. In another aspect, presentation access component 452 may respond to a request for permission *providing a play or a no-play identifier* to the calling presentation subsystem component. The calling component may access or not access a corresponding presentation device based on the identifier.

'299 Patent at 22:58–23:16 (emphasis added). The specification also states:

In FIG. 5, presentation access component 552 *may indicate a media player is allowed to play* a media stream by passing intercepted invocations and data to

media player UI element handler 532 for a presenting on a presentation device of a client node, such as use node 602. In FIG. 5, presentation access component 552 may indicate *a media player is allowed to play a media stream* by passing intercepted data from media streamer 534 to media UI element handler 532.

Alternatively or additionally, in FIG. 5, presentation access component 552 may receive a request for permission to access media player UI element handler 532, media streamer 534, and/or another component included in playing a media stream. Presentation access component 552 *may block or allow* a requesting thread to run based on the determination by focus director component 556 as described above. In another aspect, presentation access component 552 *may respond to a request for permission providing a play or a no-play return value and/or parameter value to the calling component*. The calling component may access or not access a corresponding presentation device based on the return value and/or parameter value.

'299 Patent at 25:20–40 (emphasis added). Defendants generally agree that this is the corresponding structure.

Plaintiff makes the conclusory assertion that "[t]he claim language itself provides sufficient structure to [a POSITA] in view of the intrinsic evidence." Docket No. 105 at 18, 19. Plaintiff's expert, Dr. Tewfik, quotes various portions of the claim language and block quotes certain dependent claims, but he never identifies where or explains how the claim language provides a definite structure or necessary algorithm to perform the "code for . . . indicating" functions. Docket No. 105-15 at ¶¶ 489-90. Plaintiff also asserts that the "presentation access component" referenced in the specification prevents the "code for indicating" limitations from being means-plus-function terms. *Id.* at ¶ 491. The Court disagrees. As explained above concerning the "code for detecting" limitations, the "presentation access component" is not a term of art and does not convey any definite or known structure to POSITAs.

Plaintiff's expert, Dr. Tewfik, provides an alternative construction for the disputed phrases, assuming they are subject to § 112, ¶ 6. In the proposed construction, Dr. Tewfik, identifies the following portions of the specification as the corresponding structure in the '299 Patent: 9:29–39, 10:63–11:7, 13:1–20, 13:33–46, 22:44–23:16, 25:7–40. Docket No. 105-15 at ¶ 495, Section 6.6

at p. 239, Sections 8.4-8.8 at pp. 264-65). Dr. Tewfik does not explain how the cited passages are specifically linked to the recited function. Moreover, not all of the passages identified by Dr. Tewfik disclose a definite structure or step-by-step algorithm for performing the recited function. Docket No. 108-2 at ¶ 281. Accordingly, except for the portions of the specification identified in the Court's construction, the Court rejects the alternative construction included in Dr. Tewfik's declaration.[17]

### 3. Court's Construction

In light of the evidence, the Court finds that the phrase **"[a] computer program product embodied on a non-transitory computer readable medium, comprising: . . . code for indicating, if the first presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the first presentation device; and code for indicating, if the second presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the second presentation device; wherein the computer program product is operable such that a change in presentation focus is capable of being based on at least one of a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player a second presentation focus, a change in input focus, a change in an attribute of a user interface element, a transparency level of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device"** (Term No. 12) in claim 61 of the '264 Patent is governed by 35 U.S.C. § 112, ¶ 6, and construes the phrase as follows:

---

[17] The Court notes that Plaintiff did not present or argue this alternative construction in its briefing.

**Function**: **"indicating that the first media stream is allowed to be presented via the first presentation device" / "indicating that the first media stream is allowed to be presented via the second presentation device"**

**Corresponding Structure**: **A processor programmed to perform one or more of the steps for indicating that the media stream is allowed to be presented via the presentation device disclosed in the '264 Patent at 13:52–14:27, 22:56–23:13, 25:17–37.**

In light of the evidence, the Court finds that the phrase **"code for indicating, . . . that the first media stream is allowed to be presented via the first presentation device; code for indicating, . . . that the first media stream is allowed to be presented via the second presentation device"** (Term No. 12) in claim 17 of the '299 Patent is governed by 35 U.S.C. § 112, ¶ 6, and construes the phrase as follows:

**Function**: **"indicating that the first media stream is allowed to be presented via the first presentation device" / "indicating that the first media stream is allowed to be presented via the second presentation device"**

**Corresponding Structure**: **A processor programmed to perform one or more of the steps for indicating that the media stream is allowed to be presented via the presentation device disclosed in the '299 Patent at 13:55–14:30, 22:58–23:16, 25:20–40.**

In light of the evidence, the Court finds that the phrase **"code for indicating, . . . that the second media player is allowed to play the second media stream via the second presentation device"** (Term No. 13) in claim 71 of the '264 Patent is governed by 35 U.S.C. § 112, ¶ 6, and construes the phrase as follows:

**Function**: **"indicating . . . that the second media player is allowed to play the second media stream via the first presentation device"**

**Corresponding Structure**: **A processor programmed to perform one or more of the**

**steps for indicating that the second media player is allowed to play the second media stream via the first presentation device disclosed in the '264 Patent at 13:52–14:27, 22:56–23:13, 25:17–37.**

In light of the evidence, the Court finds that the phrase **"code for indicating, . . . that the first media player is allowed to play the first media stream via the first presentation device; code for indicating, . . . that the first media player is allowed to play the first media stream via the second presentation device; code for indicating, . . . that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device"** (Term No. 13) in claim 1 of the '299 Patent is governed by 35 U.S.C. § 112, ¶ 6, and construes the phrase as follows:

**Function: "indicating . . . that the first media player is allowed to play the first media stream via the first presentation device" / "indicating . . . that the first media player is allowed to play the first media stream via the second presentation device" / "indicating . . . that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device"**

**Corresponding Structure: A processor programmed to perform one or more of the steps for indicating that the media player is allowed to play the media stream via the presentation device disclosed in the '299 Patent at 13:55–14:30, 22:58–23:16, 25:20–40.**

In light of the evidence, the Court finds that the phrase **"code for indicating, . . . that the first media player is allowed to play the first media stream via the first presentation device . . . code for indicating, . . . that the second media player is allowed to play the second media stream via the first presentation device"** in claim 1 of the '731 Patent is governed by 35 U.S.C. § 112, ¶ 6, and construes the phrase as follows:

**Function: "indicating . . . that the first media player is allowed to play the first media**

stream via the first presentation device" / "indicating . . . that the second media player is allowed to play the second media stream via the first presentation device"

**Corresponding Structure**: A processor programmed to perform one or more of the steps for indicating that the media player is allowed to play the media stream via the presentation device disclosed in the '731 Patent at 13:55–14:30, 22:58–23:16, 25:20–40.

## H. '145 Patent "instructions to" terms (Group H)

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 31)**<br>"instructions to:<br>. . .<br>in response to the first user input, present, utilizing the touchscreen, a first window associated with the first application simultaneously with a first menu with a plurality of first menu-related items<br>. . .<br>in response to the fourth user input, present, utilizing the touchscreen, a second window."<br><br>"instruction to:<br>. . .<br>in response to the first user input, present, utilizing the touchscreen, a first window associated with the first application simultaneously with a first reduced application window group with a plurality of first reduced application window group-related windows" | Not subject to § 112, ¶ 6.<br>(plain and ordinary meaning) | Subject to § 112, ¶ 6.<br>Function: "in response to the first user input, present, utilizing the touchscreen, a first window associated with the first application simultaneously with a first menu with a plurality of first menu-related items" / "in response to the fourth user input, present, utilizing the touchscreen, a second window" / "in response to the first user input, present, utilizing the touchscreen, a first window associated with the first application simultaneously with a first reduced application window group with a plurality of first reduced application window group-related windows"<br>Structure: none |

| | | |
|---|---|---|
| **(Term No. 17)**<br>"instructions to<br>: . . .<br>in response to the second user input, change, utilizing the touchscreen, the presentation of the first menu item and the second menu item,<br>. . .<br>in response to the third user input, change, utilizing the touchscreen, the presentation of the first menu-related items and the first window associated with the first application" | Not subject to § 112, ¶ 6.<br>(plain and ordinary meaning) | Subject to § 112, ¶ 6.<br>Function: "in response to the second user input, change, utilizing the touchscreen, the presentation of the first menu item and the second menu item" / "in response to the third user input, change, utilizing the touchscreen, the presentation of the first menu related items and the first window associated with the first application"<br>Structure: none |
| **(Term No. 32)**<br>"instructions to: detect a first user input,<br>. . .<br>detect a second user input,<br>. . .<br>detect a third user input.<br>. . .<br>detect a fourth user input,"<br><br>"instructions to:<br>detect, utilizing the touchscreen, a first user input<br>. . .<br>detect, utilizing the touchscreen, a second user input<br>. . .<br>detect, utilizing the touchscreen, a third user input<br>. . .<br>detect, utilizing the touchscreen, a fourth user input" | Not subject to § 112, ¶ 6.<br>(plain and ordinary meaning) | Subject to § 112, ¶ 6.<br>Function: "detect a first [second/third/fourth] user input" / "detect, utilizing the touchscreen, a first [second/third/fourth] user input"<br>Structure: none |

## 1. The Parties' Positions

The parties dispute whether the "instructions to" phrases are subject to § 112, ¶ 6.

Plaintiff contends that Defendants have not rebutted the presumption against § 112, ¶ 6 because: (1) the claim language provides sufficient structure to a POSITA in view of the intrinsic evidence, (2) the patentee did not clearly disavow claim scope, and (3) the patentee did not equate

"instructions" as a nonce word for "means for."  Docket No. 105 at 22 (citing Docket No. 105-15 at ¶¶ 590-597).

Plaintiff also argues that Defendants' expert Dr. Schonfeld mischaracterizes the evidence by omitting the surrounding language of claim 17 of the '558 Patent, and claims 13 and 52 of the '145 Patent.  *Id.* at 23.  Including this surrounding claim language, Plaintiff contends, the claims recite both the objective of the "instructions" and their interaction with the other instructions and structures in the claim.  *Id.*  Plaintiff argues that the specifications teach how the "instructions" for "causing a change in presentation focus" are triggered and how the "change in presentation focus" in turn causes one or more media players to pause playing a data stream.  *Id.* (citing '558 Patent at 22:1–9, 14:7–14, 11:35–41, 11:42–49, 11:50–61; 11:62–12:4).

Defendants respond that the terms are written in traditional means-plus-function format, reciting "instructions to" followed by high-level functions.  Docket No. 108 at 39 (citing Docket No. 108-2 at ¶¶ 225-27, 235-37, 243-45; Docket No. 105-15 at ¶¶ 704, 717).  Defendants also contend that Plaintiff's expert agreed that "instructions" are just "code that a processor or other hardware would use to perform a recited function," and admitted that "instructions to" conveys no more structure than "module," a well-known nonce word.  *Id.* (citing Docket No. 108-3 at 222:11-15, 10:17-18).  Defendants further argue that the '145 Patent claims do not reasonably connote a name for structure to a POSITA.  *Id.* (citing Docket No. 108-2 at ¶¶ 225-27, 235-37, 243-45).  Defendants contend that many different algorithms and processes could implement "presenting" and "chang[ing]" the presentation of "menu" items.  *Id.* at 39-40 (citing Docket No. 108-2 at ¶¶ 237, 241, 245, 249; citing Docket No. 105-115 at ¶¶ 776, 788).  Defendants assert that the specification does not compensate for the lack of structure in the claims.  *Id.* at 40.

Defendants next argue that the "instructions to" terms are indefinite for lack of

corresponding structure.  *Id.* (citing Docket No. 108-2 at ¶ 232).  Defendants contend that the

passages Plaintiff's expert cites for these limitations fail to state the required steps or algorithm.

*Id.* (citing Docket No. 108-2 at ¶ 232).  Regarding the phrases "instructions to . . . in response to

the [ ] user input, present, utilizing the touchscreen" a window simultaneously with a menu (claim

13) or a reduced application window group (claim 52), Defendants argue that the specification

fails to provide any disclosures relating to this term.  *Id.* at 41 (citing Docket No. 108-2 at ¶¶ 238,

240).

Regarding the phrases "instructions to . . . in response to the [] user input, change, utilizing

the touchscreen, the presentation of the" menu items (claim 13) or reduced application windows

(claim 52), Defendants argue that the '145 Patent specification provides no disclosure of this

limitation.  *Id.* (citing Docket No. 108-2 at ¶ 246; citing Docket No. 108-9).  Defendants contend

that nothing in the specification describes a "change" in presentation of a menu item or reduced

application window "in response to" user input.  *Id.* (citing Docket No. 108-2 at ¶ 248).  According

to Defendants, the passages cited by Plaintiff's expert merely provide general descriptions of

output devices and user interfaces, but do not disclose changing menu items or reduced application

windows in response to user input.  *Id.* (Docket No. 105-15 at ¶ 778).

For the following reasons, the Court finds that the **"instructions to"** terms are not governed

by 35 U.S.C. § 112, ¶ 6, and are not indefinite.

## 2.  Analysis

The phrase "instructions to: . . . in response to the first user input, present, utilizing the

touchscreen, a first window associated with the first application simultaneously with a first menu

with a plurality of first menu-related items . . . in response to the fourth user input, present, utilizing

the touchscreen, a second window" appears in asserted claim 13 of the '145 Patent.  The phrase

"in response to the first user input, present, utilizing the touchscreen, a first window associated

with the first application simultaneously with a first reduced application window group with a plurality of first reduced application window group-related windows" appears in asserted claim 52 of the '145 Patent. The phrase "instructions to: . . . in response to the second user input, change, utilizing the touchscreen, the presentation of the first menu item and the second menu item, . . . in response to the third user input, change, utilizing the touchscreen, the presentation of the first menu-related items and the first window associated with the first application," appears in asserted claim 13 of the '145 Patent. The phrase "instructions to: detect, utilizing the touchscreen, a first user input . . . detect, utilizing the touchscreen, a second user input . . . detect, utilizing the touchscreen, a third user input . . . detect, utilizing the touchscreen, a fourth user input" appears in asserted claim 52 of the '145 Patent. For the following reasons, the Court finds that the phrases are not subject to § 112, ¶ 6, and should be given their plain and ordinary meaning.

Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claims do not recite the word "means." Therefore, the analysis proceeds in two steps.[18] Starting with the first step, Defendants argue that the terms are written in traditional means-plus-function format, reciting "instructions to" followed by high-level functions. Docket No. 108 at 39 (citing Docket No. 108-2 at ¶¶ 225-27, 235-37, 243-45; Docket No. 105-15 ¶¶ 704). Defendants also argue that the '145 Patent claims do not reasonably connote a name for structure to a POSITA. *Id.* According to Defendants, the claims fail to describe any algorithm or step-by-step process. *Id.* Defendants also contend that the specification does not compensate for the lack of structure in the claims. *Id.* at 40.

---

[18] The applicable law relating to the determination and construction of means-plus-function terms is included in the Analysis Section of "'Code For' Terms in the '361 Patent."

The Court disagrees and finds that Defendants have conflated the steps in the § 112, ¶ 6, analysis. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298-1299 (Fed. Cir. 2014) ("Requiring traditional physical structure in software limitations lacking the term means would result in all of these limitations being construed as means-plus-function limitations and subsequently being found indefinite."); *Zeroclick, LLC v. Apple Inc., 891 F.3d 1003, 1007-09* (Fed. Cir. 2018) (holding that the district court erred by effectively treating "program" and "user interface code" as nonce words and concluding in turn that the claims recited means-plus-function limitations). Courts in this District have noted that in many instances, "code," like "circuit" or "processor," may connote sufficiently definite structure and is not necessarily a "nonce" or "functional" word that is subject to the limitations of § 112, ¶ 6. *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Expedia, Inc.*, No. 2:16-cv-00095-RWS-RSP, 2016 U.S. Dist. LEXIS 177218, at *96-97 (E.D. Tex. Dec. 22, 2016). In other words, whether recitation of "instruction" performing a function is governed by § 112, ¶ 6 depends on whether the stated objectives and operation of the code connote sufficiently definite structure. *See, e.g.*, *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319-21 (Fed. Cir. 2004) (finding that "circuit [for performing a function]" was sufficiently definite structure because the claim recited the "objectives and operations" of the circuit).

Here, the claims describe the objectives and operations of the apparatus, which includes one or more processors that execute the recited instructions. Specifically, claim 13 of the '145 Patent recites that the processors execute instructions that

> detect a first user input, . . . in response to the first user input, present . . . a first window associated with the first application simultaneously with a first menu with a plurality of first menu-related items including a first menu item and a second menu item, the first menu item including a first Z-value and the second menu item including a second Z-value so that the first menu item overlies, at least in part, the second menu item.

Claim 13 further recites that the processor executes instructions to

detect a second user input, . . . in response to the second user input, change . . . the presentation of the first menu item and the second menu item, such that a first visibility of the first menu item is decreased and a second visibility of the second menu item is increased.

Claim 13 also recites that the processor executes instructions to

detect a third user input, ... in response to the third user input, change, . . . the presentation of the first menu-related items and the first window associated with the first application, such that a third visibility of the first window is decreased and a fourth visibility of at least one of the first menu-related items is increased.

Finally, claim 13 recites that the processor executes instructions to "detect a fourth user input, . . . and in response to the fourth user input, present, utilizing the touchscreen, a second window." A similar analysis applies to claim 52 of the '145 Patent.

The claims further describe the structural interactions among the non-transitory memory, the touchscreen, and the one or more processors in communication with the non-transitory memory and the touchscreen. The claims describe how the instructions detect a user input by "utilizing the touch screen." The claims also describe how the "windows" are presented to the user "utilizing the touch screen." Thus, a POSITA would understand that the claim language recites sufficient structure and that the term "instructions" is not used as a generic term or black box recitations of structure or abstractions. *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007-09 (Fed. Cir. 2018) ("[A] person of ordinary skill in the art could reasonably discern from the claim language that the words '*program*,' . . . and '*user interface code*,' . . . are used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional graphical user interface programs or code, existing in prior art at the time of the inventions.") (emphasis added).

When § 112, ¶ 6 applies to a claim limitation and the corresponding structure is software that cannot be performed by a general-purpose computer, the patentee must provide an algorithm for the software to avoid indefiniteness. *See Function Media, LLC v. Google, Inc.*, 708 F.3d 1310,

1318 (Fed. Cir. 2013) (holding that the corresponding disclosure for a computer-implemented means-plus-function claim is an algorithm). But the algorithm requirement is only triggered when the limitation is a means-plus-function limitation under step one of the analysis. Because the Court has determined that the "instruction to" claim functions are not subject to § 112, ¶ 6, there is no requirement that the claims or specification provide a specific algorithm.

Finally, in contrast to other terms in the Asserted Patents, the specification does not equate "instruction to" to "means for." Moreover, the Court generally agrees with Plaintiff that Defendants have unnecessarily parsed and omitted surrounding claim language to give the appearance that the disputed phrases are purely functional. In summary, although the presumption against § 112, ¶ 6 is no longer "strong," Defendants still bear the burden to overcome the presumption. In the context of this intrinsic record, the Court finds that Defendants have not shown that "instruction to" should be subject to § 112, ¶ 6. Accordingly, the Court rejects Defendants' argument that the disputed phrases are means-plus-function terms governed by § 112, ¶ 6. The Court finds that no further construction is required, and that the phrases should be given their plain and ordinary meaning.

### 3. Court's Construction

In light of the evidence, the Court finds that the phrase **"instructions to: . . . in response to the first user input, present, utilizing the touchscreen, a first window associated with the first application simultaneously with a first menu with a plurality of first menu-related items . . . in response to the fourth user input, present, utilizing the touchscreen, a second window"** (Term No. 31) in claim 13 of the '145 Patent is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"in response to the first user input, present, utilizing the touchscreen, a first window associated with the first application**

simultaneously with a first reduced application window group with a plurality of first reduced application window group-related windows" (Term No. 31) in claim 52 of the '145 Patent is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"instructions to: . . . in response to the second user input, change, utilizing the touchscreen, the presentation of the first menu item and the second menu item, . . . in response to the third user input, change, utilizing the touchscreen, the presentation of the first menu-related items and the first window associated with the first application"** (Term NO. 17) in claim 13 of the '145 Patent is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"instructions to: detect a first user input, . . . detect a second user input, . . . detect a third user input . . . detect a fourth user input"** (Term No. 32) in claim 13 of the '145 Patent is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"instructions to: detect, utilizing the touchscreen, a first user input . . . detect, utilizing the touchscreen, a second user input . . . detect, utilizing the touchscreen, a third user input . . . detect, utilizing the touchscreen, a fourth user input"** (Term No. 32) in claim 52 of the '145 Patent is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

# I. '558 Patent "instructions to" terms (Group I)

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 33)** <br> "instructions to: <br> . . . <br> indicate, . . . that the first media stream is allowed to be presented via the first presentation device; <br> . . . <br> indicate, . . . that the first media stream is allowed to be presented via the second presentation device" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. <br> Function: "indicate . . . that the first media stream is allowed to be presented via the first presentation device" / "indicate . . . that the first media stream is allowed to be presented via the second presentation device" <br> Structure: '299 Patent, 13:55-14:30, 22:58-23:4, 25:20-40 |
| **(Term No. 18)** <br> "instructions to: <br> . . . <br> in response to the detection of the selection of the at least one first input control presented with the first media player, cause presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player; <br><br> detect, while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, a selection of the at least one second input control presented with the second media player; and <br><br> in response to the detection of the selection of the at least one second input control presented with the second media player while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, cause a pause of the presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player, and cause presentation of the second media | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. <br> Function: "in response to the detection of the selection of the at least one first input control presented with the first media player, cause presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player" / "detect, while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, a selection of the at least one second input control presented with the second media player" / "in response to the detection of the selection of the at least one second input control presented with the second media player while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, cause a pause of the presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player, and cause presentation of the second media stream via the first presentation device and the second presentation device utilizing the second media player." <br> Structure: none |

| stream via the first presentation device and the second presentation device utilizing the second media player." | | |
|---|---|---|

### 1. The Parties' Positions

The parties dispute whether the "instructions to . . ." terms are subject to § 112, ¶ 6.

Plaintiff contends that Defendants have not rebutted the presumption against § 112, ¶ 6 because: (1) the claim language provides sufficient structure to a POSITA in view of the intrinsic evidence, (2) the patentee did not clearly disavow claim scope, and (3) the patentee did not equate "instructions" as a nonce word for "means for."  Docket No. 105 at 22, 27 (citing Docket No. 105-15 at ¶¶ 590-597, 782-790).

Plaintiff also argues that Defendants' expert Dr. Schonfeld mischaracterizes the evidence by omitting the surrounding language of claim 17 of the '558 Patent, and claims 13 and 52 of the '145 Patent.  *Id.* at 23.  Including this surrounding claim language, Plaintiff contends, the claims recite both the objective of the "instructions" and their interaction with the other instructions and structures in the claim.  *Id.*  Plaintiff also argues that the '558 Patent specification teaches how the "instructions" for "causing a change in presentation focus" are triggered and how the "change in presentation focus" in turn causes one or more media players to pause playing a data stream.  *Id.* (citing '558 Patent at 22:1–9, 14:7–14, 1:35–41, 11:42–49, 11:50–61, 11:62–12:4).

Regarding Term No. 18, Defendants respond that the term "instructions" is a generic placeholder for structure.  Docket No. 108 at 47.  Defendants argue that the '558 Patent specification recites "means for detecting a first media player access to a first presentation device"—using "means for" rather than "instructions to," but otherwise closely tracking the claim language.  *Id.* (citing Docket No. 105-9 at 18:31–33).  Defendants further contend that the '558 Patent does not discuss the claimed function, and that Plaintiff's expert does not identify any definite structure or algorithm found in the '558 Patent.  *Id.* (citing Docket No. 108-2 at ¶ 288).

Defendants also argue that the phrase "the second presentation device in these limitations" is devoid of antecedent basis. *Id.*

Regarding Term No. 33, Defendants respond that these limitations are drafted in means-plus-function format, with the term "instructions to" replacing "means for." *Id.* at 48. Defendants argue that instructions describe generic software rather than structure for performing the claimed functionality. *Id.* (citing Docket No. 108-6 at 276 (defining "instruction" as "an action statement in any computer language"); Docket No. 108-4 at 209 (defining "computer instruction" as a "statement in a programming language, specifying an operation to be performed . . . ."); Docket No. 108-2 at ¶¶ 293-94). According to Defendants, Plaintiff's expert acknowledges that instructions are not structural as they "are code that a processor or other hardware would use to perform a recited function." *Id.* at 48 (citing Docket No. 108-3 at 222:11-15). Defendants also argue that the '558 Patent equates "instruction to" and "means for" by associating both phrases with the same function. *Id.* (citing Docket No. 105-9 at 13:37–41, 22:48–52, 25:10–15). Finally, Defendants argue that they do not seek to alter the Court's previous identification of structure for performing the "indicating" function. *Id.* at 49.

For the following reasons, the Court finds that the **"instructions to . . . indicate"** phrase in claim 1 of the '558 Patent is governed by 35 U.S.C. § 112, ¶ 6, and is not indefinite. The Court further finds that the **"instructions to . . . in response"** phrase in claim 17 of the '558 Patent is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

### 2. Analysis

The phrase "instructions to: . . . indicate, . . . that the first media stream is allowed to be presented via the first presentation device; . . . indicate, . . . that the first media stream is allowed to be presented via the second presentation device" appears in asserted claim 1 of the '558 Patent. For the following reasons, the Court finds that the phrase is subject to § 112, ¶ 6, and is not

indefinite.  The phrase "instructions to: . . . in response to the detection of the selection of the at least one first input control presented with the first media player, cause presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player; detect, while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, a selection of the at least one second input control presented with the second media player; and in response to the detection of the selection of the at least one second input control presented with the second media player while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, cause a pause of the presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player, and cause presentation of the second media stream via the first presentation device and the second presentation device utilizing the second media player" appears in asserted claim 17 of the '558 Patent.  For the following reasons, the Court finds that the phrase is not subject to § 112, ¶ 6, and should be given its plain and ordinary meaning.

### a. Determining Whether the Disputed "Instruction To" Terms Are Means-Plus-Function Terms

Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claim does not recite the word "means."  Therefore, the analysis proceeds in two steps.[19]  Starting with the first step, Defendants argue that the term "instructions to: . . . indicate, . . . that the first media stream is allowed to be presented via the first presentation device" describes generic software rather than structure for performing the claimed functionality.  Docket No. 108 at 48.  In this

---

[19] The applicable law relating to the determination and construction of means-plus-function terms is included in the Analysis Section of "'Code For' Terms in the '361 Patent."

instance, the Court agrees with Defendants that in the context of the asserted claims and intrinsic evidence, Term No. 33 does not connote sufficiently definite structure.

Moreover, the specification equates "instructions to: . . . indicate, . . . that the first media stream is allowed to be presented via the first presentation device" and "means for" by using the same functional language as in the claims except that the specification recites "means for" performing those functions whereas the claims recite "instructions to: . . . indicate, . . . that the first media stream is allowed to be presented via the first presentation device." Specifically, the specification states "a system for coordinating playing of media streams includes *means for* indicating, in response to determining the first media player has first presentation focus, that the first media player is allowed to play the first media stream via the first presentation device." '558 Patent at 13:56–61, 23:14–18, 25:45–49. Thus, a POSITA would understand that the '558 Patent uses the terms "instructions to: . . . indicate, . . . that the first media stream is allowed to be presented via the first presentation device" and "means for indicating, . . . that the first media player is allowed to play the first media stream via the first presentation device" as synonyms. Accordingly, Defendants have rebutted the presumption that § 112, ¶ 6 does not apply to this "instruction to" term.

Regarding Term No. 18, Defendants argue that the term "instructions" is a generic placeholder for structure. Docket No. 108 at 47. Defendants also argue that the '558 Patent recites "means for detecting a first media player access to a first presentation device." *Id.* Finally, Defendants contend that "nowhere does the '558 patent discuss the claimed function, let alone disclosing any structure for performing the claimed function." *Id.* (citing Docket No. 108-2 at ¶ 288).

The Court disagrees and finds that Defendants have conflated the steps in the § 112, ¶ 6 analysis. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298-1299 (Fed. Cir. 2014) ("Requiring traditional physical structure in software limitations lacking the term means would result in all of these limitations being construed as means-plus-function limitations and subsequently being found indefinite."); *Zeroclick, LLC v. Apple Inc., 891 F.3d 1003, 1007-09* (Fed. Cir. 2018) (holding that the district court erred by effectively treating "program" and "user interface code" as nonce words and concluding in turn that the claims recited means-plus-function limitations). Courts in this District have noted that in many instances, "code," like "circuit" or "processor," may connote sufficiently definite structure and is not necessarily a "nonce" or "functional" word that is subject to the limitations of § 112, ¶ 6. *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Expedia, Inc.*, No. 2:16-cv-00095-RWS-RSP, 2016 U.S. Dist. LEXIS 177218, at *96-97 (E.D. Tex. Dec. 22, 2016). In other words, whether recitation of "instructions" performing a function is governed by § 112, ¶ 6 depends on whether the stated objectives and operation of the code connote sufficiently definite structure. *See, e.g.*, *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319-21 (Fed. Cir. 2004) (finding that "circuit [for performing a function]" was sufficiently definite structure because the claim recited the "objectives and operations" of the circuit).

Here, the claims describe the objectives and operations of the first presentation device and the second presentation device, which includes one or more processors that execute the recited instructions. Specifically, the processors execute instructions that cause presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player. Claim 17 further recites that the instructions "detect, while the first media stream is being presented via the first presentation device and the second presentation device utilizing the

first media player, a selection of the at least one second input control presented with the second media player." Finally, claim 17 recites that the instructions,

> in response to the detection of the selection of the at least one second input control presented with the second media player while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, cause a pause of the presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player, and cause presentation of the second media stream via the first presentation device and the second presentation device utilizing the second media player.

The claims further describe the structural interactions among the first media player and the second media player. The claims describe how the instructions cause presentation of the first media stream via the first presentation device and the second presentation device "utilizing the first media player." The claims also describe how the instructions detect "a selection of the at least one second input control" while the "first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player." Finally, the claims describe how the instructions cause presentation of the second media stream via the first presentation device and the second presentation device utilizing the second media player presented in response "to the detection of the selection of the at least one second input control presented with the second media player while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player."

Thus, a POSITA would understand that in this instance the claim language recites sufficient structure, and that the term "instructions to" is not used as a generic term or black box recitations of structure or abstractions. *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007-09 (Fed. Cir. 2018) ("[A] person of ordinary skill in the art could reasonably discern from the claim language that the words '*program*,' . . . and '*user interface code*,' . . . are used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional graphical

user interface programs or code, existing in prior art at the time of the inventions.") (emphasis added).

Defendants correctly argue that when § 112, ¶ 6 applies to a claim limitation and the corresponding structure is software that cannot be performed by a general-purpose computer, the patentee must provide an algorithm for the software to avoid indefiniteness. *See Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) (holding that the corresponding disclosure for a computer-implemented means-plus-function claim is an algorithm). But the algorithm requirement is only triggered when the limitation is a means-plus-function limitation under step one of the analysis. Because the Court has determined that this term is not subject to § 112, ¶ 6, there is no requirement that the claims or specification provide a specific algorithm.

Finally, contrary to Defendants' contention, the specification does not equate "instructions to," as used in Term No. 17, and "means for." Although the presumption against § 112, ¶ 6 is no longer "strong," Defendants still bear the burden to overcome the presumption. In the context of this intrinsic record, the Court finds that Defendants have not shown that "instructions to," recited in claim 17 of the '558 Patent, is subject to § 112, ¶ 6. Accordingly, the Court rejects Defendants' argument that the disputed phrases in claim 17 of the '558 Patent are means-plus-function terms governed by § 112, ¶ 6, and finds that the phrase should be given its plain and ordinary meaning.

### b. Construing the Terms that Are Subject to § 112, ¶ 6.

"The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic*, 248 F.3d at 1311. Regarding Term No. 33, the recited function is "indicate . . . that the first media stream is allowed to be presented via the first presentation device" / "indicate . . . that the first media stream is allowed to be presented via the second presentation device." After identifying the function, "the next step is to

determine the corresponding structure disclosed in the specification and equivalents thereof." *Medtronic*, 248 F.3d at 1311.

When § 112, ¶ 6 applies to a claim limitation and the corresponding structure is software that cannot be performed by a general-purpose computer, the patentee must provide an algorithm for the software to avoid indefiniteness. *See Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) (holding that the corresponding disclosure for a computer-implemented means-plus-function claim is an algorithm). An algorithm may be expressed "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (quoting *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008)). Even described "in prose," an algorithm is still "a step-by-step procedure for accomplishing a given result." *Id.* at 1385 (quoting *In re Freeman*, 573 F.2d 1237, 1245-46 (CCPA 1978)).

The corresponding structure for Term No. 33 disclosed in the specification is as follows:

> In various aspects, *a play and/or a no-play indication may be provided in different ways.* In one aspect, presentation access component 352 may call and/or otherwise instruct the first media player to change its mode of operation to play mode *to provide a play indication.* Similarly, presentation access component 352 may instruct the first media player to enter a mode other than play mode *in providing a no-play indication.*
>
> In another aspect, presentation access component 352 may detect access by a first media player to the first presentation device by being included in and/or otherwise intercepting stream data sent from the first media player to the first presentation device. Presentation access component 352 may process the data for presentation as configured, and/or pass it along unprocessed for processing by the first presentation device and/or another component included in the process of presenting the media stream, *thus indicating the first media player is allowed to play the first media stream.*
>
> In yet another aspect, presentation access component 352 may include and/or otherwise make use of a serialization mechanism such as a semaphore or lock. Presentation access component 352 *may provide a play indication* by not blocking and/or by unblocking a thread of execution for presenting the first media

stream on the first presentation device by the first media player. Alternatively or additionally, presentation access component 352 *may provide a play indication* by being included in and/or otherwise interoperating with a thread/process scheduler to put one or more threads for playing the first media stream in a run state. Sending a no-play indicator may analogously be performed and/or otherwise provided for by presentation access component 352 by causing one or more threads for playing the first media stream to be blocked from execution by processor 104.

      *Providing a play indication may further include* sending and/or receiving a message via a network to and/or from, respectively, a remote node where either the node hosting presentation access component 352 or the remote node is operatively coupled to a presentation device for presenting a media stream. Presentation access component 352 may be adapted to operate in a client node, a server node, and/or an intermediary node such as a proxy server. *A no-play indicator may be provided similarly.*

'558 Patent at 14:7–14:50 (emphasis added). The specification further states:

      In FIG. 4a, presentation access component 452a *may indicate a media player is allowed to play* a media stream by passing intercepted invocations and data to a driver for the targeted presentation devices. In FIG. 4b, presentation access component 452b *may indicate a media player is allowed to play* a media stream by passing intercepted data from media content handler 434 to media UI element handler 432b allowing access to the targeted presentation device(s). In FIG. 4c, presentation access component 452c *may indicate a media player is allowed to play* a media stream by passing intercepted data from media UI element handler 432c to GUI subsystem 420c, graphics subsystem 422c, audio subsystem 428c, and/or other presentation components allowing access to the targeted presentation device(s).

      Alternatively or additionally, in FIG. 4a, FIG. 4b, and FIG. 4c, presentation access component 452 may receive a request for permission to access a presentation device. Presentation access component 452 *may block or allow* a requesting thread to run based on the determination by focus director component 456 as described above. In another aspect, presentation access component 452 may respond to a request for permission *providing a play or a no-play identifier* to the calling presentation subsystem component. The calling component may access or not access a corresponding presentation device based on the identifier.

'558 Patent at 23:24–49 (emphasis added). The specification also states:

      In FIG. 5, presentation access component 552 *may indicate a media player is allowed to play* a media stream by passing intercepted invocations and data to media player UI element handler 532 for a presenting on a presentation device of a client node, such as use node 602. In FIG. 5, presentation access component 552 may indicate *a media player is allowed to play a media stream* by passing intercepted data from media streamer 534 to media UI element handler 532.

      Alternatively or additionally, in FIG. 5, presentation access component 552 may receive a request for permission to access media player UI element handler

> 532, media streamer 534, and/or another component included in playing a media stream. Presentation access component 552 *may block or allow* a requesting thread to run based on the determination by focus director component 556 as described above. In another aspect, presentation access component 552 *may respond to a request for permission providing a play or a no-play return value and/or parameter value to the calling component.* The calling component may access or not access a corresponding presentation device based on the return value and/or parameter value.

'558 Patent at 25:55–26:9 (emphasis added). Defendants generally agree that this is the corresponding structure. Docket No 108 at 49.

Regarding Term No. 33, Plaintiff makes the conclusory assertion that "[t]he claim language itself provides sufficient structure to [a POSITA] in view of the intrinsic evidence." Docket No. 105 at 22. Plaintiff's expert quotes portions of the claim language and block quotes certain dependent claims, but he never identifies where or explains how the claim language provides a definite structure or necessary algorithm to perform the recited function. Docket No. 105-15 at p. 257 (Section 7.5 referencing Section 5.5 at ¶ 491). Accordingly, the Court finds that Term No. 33 is subject to § 112, ¶ 6.

Plaintiff's expert Dr. Tewfik provides an alternative construction for Term No. 33 assuming it is subject to § 112, ¶ 6. In the proposed construction, Dr. Tewfik identifies the following portions of the specification as the corresponding structure in the '299 Patent: 9:29–39, 10:63–11:7, 13:1–20, 13:33–46, 22:44–23:16, 25:7–40. Docket No. 105-15 at p. 257 (Section 7.5 referencing Section 5.5 at ¶ 495). Dr. Tewfik does not explain how the cited passages are specifically linked to the recited function. Moreover, not all of the passages identified by Dr. Tewfik disclose a definite structure or step-by-step algorithm for performing the recited function. Docket No. 108-2 at ¶ 292 (incorporating 108-2 at ¶ 281). Accordingly, except for the portions of the specification identified in the Court's construction, the Court rejects the alternative

construction included in Dr. Tewfik's declaration.[20]

Regarding Term No. 18, Plaintiff argues that the claim language clearly teaches that the "instructions" for "caus[ing] a change in presentation focus . . ." are executed in response to the "detection of the selection of the at least one [ ] input," reciting not only the objective of the "instructions" but also their interaction with the other instructions and structures in the claim. Docket No. 105 at 23. Plaintiff also argues that the '558 Patent teaches how the "instructions" for "causing a change in presentation focus" are triggered and how the "change in presentation focus" in turn causes one or more media players to pause playing a data stream. *Id.* (citing '558 Patent at 22:1–9; 14:7–14, 11:35–41, 11:42–49, 11:50–61; 11:62–12:4). As discussed above, the Court agrees and finds that Term No. 18 is not subject to § 112, ¶ 6.

### 3. Court's Construction

In light of the evidence, the Court finds that the phrase **"instructions to: . . . indicate, . . . that the first media stream is allowed to be presented via the first presentation device; . . . indicate, . . . that the first media stream is allowed to be presented via the second presentation device"** is governed by 35 U.S.C. § 112, ¶ 6, and construes the phrase as follows:

**<u>Function</u>: "indicate . . . that the first media stream is allowed to be presented via the first presentation device" / "indicate . . . that the first media stream is allowed to be presented via the second presentation device."**

**<u>Corresponding Structure</u>: A processor programmed to perform one or more of the steps for indicating that the media stream is allowed to be presented via the presentation device disclosed in the '558 Patent at 7–50, 23:24-49, 25:55–26:9.**

In light of the evidence, the Court finds that the phrase **"instructions to: . . . in response**

---

[20] The Court notes that Plaintiff did not present or argue this alternative construction in its briefing.

to the detection of the selection of the at least one first input control presented with the first media player, cause presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player; detect, while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, a selection of the at least one second input control presented with the second media player; and in response to the detection of the selection of the at least one second input control presented with the second media player while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, cause a pause of the presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player, and cause presentation of the second media stream via the first presentation device and the second presentation device utilizing the second media player"** (Term No. 18) is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

**J.      '938 Patent "code configured to" terms (Group J)**

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 10)** "code configured to: . . . utilize the at least one processor to determine if the first user input is predetermined to cause menu display" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "utilize the at least one processor to determine if the first user input is predetermined to cause menu display" Structure: none |
| **(Term No. 23)** "code configured to . . . utilize the display to display a first window of the first application . . . utilize the display to display a menu in a first location with respect to a location of the first window, . . . | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "utilize the display to display a first window of the first application" / "utilize the display to display a menu in a first location with respect to a location of the first window" / "utilize the display to display the menu in a second location with respect to the location of the first window" / "utilize the |

| | | |
|---|---|---|
| utilize the display to at least one of move or re-size the first window of the first application, in response to the second user input;<br>utilize the display to at least one of move or re-size the elements of the menu, in response to the second user input;<br>. . .<br>utilize the display to display a second window of the second application of the plurality of applications, in response to the third user input." | | display to at least one of move or re-size the first window of the first application, in response to the second user input" / "utilize the display to at least one of move or re-size the elements of the menu, in response to the second user input" / "utilize the display to display a second window of the second application of the plurality of applications, in response to the third user input"<br>Structure: none |
| **(Term No. 24)**<br>"code configured to<br>. . .<br>utilize the at least one input device to receive first user input;<br>. . .<br>utilize the at least one input device to receive second user input for at least one of moving or re-sizing the first window of the first application;<br>. . .<br>utilize the at least one input device to receive third user input on one of the plurality of elements of the menu corresponding to the second application" | Not subject to § 112, ¶ 6.<br>(plain and ordinary meaning) | Subject to § 112, ¶ 6.<br>Function: "utilize the at least one input device to receive first user input" / "utilize the at least one input device to receive second user input for at least one of moving or re-sizing the first window of the first application" / "utilize the at least one input device to receive third user input on one of the plurality of elements of the menu corresponding to the second application"<br>Structure: none |
| **(Term No. 28)**<br>"code configured to<br>. . .<br>utilize the memory to store a plurality of applications" | Not subject to § 112, ¶ 6.<br>(plain and ordinary meaning) | Subject to § 112, ¶ 6.<br>Function: "utilize the memory to store a plurality of applications"<br>Structure: none |

### 1. The Parties' Positions

The parties dispute whether the "code configured to . . ." phrases are subject to § 112, ¶ 6.

Plaintiff contends that Defendants have not rebutted the presumption against § 112, ¶ 6 because: (1) the claim language provides sufficient structure to a POSITA in view of the intrinsic evidence, (2) the patentee did not clearly disavow claim scope, and (3) the patentee did not equate

"code for" as a nonce word for "means for." Docket No. 105 at 17, 26-27 (citing Docket No. 105-15 at ¶¶ 237-46).

Defendants respond that the terms are written in traditional means-plus-function format, reciting the generic and non-structural phrase "code configured to" followed by high-level functions. Docket No. 108 at 22 (citing Docket No. 108-2 at ¶¶ 96-99, 107-10, 115-19; Docket No. 105-15 at ¶ 278). Defendants further argue that the recited objectives and operation of the code do not connote sufficiently definite structure, and the claim language fails to specify how the code is specifically programmed to operate. *Id.* (citing Docket No. 108-2 at ¶¶ 97-105, 108-13, 116-23). According to Defendants, Plaintiff's expert concedes that the claimed "code" covers any type of structure and that the claimed functions could be performed using any of several possible unclaimed algorithms or implementations. *Id.* at 23 (citing Docket No. 105-15 at ¶¶ 211, 243-45, 267-69, 279-82; Docket No. 108-3 at 74:2–74:12). Defendants further contend that the specification does not include any disclosures related to the claimed functions. *Id.* (citing Docket No. 108-2 at ¶¶ 99-106, 110-14, 118-24; Docket No. 108-7). And Defendants argue that the specification establishes that "code configured to . . . receive" user input is equivalent to "means for" performing the same function, as the patent specification refers to similar functions by reciting "means for" rather than "code configured to . . ." *Id.* (citing Docket No. 105-4 at 14:15-16; Docket No. 108-2 at ¶ 110).

For the following reasons, the Court finds that the phrase **"code configured to"** terms are not governed by 35 U.S.C. § 112, ¶ 6, and should be given their plain and ordinary meaning.

### 2. Analysis

All of the disputed "code configured to" phrases appear in asserted claim 1 of the '938 Patent. Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claims do not recite the word "means." Therefore, the analysis proceeds in two steps.[21]

The Court finds that Defendants have conflated the steps in the § 112, ¶ 6 analysis. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298-1299 (Fed. Cir. 2014) ("Requiring traditional physical structure in software limitations lacking the term means would result in all of these limitations being construed as means-plus-function limitations and subsequently being found indefinite."); *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007-09 (Fed. Cir. 2018) (holding that the district court erred by effectively treating "program" and "user interface code" as nonce words and concluding in turn that the claims recited means-plus-function limitations).

In contrast to the claims in *Williamson*, claim 1 of the '938 Patent describes the objectives and operations of the processor programmed to execute the recited "code configured to." In other words, the claim language provides a description of how the processor is specifically programmed to operate. For example, the processor is programmed to execute the code configured to

> utilize the memory to store a plurality of applications including a first application and a second application; utilize the display to display a first window of the first application of the plurality of applications; utilize the at least one input device to receive first user input; utilize the at least one processor to determine if the first user input is predetermined to cause menu display, and to determine if the first user input takes a form of a first input or a second input; and utilize the display to display a menu in a first location with respect to a location of the first window, if it is determined that the first user input takes the form of the first input and is predetermined to cause menu display, where the menu in the first location is outside the first window and includes a plurality of elements corresponding to the plurality of applications that are operating except the first application since the first window is already displayed.

---

[21] The applicable law relating to the determination and construction of means-plus-function terms is included in the Analysis Section of "'Code For' Terms in the '361 Patent."

Claim 1 further recites that the processor is also programmed to execute the code configured to

> utilize the display to display the menu in a second location with respect to the location of the first window, if it is determined that the first user input takes the form of the second input and is predetermined to cause menu display, where the menu in the second location is outside the first window and includes the plurality of elements corresponding to the plurality of applications that are operating except the first application since the first window is already displayed; utilize the at least one input device to receive second user input for at least one of moving or re-sizing the first window of the first application; utilize the display to at least one of move or re-size the first window of the first application, in response to the second user input; utilize the display to at least one of move or re-size the elements of the menu, in response to the second user input; utilize the at least one input device to receive third user input on one of the plurality of elements of the menu corresponding to the second application; and utilize the display to display a second window of the second application of the plurality of applications, in response to the third user input.

Claim 1 further describes the structural interactions of the processor, the display, the input device, and the memory when the "code configured to" is executed by the processor. The memory stores an application, and the display is used to display a window of the stored application. The input device receives an input and causes the display to display a menu. The input device receives further input and causes further changes in the display of the window. Thus, a POSITA would understand that the claim language recites sufficient structure, and that the term "code configured to . . ." is not used as a generic term or black box recitations of structure or abstractions. *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007-09 (Fed. Cir. 2018) ("[A] person of ordinary skill in the art could reasonably discern *from the claim language* that the words '*program*,' . . . and '*user interface code*,' . . . are used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional graphical user interface programs or code, existing in prior art at the time of the inventions.") (emphasis added).

Defendants contend that because the patentee amended the claims to add these limitations during prosecution, the patent fails to provide any description for many of the claimed

"determin[ing]" and "mov[ing] or re-siz[ing]" functions. Docket No. 108 at 21, 23, 25. Defendants' argument here relates more to enablement or disclosure of corresponding structure for terms determined to be means-plus-function limitations, rather than to the threshold question of whether § 112, ¶ 6 applies. *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1336 (Fed. Cir. 2008) (in evaluating a claim that was a means-plus-function limitation, stating that "[w]hether the disclosure would enable one of ordinary skill in the art to make and use the invention is not at issue here"; "[e]nablement of a device requires only the disclosure of sufficient information so that a person of ordinary skill in the art could make and use the device" while "[a] section 112 paragraph 6 disclosure . . . serves the very different purpose of limiting the scope of the claim to the particular structure disclosed, together with equivalents"). Requiring the patent to describe precisely how the claimed functions are achieved or how a POSITA could make and use the invention goes beyond the threshold trigger for the application of § 112, ¶ 6.

When § 112, ¶ 6 applies to a claim limitation and the corresponding structure is software that cannot be performed by a general-purpose computer, the patentee must provide an algorithm for the software to avoid indefiniteness. *See Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) (holding that the corresponding disclosure for a computer-implemented means-plus-function claim is an algorithm). But the algorithm requirement is only triggered when the limitation is a means-plus-function limitation under step one of the analysis. Because the Court has determined that this term is not subject to § 112, ¶ 6, there is no requirement that the claims or specification provide a specific algorithm.

In summary, although the presumption against § 112, ¶ 6 is no longer "strong," Defendants still bear the burden to affirmatively overcome the presumption. In the context of the intrinsic record for the '938 Patent, the Court finds that Defendants have not shown that these "code

configured to" terms are subject to § 112, ¶ 6. Accordingly, the Court rejects Defendants' argument that the "code configured to . . ." is a means-plus-function term governed by § 112, ¶ 6. The Court further finds that no further construction is required, and that the phrases should be given their plain and ordinary meaning.

### 3. Court's Construction

In light of the evidence, the Court finds that the phrase **"code configured to: . . . utilize the at least one processor to determine if the first user input is predetermined to cause menu display"** (Term No. 10) is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"code configured to . . . utilize the display to display a first window of the first application . . . utilize the display to display a menu in a first location with respect to a location of the first window, . . . utilize the display to at least one of move or re-size the first window of the first application, in response to the second user input; utilize the display to at least one of move or re-size the elements of the menu, in response to the second user input; . . . utilize the display to display a second window of the second application of the plurality of applications, in response to the third user input"** (Term No. 23) is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"code configured to . . . utilize the at least one input device to receive first user input; . . . utilize the at least one input device to receive second user input for at least one of moving or re-sizing the first window of the first application; . . . utilize the at least one input device to receive third user input on one of the plurality of elements of the menu corresponding to the second application"** (Term No. 24) is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"code configured to . . . utilize the memory to store a plurality of applications"** (Term No. 28) is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

**K.      '923 Patent and '878 Patent "device configured to" terms (Group K)**

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 8)**<br>"device configured to:<br>. . .<br>detect, utilizing the at least one hardware processor, first user input<br>. .<br>detect, utilizing the at least one hardware processor, second user input in connection with the representation of the second visual component of the second application" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6.<br>Function: "detect, utilizing the at least one hardware processor, first user input" / "detect, utilizing the at least one hardware processor, second user input in connection with the representation of the second visual component of the second application"<br>Structure: none |
| **(Term No. 9)**<br>"device configured to:<br>. . .<br>detect, utilizing the at least one processor, first user input;<br>. . .<br>detect, utilizing the at least one processor, the second user input in connection with the representation of the second window of the second application" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6.<br>Function: detect, utilizing the at least one processor, first user input" / "detect, utilizing the at least one processor, the second user input in connection with the representation of the second window of the second application"<br>Structure: none |
| **(Term No. 25)**<br>"device configured to:<br>present, utilizing the at least one hardware processor and the display, a first visual component of the first application<br>. . .<br>in response to the detection of the first user input in connection with the first visual component of the first application, present, utilizing the at least one hardware processor and the display, a representation of a second visual component | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6.<br>Function: "present, utilizing the at least one hardware processor and the display, a first visual component of the first application" / "in response to the detection of the first user input in connection with the first visual component of the first application, present, utilizing the at least one hardware processor and the display, a representation of a second visual component" / "in response to the detection of the second user input in connection with the representation of |

| | | |
|---|---|---|
| . . .<br>in response to the detection of the second user input in connection with the representation of the second visual component of the second application in the plurality of applications, present, utilizing the at least one hardware processor and the display, the second visual component of the second application" | | the second visual component of the second application in the plurality of applications, present, utilizing the at least one hardware processor and the display, the second visual component of the second application"<br>Structure: none |
| **(Term No. 26)**<br>"device configured to:<br>present, utilizing the at least one processor and the display, a first window of the first application in a presentation space of the display;<br>. . .<br>in response to the detection of the first user input, present, utilizing the at least one processor and the display, a representation of a second window of the second application in a menu, in a particular region of the presentation space of the display,<br>. . .<br>in response to the detection of the second user input in connection with the representation of the second window of the second application, present, utilizing the at least one processor and the display, the second window of the second application" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6.<br>Function: "present, utilizing the at least one processor and the display, a first window of the first application in a presentation space of the display" / "in response to the detection of the first user input, present, utilizing the at least one processor and the display, a representation of a second window of the second application in a menu, in a particular region of the presentation space of the display" / "in response to the detection of the second user input in connection with the representation of the second window of the second application, present, utilizing the at least one processor and the display, the second window of the second application"<br>Structure: none |

### 1. The Parties' Positions

The parties dispute whether the "device configured to . . ." phrases are subject to § 112, ¶ 6.

Plaintiff contends that Defendants have not rebutted the presumption against § 112, ¶ 6 because: (1) the claim language provides sufficient structure to a POSITA in view of the intrinsic evidence, (2) the patentee did not clearly disavow claim scope, and (3) the patentee did not equate "device configured to" as a nonce word for "means for.".  Docket No. 105 at 16, 17, 26 (citing

Docket No. 105-15 at ¶¶ 303, 308, 317-318, 343-353).

Defendants respond that the terms are written in functional language and that "device" is a well-recognized "nonce word[] that reflect[s] nothing more than [a] verbal construct." Docket No. 108 at 28 (citing *Williamson*, 792 F.3d at 135; Docket No. 108-2 at ¶¶ 174-75; Docket No. 105-15 at ¶¶ 173, 422). Defendants contend that the claims are subject to § 112, ¶ 6 because the disputed terms cover a broad class of structures while failing to connote any algorithm, step-by-step process, or other sufficiently definite structure to a POSITA. *Id.* at 28-29.

Defendants further argue that the specification provides no additional structural meaning to the term. *Id.* (citing Docket No. 108-2 at ¶¶ 166, 177). And Defendants assert that the claim language "does not describe how the [limitation at issue] interacts with other components . . . in a way that might inform the structural character" of either "detect[ing]" or "present[ing]" or delineate categories of structures for carrying out these functions. *Id.* at 30, 32 (citing *Williamson*, 782 F.3d at 1351; Docket No. 108-2 at ¶¶ 170, 179, 130-52, 161-82; Docket No. 108-3 at 91:21-92:8).

For the following reasons, the Court finds that the **"device configured to"** terms are not governed by 35 U.S.C. § 112, ¶ 6, and should be given their plain and ordinary meaning

## 2. Analysis

The disputed "device configured to" terms appear in either asserted claim 3 of the '923 Patent or claim 1 of the '878 Patent. Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claims do not recite the word "means." Therefore, the analysis proceeds in two steps.[22]

---

[22] The applicable law relating to the determination and construction of means-plus-function terms is included in the Analysis Section of "'Code For' Terms in the '361 Patent."

The Court finds that Defendants have conflated the steps in the § 112, ¶ 6 analysis. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298-1299 (Fed. Cir. 2014) ("Requiring traditional physical structure in software limitations lacking the term means would result in all of these limitations being construed as means-plus-function limitations and subsequently being found indefinite."); *Zeroclick, LLC v. Apple Inc.,* 891 F.3d 1003, 1007-09 (Fed. Cir. 2018) (holding that the district court erred by effectively treating "program" and "user interface code" as nonce words and concluding in turn that the claims recited means-plus-function limitations).

In contrast to the claims in *Williamson*, claim 3 of the '923 Patent describes the objectives and operations of the processor programmed to execute the recited "device configured to."  In other words, the claim language provides a description of how the processor is specifically programmed to operate.  For example, the claimed device's processor is programmed to present "a first visual component of the first application in the plurality of applications, in a first application region of a presentation space of the display."  The processor is further programmed to detect the "first user input in connection with the first visual component of the first application." Claim 3 requires that the processor "present . . . a representation of a second visual component of the second application and a representation of a third visual component of a third application" "in response to the detection of the first user input in connection with the first visual component of the first application."  Claim 3 further recites that these representations of the second and third visual components are presented

in a first navigation region of the presentation space of the display determined based on the first application region, for navigating to the second visual component of the second application, in a second application region in the presentation space of the display, the first navigation region being determined based on the first application region by determining a first location adjacent to a second location of the first visual component.

Finally, claim 3 recites that the processor is utilized to detect the

second user input in connection with the representation of the second visual component of the second application in the plurality of applications; and in response to the detection of the second user input in connection with the representation of the second visual component of the second application in the plurality of applications, present, utilizing the at least one hardware processor and the display, the second visual component of the second application in the plurality of applications.

As these passages illustrate, claim 3 describes the structural interactions of the processor, the display, and the memory. The memory stores applications, and the display presents a visual component of the stored application. The input device detects an input and causes the display to display a menu. The processor further detects a second user's input, and in response to the input, the processor and display present a representation of a second visual component. Thus, a POSITA would understand that the claim language recites sufficient structure, and that the term "device configured to" is not used as a generic term or black box recitations of structure or abstractions. *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007-09 (Fed. Cir. 2018) ("[A] person of ordinary skill in the art could reasonably discern *from the claim language* that the words '*program*,' . . . and '*user interface code*,' . . . are used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional graphical user interface programs or code, existing in prior art at the time of the inventions.") (emphasis added).

Likewise, claim 1 of the '878 Patent describes the objectives and operations of the processor programmed to execute the recited "device configured to." In other words, the claim language provides a description of how the processor of the device is specifically programmed to operate. For example, the processor is programmed to "present . . . a first window of the first application in a presentation space of the display" . . . "utilizing the at least one processor and the display." Claim 1 further recites that the processor "detect[s] . . . a first user input," and "in response to the detection of the first user inputs, present[s] . . . a representation of a second window

of the second application in a menu, in a particular region of the presentation space of the display" utilizing the display. Claim 1 also requires that the processor

> detect[s] the second user input in connection with the representation of the second window of the second application; and in response to the detection of the second user input in connection with the representation of the second window of the second application, present[s], utilizing the at least one processor and the display, the second window of the second application.

As these passages illustrate, claim 1 describes the structural interactions of the processor, the display, and the memory. The memory stores applications, and the display presents the recited windows of the applications. The processor further detects a second user's input, and in response to the input, the processor displays the second window of the second application on the display. Thus, a POSITA would understand that the claim language recites sufficient structure, and that the term "device configured to" is not used as a generic term or black box recitations of structure or abstractions. *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007-09 (Fed. Cir. 2018) ("[A] person of ordinary skill in the art could reasonably discern *from the claim language* that the words '*program*,' . . . and '*user interface code*,' . . . are used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional graphical user interface programs or code, existing in prior art at the time of the inventions.") (emphasis added).

Defendants argue that the '878 Patent specification fails to disclose the necessary corresponding structure for "detect[ing]" user input. Docket No. 108 at 30. But Defendants' argument here is more in the nature of enablement or disclosure of corresponding structure for terms determined to be means-plus-function limitations, rather than the threshold question of whether § 112, ¶ 6 applies. *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1336 (Fed. Cir. 2008) (in evaluating a claim that was a means-plus-function limitation, stating that "[w]hether the disclosure would enable one of ordinary skill in the art to make and use the invention is not at issue here"; "[e]nablement of a device requires only the disclosure of

sufficient information so that a person of ordinary skill in the art could make and use the device" while "[a] section 112 paragraph 6 disclosure . . . serves the very different purpose of limiting the scope of the claim to the particular structure disclosed, together with equivalents"). Requiring the patent to describe precisely how the claimed functions are achieved or how a POSITA could make and use the invention goes beyond the threshold trigger for the application of § 112, ¶ 6.

When § 112, ¶ 6 applies to a claim limitation and the corresponding structure is software that cannot be performed by a general-purpose computer, the patentee must provide an algorithm for the software to avoid indefiniteness. *See Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) (holding that the corresponding disclosure for a computer-implemented means-plus-function claim is an algorithm). But the algorithm requirement is only triggered when the limitation is a means-plus-function limitation under step one of the analysis. Because the Court has determined that this term is not subject to § 112, ¶ 6, there is no requirement that the claims or specification provide a specific algorithm.

In summary, although the presumption against § 112, ¶ 6 is no longer "strong," Defendants still bear the burden to affirmatively overcome the presumption. In the context of the intrinsic record for the '923 Patent and '878 Patent, the Court finds that Defendants have not shown that the "device configured to" terms are subject to § 112, ¶ 6. Accordingly, the Court rejects Defendants' argument that the "device configured to . . ." phrases are means-plus-function terms governed by § 112, ¶ 6, and finds that no further construction is required.

### 3. Court's Construction

In light of the evidence, the Court finds that the phrase **"device configured to: . . . detect, utilizing the at least one hardware processor, first user input . . . detect, utilizing the at least one hardware processor, second user input in connection with the representation of the second visual component of the second application"** (Term No. 8) is not governed by 35 U.S.C.

§ 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"device configured to: . . . detect, utilizing the at least one processor, first user input; . . . detect, utilizing the at least one processor, the second user input in connection with the representation of the second window of the second application"** (Term No. 9) is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"device configured to: present, utilizing the at least one hardware processor and the display, a first visual component of the first application . . . in response to the detection of the first user input in connection with the first visual component of the first application, present, utilizing the at least one hardware processor and the display, a representation of a second visual component . . . in response to the detection of the second user input in connection with the representation of the second visual component of the second application in the plurality of applications, present, utilizing the at least one hardware processor and the display, the second visual component of the second application"** (Term No. 25) is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"device configured to: present, utilizing the at least one processor and the display, a first window of the first application in a presentation space of the display; . . . in response to the detection of the first user input, present, utilizing the at least one processor and the display, a representation of a second window of the second application in a menu, in a particular region of the presentation space of the display, . . . in response to the detection of the second user input in connection with the representation of the second window of the second application, present, utilizing the at least**

**one processor and the display, the second window of the second application"** (Term No. 26)

is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

## L.      '838 Patent "processor configured for" terms (Group L)

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 14)** <br> "at least one processor configured for . . . in response to the third user input, change of, utilizing the screen, the presentation of the first window and the second window, such that a first size of the first window and a second size of the second window are both changed" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "in response to the third user input, change of, utilizing the screen, the presentation of the first window and the second window, such that a first size of the first window and a second size of the second window are both changed" <br> Structure: none |
| **(Term No. 29)** <br> "at least one processor configured for . . . presentation of, utilizing the screen, a plurality of application window representations . . . in response to the first user input, presentation of, utilizing the screen, a first window for presenting first data associated with the first application; . . . in response to the second user input, presentation of, utilizing the screen, a second window for presenting second data associated with the second application, adjacent to the first window associated with the first application" | Not subject to § 112, ¶ 6. (plain and ordinary meaning) | Subject to § 112, ¶ 6. Function: "presentation of, utilizing the screen, a plurality of application window representations" / "in response to the first user input, presentation of, utilizing the screen, a first window for presenting first data associated with the first application" / "in response to the second user input, presentation of, utilizing the screen, a second window for presenting second data associated with the second application, adjacent to the first window associated with the first application" <br> Structure: none |

| (Term No. 30) | Not subject to | Subject to § 112, ¶ 6. |
|---|---|---|
| "at least one processor configured for . . . detection of, utilizing the input device, a first user input; . . . detection of, utilizing the input device, a second user input; . . . detection of, utilizing the input device, a third user input" | § 112, ¶ 6. (plain and ordinary meaning) | Function: "detection of, utilizing the input device, a first [second/third] user input" Structure: none |

### 1. The Parties' Positions

The parties dispute whether the "processor configured for . . ." phrases are subject to § 112, ¶ 6.

Plaintiff contends that Defendants have not rebutted the presumption against § 112, ¶ 6 because: (1) the patentee did not clearly disavow claim scope, (2) "processor" connotes structure to a POSITA, and (3) the patentee clearly did not intend to invoke § 112, ¶ 6. Docket No. 105 at 16, 17, 19, 26 (citing Docket No. 105-15 at ¶¶ 677-687, 712-724).

Defendants respond that the terms are written in traditional means-plus-function format and fail to connote to a POSITA any structural configuration or algorithm for performing the recited functions. Docket No. 108 at 34 (citing *Williamson*, 792 F.3d at 1350; Docket No. 108-2 at ¶¶ 186-89, 197-99, 205-07). Defendants further contend that the specification lacks any disclosure of "chang[ing]" and "present[ing]" windows in response to the claimed sequence of "user inputs." *Id.* (citing Docket No. 108-2 at ¶¶ 200, 208). Defendants also argue that Plaintiff's expert's reliance on alleged "interact[ion]" between the limitations fails because the alleged "interact[ion]" does not "inform the structural character of" the "detection," "presentation," and "change" limitations. *Id.* (citing Docket No. 105-15 at ¶¶ 680, 703, 715).

For the following reasons, the Court finds that the **"processor configured for"** terms are not governed by 35 U.S.C. § 112, ¶ 6, and should be given their plain and ordinary meaning

### 2. Analysis

The disputed "processor configured for" terms appear in asserted claim 66 of the '838 Patent. Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claims do not recite the word "means." Therefore, the analysis proceeds in two steps.[23]

The Court finds that Defendants have conflated the steps in the § 112, ¶ 6 analysis. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298-1299 (Fed. Cir. 2014) ("Requiring traditional physical structure in software limitations lacking the term means would result in all of these limitations being construed as means-plus-function limitations and subsequently being found indefinite."); *Zeroclick, LLC v. Apple Inc.,* 891 F.3d 1003, 1007-09 (Fed. Cir. 2018) (holding that the district court erred by effectively treating "program" and "user interface code" as nonce words and concluding in turn that the claims recited means-plus-function limitations).

In contrast to the claims in *Williamson*, claim 66 of the '838 Patent describes the objectives and operations of the processor programmed to execute the recited algorithm. In other words, the claim language provides a description of how the processor is specifically programmed to operate. For example, the processor is programmed to present a plurality of application window representations including a second application window representation associated with the second application, and a third application window representation associated with the third application using the screen. Claim 66 further recites that the processor is programmed to detect first user input, and in response to the first user input, present a first window for presenting first data associated with the first application. Claim 66 states that the processor is programmed to detect a second user input, and in response to the second user input, present a second window for presenting

---

[23] The applicable law relating to the determination and construction of means-plus-function terms is included in the Analysis Section of "'Code For' Terms in the '361 Patent."

second data associated with the second application, adjacent to the first window associated with the first application. Claim 66 also recites that the processor is programmed to detect a third user input, and in response to the third user input, change the presentation of the first window and the second window, such that a first size of the first window and a second size of the second window are both changed.

As these claim elements illustrate, claim 66 describes the structural interactions of the processor, the screen, the input device, and the memory. The memory stores applications, and the screen is used to present a plurality of application window representations. The input device detects the input and initiates presenting the window associated with the applications. Thus, a POSITA would understand that the claim language recites sufficient structure, and that the term "processor configured for . . ." is not used as a generic term or black box recitations of structure or abstractions. *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007-09 (Fed. Cir. 2018) ("[A] person of ordinary skill in the art could reasonably discern *from the claim language* that the words '*program*,' . . . and '*user interface code*,' . . . are used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional graphical user interface programs or code, existing in prior art at the time of the inventions.") (emphasis added).

Once again, Defendants' argument is more in the nature of enablement or disclosure of corresponding structure for terms determined to be means-plus-function limitations, rather than the threshold question of whether § 112, ¶ 6 applies. *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1336 (Fed. Cir. 2008) (in evaluating a claim that was a means-plus-function limitation, stating that "[w]hether the disclosure would enable one of ordinary skill in the art to make and use the invention is not at issue here"; "[e]nablement of a device requires only the disclosure of sufficient information so that a person of ordinary skill in the art could make and use

the device" while "[a] section 112 paragraph 6 disclosure . . . serves the very different purpose of limiting the scope of the claim to the particular structure disclosed, together with equivalents").

Requiring the patent to describe precisely how the claimed functions are achieved or how a POSITA could make and use the invention goes beyond the threshold trigger for the application of § 112, ¶ 6. When § 112, ¶ 6 applies to a claim limitation and the corresponding structure is software that cannot be performed by a general-purpose computer, the patentee must provide an algorithm for the software to avoid indefiniteness. *See Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) (holding that the corresponding disclosure for a computer-implemented means-plus-function claim is an algorithm). But the algorithm requirement is only triggered when the limitation is a means-plus-function limitation under step one of the analysis. Because the Court has determined that this term is not subject to § 112, ¶ 6, there is no requirement that the claims or specification provide a specific algorithm.

In summary, although the presumption against § 112, ¶ 6 is no longer "strong," Defendants still bear the burden to affirmatively overcome the presumption. In the context of the intrinsic record for the '838 Patent, the Court finds that Defendants have not shown that the "processor configured for . . ." terms are subject to § 112, ¶ 6. Accordingly, the Court rejects Defendants' argument that the "process configured for . . ." terms are means-plus-function terms governed by § 112, ¶ 6, and finds that no further construction is required.

### 3. Court's Construction

In light of the evidence, the Court finds that the phrase **"at least one processor configured for . . . in response to the third user input, change of, utilizing the screen, the presentation of the first window and the second window, such that a first size of the first window and a second size of the second window are both changed"** (Term No. 14) is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"at least one processor configured for . . . presentation of, utilizing the screen, a plurality of application window representations . . . in response to the first user input, presentation of, utilizing the screen, a first window for presenting first data associated with the first application; . . . in response to the second user input, presentation of, utilizing the screen, a second window for presenting second data associated with the second application, adjacent to the first window associated with the first application"** (Term No. 29) is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

In light of the evidence, the Court finds that the phrase **"at least one processor configured for . . . detection of, utilizing the input device, a first user input; . . . detection of, utilizing the input device, a second user input; . . . detection of, utilizing the input device, a third user input"** (Term No. 30) is not governed by 35 U.S.C. § 112, ¶ 6, and should be given its plain and ordinary meaning.

## M.     "the application window representations are presented before the detection of the first user input" (Group N)

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 21)** "the application window representations are presented before the detection of the first user input" | Plain and ordinary meaning. | Indefinite |

### 1.   The Parties' Positions

The parties dispute whether the phrase "the application window representations are presented before the detection of the first user input" renders the claim language indefinite.

Plaintiff argues that a POSITA would find that antecedent basis exists between "the application window representations" in claim 164 and "a plurality of application window representations" in claim 1 of the '838 Patent. Docket No. 105 at 25. Plaintiff contends that the

phrase should be given its plain and ordinary meaning because Defendants have not shown by clear and convincing evidence that this phrase is invalid. *Id.* (citing Docket No. 105-15 at ¶¶ 694-697).

Defendants respond that claim 1 recites, in pertinent part, that the apparatus is configured to display a first window "in response to the first user input." Docket No. 108 at 53 (citing Docket No. 105-11 at 27:55–59). Defendants also argue that claim 153 adds the further limitation that the screen and processor are configured to "present" a "window representation group [including a plurality of application window representations] simultaneously with the first window." *Id.* (citing Docket No. 105-11 at 47:6–9). According to Defendants, claim 164 directly contradicts the required limitations of claims 1 and 153 by adding that "the apparatus is configured such that: the application window representations are presented before the detection of the first user input." *Id.* (citing Docket No. 105-11 at 48:41–43). In other words, Defendants argue that claim 164—which inherits all the features of the claims from which it depends—requires: (1) presenting a first window in response to first user input, (2) presenting an application window representation group simultaneously with the first window, and (3) presenting the application window representations before the first user input. *Id.* (citing Docket No. 108-2 at ¶¶ 214-18). Because these steps require a logical impossibility, Defendants argue, claim 164 is indefinite.

For the following reasons, the Court finds that the phrase **"the application window representations are presented before the detection of the first user input"** renders the claim **indefinite** because the claim language, viewed in light of the specification, fails to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

## 2. Analysis

The phrase "the application window representations are presented before the detection of the first user input" appears in asserted claim 164 of the '838 Patent. In the context of the surrounding claim language, the Court finds that the "before" requirement renders the claim indefinite because it is inconsistent with the limitations of the claims from which it depends. Specifically, claim 1 recites that the apparatus is configured to display a first window "in response to the first user input." '838 Patent at 27:55–59. Claim 153 adds the further limitation that the screen and processor are configured to "present" a "window representation group [including a plurality of application window representations] *simultaneously* with the first window without overlapping the first window." *Id.* at 47:6–9. Claim 164 directly contradicts these limitations by adding the requirement that "the apparatus is configured such that: the application window representations are presented *before* the detection of the first user input." *Id.* at 48:41–43. It is not possible to present the application window representation *simultaneously* with the first window *before* a user input, because the claim requires that the first window is not presented until *after* and *in response to* a user input.

Plaintiff's arguments are unpersuasive and fail to reconcile the inconsistent requirements of claim 164. Plaintiff's expert refers to the wrong independent claim (claim 66), from which claim 164 does not depend. Docket No. 105-15 at ¶¶ 692-97. His contention—that the invention of claim 164 is functional whether application window representations are presented before or after detection of first user input—contradicts the claim language. *Id.* at ¶ 696. Claim 164 requires the application window representations to be presented both before and simultaneously with the first window. Given this contradiction, a person of skill in the art would not understand the scope of the claim. '838 Patent, claims 1, 153, 164; Docket No. 108-2 at ¶¶ 214-21. Accordingly, the

Court finds that the phrase "the application window representations are presented before the detection of the first user input" renders the claim indefinite.

### 3. Court's Construction

The phrase **"the application window representations are presented before the detection of the first user input"** (Term No. 21) renders the claim **indefinite** because the claim language, viewed in light of the specification, fails to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

## N. "first window of the first application" / "application window" (Group O)

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **(Term No. 19)** "first window of the first application" / "application window" | Plain and ordinary meaning. | "a visual interface element through which a user can interact with the first application" / "a visual interface element through which a user can interact with an application" |

### 1. The Parties' Positions

The parties dispute whether the terms "first window of the first application" and "application window" require construction.

Plaintiff argues that the terms should have their plain and ordinary meaning. Docket No. 105 at 24 (citing Docket No. 105-15 at ¶¶ 287-294). Plaintiff further asserts that Defendants' proposed construction of "window" is contrary to what the patentee intended. *Id.* Plaintiff contends that Defendants' definitions will confuse the decision maker and that a POSITA does not have any problem understanding the meaning of these terms. *Id.* (citing Docket No. 105-15 at ¶¶ 287-294).

Defendants respond that there is no dispute that the claimed "window" constitutes a "visual interface element." Docket No. 108 at 49 (citing Docket No. 105-115 at ¶ 294; Docket No. 105-4 at 9:32–33). Defendants contend that the parties dispute whether the "visual interface element"

is also one through which a user can interact with an application. *Id.* Defendants argue that the disputed term recites not just a window, but a "window of the first application." *Id.* at 50. Defendants further argue that the background of the patent emphasizes that the motivation of the alleged invention is to improve the process of a user "interacting with" an application. *Id.* (citing Docket No. 105-4 at 1:44–46). Defendants contend that the specification also makes clear that there are numerous "visual interface elements" other than windows. *Id.* (citing Docket No. 105-4 at 9:33–38). According to Defendants, Plaintiff's alternative proposal fails to distinguish an "application window" from these other forms of "visual interface elements." *Id.* Finally, Defendants argue that the parties' experts agree that an "application window" is one through which a user can interact with an application. *Id.* (citing Docket No. 108-2 at ¶¶ 125-29; Docket No. 105-15 at ¶ 290).

For the following reasons, the Court finds that the terms **"first window of the first application" / "application window"** should be given their plain and ordinary meaning.

### 2. Analysis

The terms "first window of the first application" and "application window" appear in either asserted claim 4 of the '923 Patent, asserted claim 1 of the '938 Patent, asserted claim 1 of the '878 Patent, or asserted claim 52 of the '145 Patent. The Court finds that the terms are used consistently in the claims and are intended to have the same general meaning in each claim. The Court further finds the terms "first window of the first application" and "application window" are unambiguous and understandable by a jury, and should be given their plain and ordinary meaning.

Defendants argue that their construction gives meaning to each word in the claim. Docket No. 108 at 49. But Defendants fail to provide a persuasive reason for replacing the language chosen by the patentee with their preferred language. Defendants' construction implies that an element is only a "window" if the user uses it to interact with the application. The Court agrees

with Plaintiff that Defendants' proposed construction moves away from the term "window" and potentially reads an unnecessary limitation into the claim. The surrounding claim language captures the interaction of the user with the first application. Accordingly, the term will be given its plain and ordinary meaning.

Defendants contend that Plaintiff's alternative construction removes "application" from the term by construing it without any reference to the application to which the window provides access. *Id.* at 50. Defendants further argue that there are numerous "visual interface elements" other than windows, and that Plaintiff's proposal fails to distinguish an "application window" from these other forms of "visual interface elements." *Id.* The Court notes that Defendants' construction has the same flaw because any of the other "visual elements" may also allow a user to interact with the first application. Thus, Defendants' argument indicates that their construction is unnecessary and would confuse the jury. Moreover, the surrounding claim language captures the interaction of the user with the first application. Defendants also argue that Figures 6a-e "clearly illustrate windows providing access to a user to interact with an application." *Id.* The Court agrees that the figures illustrate what a juror would understand a "window" to be. But Defendants have not provided a persuasive reason to replace the understandable term "window" with their construction of "a visual interface element through which a user can interact."

Finally, the Court notes that the parties appear to agree that the plain and ordinary meaning of "window" includes a "visual interface element." Specifically, Plaintiff's expert provides an alternative construction of the phrases "first window of the first application"/ "application window" to mean "a first visual interface element." Docket No. 105-15 at 149. Thus, to the extent that a party argues that the term "window" does not include a "visual interface element," the Court rejects that argument. This is consistent with the specification, which states that "[e]xemplary

visual interface elements include windows." '938 Patent at 9:32–33. Finally, in reaching its conclusion, the Court has considered the extrinsic evidence submitted by the parties and given it its proper weight in light of the intrinsic evidence.

### 3. Court's Construction

The terms **"first window of the first application" / "application window"** (Term No. 19) will be given their plain and ordinary meaning.

## VI. CONCLUSION

The Court adopts the constructions above for the disputed and agreed terms of the Asserted Patents. The parties should ensure that all testimony regarding the terms addressed in this Order is constrained by the Court's reasoning. Further, in the presence of the jury, the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**So ordered and signed on this**
May 10, 2019

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE

**APPENDIX**

| Group – No. | Term | Court's Construction |
|---|---|---|
| A – 15 | application | A software program that performs a specific function. For example, a word processor, a database program, a web browser, or an image-editing program. |
| B – 22 | . . . presentation of . . . a first window associated with the first program component . . .<br><br>. . . creation of a second window associated with the second program component . . . | Plain and ordinary meaning |
| C – 16 | in an area that is more convenient than an area in which a desktop taskbar resides<br><br>permits a user to conveniently enter the second user input on the one of the plurality of elements of the menu corresponding to the second application for selection purposes, instead of requiring location of the second window among a clutter of different windows | Indefinite |
| E – 1 | code for detecting a user input corresponding to the first navigation control | Subject to § 112, ¶ 6<br><br>Indefinite |
| E – 2 | code for sending, in response to detecting the user input, navigation information to navigate to the second visual component | Subject to § 112, ¶ 6<br><br>Function: sending, in response to detecting the user input, navigation information to navigate to the second visual component<br><br>Corresponding Structure: a processor programmed to perform one or more of the steps for sending navigation information disclosed in the '361 Patent at 15:60–16:5 |
| E – 5 | code for presenting a first navigation control, in a first navigation region determined based on the first application region | Subject to § 112, ¶ 6<br><br>Function: presenting a first navigation control, in a first navigation region determined based on the first application region<br><br>Corresponding Structure: a processor programmed to perform one or more of the steps for presenting a navigation control disclosed in the '361 Patent at 19:54-20:2 |

| | | |
|---|---|---|
| E – 11 | code for presenting, in a first application region of a presentation space of a display device, a first visual component | Subject to § 112, ¶ 6<br><br>Indefinite |
| F – 6 | code for detecting access to the first media player to play a first media stream that includes video | Subject to § 112, ¶ 6<br><br>Indefinite |
| F – 7 | code for detecting a first media player access to a first presentation device to play a first media stream, where presentation focus information is accessible for identifying whether the first media player has first presentation focus for playing the first media stream | Subject to § 112, ¶ 6<br><br>Indefinite |
| F – 27 | code for detecting a second media player access to play a second media stream while the second media player does not have second presentation focus, where the second media stream is not played via the first presentation device while the second media player does not have second presentation focus | Subject to § 112, ¶ 6<br><br>Indefinite |
| G – 12 | A computer program product embodied on a non-transitory computer readable medium, comprising: . . .<br>code for indicating, if the first presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the first presentation device; and . . .<br><br>A computer program product embodied on a non-transitory computer readable medium, comprising . . .<br>code for indicating, if the second presentation device is to be utilized for presentation based on the presentation focus information, that the first media stream is allowed to be presented via the second presentation device; wherein the computer program product is operable such that a change in presentation focus is capable of being based on at least one of a releasing of a first presentation focus in connection with the first media player, a detected user input indication for giving the second media player a second presentation focus, a change in input focus, a change in an attribute of a user interface element, a transparency level | Subject to § 112, ¶ 6<br><br>Function: indicating that the first media stream is allowed to be presented via the first presentation device / indicating that the first media stream is allowed to be presented via the second presentation device<br><br>Structure: A processor programmed to perform one or more of the steps for indicating that the media player is allowed to play the media stream via the presentation device disclosed at '264 Patent at 13:52-14:27, 22:56-23:13, 25:17-37 or '299 Patent, 13:55-14:30, 22:58-23:16, 25:20-40. |

| | | |
|---|---|---|
| | of at least one of the user interface element, or another user interface element sharing a region of a display of the first presentation device.<br><br>code for indicating, . . . , that the first media stream is allowed to be presented via the first presentation device<br><br>code for indicating, . . . , that the first media stream is allowed to be presented via the second presentation device | |
| G – 13 | A computer program product embodied on a non-transitory computer readable medium, comprising . . . code for indicating, if the second presentation device is to be utilized for presentation based on the presentation focus information, that the second media player is allowed to play the second media stream via the second presentation device.<br><br>code for indicating, . . . that the first media player is allowed to play the first media stream via the first presentation device<br><br>code for indicating, . . . that the second media player is allowed to play the second media stream via the first presentation device<br><br>code for indicating, . . . that the first media player is allowed to play the first media stream via the second presentation device<br><br>code for indicating, . . . that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device | Subject to § 112, ¶ 6<br><br>Function: indicating . . . that the first media player is allowed to play the first media stream via the first presentation device / indicating . . . that the second media player is allowed to play the second media stream via the first presentation device / indicating . . . that the second media player is allowed to play the second media stream via the second presentation device / indicating . . . that the first media player is allowed to play the first media stream via the second presentation device / indicating . . . that the first media player is allowed to play the first media stream via both the first presentation device and the second presentation device<br><br>Structure: A processor programmed to perform one or more of the steps for indicating that the media player is allowed to play the media stream via the presentation device disclosed at '264 Patent at 13:52-14:27, 22:56-23:13, 25:17-37; '299 Patent, 13:55-14:30, 22:58-23:16, 25:20-40; or '731 Patent at 13:55-14:30, 22:58-23:16, 25:20-40. |
| H – 31 | instructions to . . . in response to the first user input, present, utilizing the touchscreen, a first window associated with the first application simultaneously with a first menu with a plurality of first menu-related items<br><br>instructions to . . . in response to the fourth user input, present, utilizing the touchscreen, a second window | Not subject to § 112, ¶ 6<br><br>(Plain and ordinary meaning) |

| | | |
|---|---|---|
| | instructions to . . . in response to the first user input, present, utilizing the touchscreen, a first window associated with the first application simultaneously with a first reduced application window group with a plurality of first reduced application window group-related windows | |
| H – 17 | instructions to . . . in response to the second user input, change, utilizing the touchscreen, the presentation of the first menu item and the second menu item<br><br>instructions to . . . in response to the third user input, change, utilizing the touchscreen, the presentation of the first menu related items and the first window associated with the first application | Not subject to § 112, ¶ 6<br><br>(Plain and ordinary meaning) |
| H – 32 | instructions to . . . detect a [first / second / third / fourth] user input<br><br>instructions to . . . detect, utilizing the touchscreen, a [first / second / third / fourth] user input | Not subject to § 112, ¶ 6<br><br>(Plain and ordinary meaning) |
| I – 33 | instructions to: . . . indicate . . . that the first media stream is allowed to be presented via the first presentation device<br><br>instructions to: . . . indicate . . . that the first media stream is allowed to be presented via the second presentation device | Subject to § 112, ¶ 6<br><br>Function: indicate . . . that the first media stream is allowed to be presented via the first presentation device / indicate . . . that the first media stream is allowed to be presented via the second presentation device<br><br>Structure: A processor programmed to perform one or more of the steps for indicating that the media stream is allowed to be presented via the presentation device disclosed at '558 Patent at 7-50, 23:24-49, 25:55-26:9. |
| I – 18 | instructions to: in response to the detection of the selection of the at least one first input control presented with the first media player, cause presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player<br><br>instructions to . . . detect, while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, a selection | Not subject to § 112, ¶ 6<br><br>(Plain and ordinary meaning) |

| | | |
|---|---|---|
| | of the at least one second input control presented with the second media player

instructions to . . . in response to the detection of the selection of the at least one second input control presented with the second media player while the first media stream is being presented via the first presentation device and the second presentation device utilizing the first media player, cause a pause of the presentation of the first media stream via the first presentation device and the second presentation device utilizing the first media player, and cause presentation of the second media stream via the first presentation device and the second presentation device utilizing the second media player | |
| J – 10 | code configured to . . . utilize the at least one processor to determine if the first user input is predetermined to cause menu display | Not subject to § 112, ¶ 6

(Plain and ordinary meaning) |
| J – 23 | code configured to . . . utilize the display to display a first window of the first application

code configured to . . . utilize the display to display a menu in a first location with respect to a location of the first window

code configured to . . . utilize the display to display the menu in a second location with respect to the location of the first window

code configured to . . . utilize the display to at least one of move or re-size the first window of the first application, in response to the second user input

code configured to . . . utilize the display to at least one of move or re-size the elements of the menu, in response to the second user input

code configured to . . . utilize the display to display a second window of the second application of the plurality of applications, in response to the third user input | Not subject to § 112, ¶ 6

(Plain and ordinary meaning) |
| J – 24 | code configured to . . . utilize the at least one input device to receive first user input | Not subject to § 112, ¶ 6 |

| | | |
|---|---|---|
| | code configured to . . . utilize the at least one input device to receive second user input for at least one of moving or re-sizing the first window of the first application

code configured to . . . utilize the at least one input device to receive third user input on one of the plurality of elements of the menu corresponding to the second application | (Plain and ordinary meaning) |
| J – 28 | code configured to . . . utilize the memory to store a plurality of applications | Not subject to § 112, ¶ 6

(Plain and ordinary meaning) |
| K – 8 | device configured to . . . detect, utilizing the at least one hardware processor, first user input

device configured to . . . detect, utilizing the at least one hardware processor, second user input in connection with representation of the second visual component of the second application | Not subject to § 112, ¶ 6

(Plain and ordinary meaning) |
| K – 9 | device configured to . . . detect, utilizing the at least one processor, first user input

device configured to . . . detect, utilizing the at least one processor, the second user input in connection with the representation of the second window of the second application | Not subject to § 112, ¶ 6

(Plain and ordinary meaning) |
| K – 25 | device configured to . . . present, utilizing the at least one hardware processor and the display, a first visual component of the first application

device configured to . . . in response to the detection of the first user input in connection with the first visual component of the first application, present, utilizing the at least one hardware processor and the display, a representation of a second visual component

device configured to . . . in response to the detection of the second user input in connection with the representation of the second visual component of the second application in the plurality of applications, present, utilizing the at least one hardware processor and the display, the second visual component of the second application | Not subject to § 112, ¶ 6

(Plain and ordinary meaning) |

| K – 26 | device configured to . . . present, utilizing the at least one processor and the display, a first window of the first application in a presentation space of the display | Not subject to § 112, ¶ 6 |
| | | (Plain and ordinary meaning) |
| | device configured to . . . in response to the detection of the first user input, present, utilizing the at least one processor and the display, a representation of a second window of the second application in a menu, in a particular region of the presentation space of the display | |
| | device configured to . . . in response to the detection of the second user input in connection with the representation of the second window of the second application, present, utilizing the at least one processor and the display, the second window of the second application | |
| L – 14 | at least one processor . . . configured for . . . in response to the third user input, change of, utilizing the screen, the presentation of the first window and the second window, such that a first size of the first window and a second size of the second window are both changed | Not subject to § 112, ¶ 6 |
| | | (Plain and ordinary meaning) |
| L – 29 | at least one processor . . . configured for . . . presentation of, utilizing the screen, a plurality of application window representations | Not subject to § 112, ¶ 6 |
| | | (Plain and ordinary meaning) |
| | at least one processor . . . configured for . . . in response to the first user input, presentation of, utilizing the screen, a first window for presenting first data associated with the first application | |
| | at least one processor . . . configured for . . . in response to the second user input, presentation of, utilizing the screen, a second window for presenting second data associated with the second application, adjacent to the first window associated with the first application | |
| L – 30 | at least one processor . . . configured for . . . detection of, utilizing the input device, a [first / second / third] user input | Not subject to § 112, ¶ 6 |
| | | (Plain and ordinary meaning) |
| M – 3 | navigation element handler component that . . . detects a user input corresponding to the first navigation control | Subject to § 112, ¶ 6 |
| | | Indefinite |

| M – 4 | navigation director component that . . . sends, in response to detecting the user input, navigation information to navigate to the second visual component | Subject to § 112, ¶ 6<br><br>Function: sends, in response to detecting the user input, navigation information to navigate to the second visual component<br><br>Corresponding Structure: a processor programmed to perform one or more of the steps for sending navigation information disclosed in the '361 Patent at 15:60–16:5 |
| --- | --- | --- |
| N – 21 | the application window representations are presented before the detection of the first user input | Indefinite |
| O – 19 | first window of the first application<br><br>application window | Plain and ordinary meaning |