# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| CYPRESS LAKE SOFTWARE, INC.<br><br>*Plaintiff,*<br><br>vs.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. and DELL INC.,<br><br>*Defendants.* | No. 6:18-cv-00030-JDK<br>**LEAD CONSOLIDATED CASE**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS SAMSUNG ELECTRONICS AMERICA, INC.'S AND DELL INC's MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S TECHNICAL EXPERT DR. <u>AVIEL D. RUBIN RELATED TO APPORTIONMENT ISSUES</u>**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**
**CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY**

## TABLE OF CONTENTS

I.    Introduction .................................................................................................................. 1

II.   Factual Background ..................................................................................................... 1

III.  Applicable Legal Standards .......................................................................................... 4

IV.   Argument ...................................................................................................................... 5

    A.  Dr. Rubin's Apportionment Opinions Are Not the Product of Reliable Principles and Methods—*Or Any Methodology At All*—and his Opinions Should Therefore be Excluded under Fed. R. Evid. 702(c) ........................................ 5

    B.  Dr. Rubin's Apportionment Opinions Do Not Satisfy Any of the *Daubert* Factors ................................................................................................................... 8

    C.  Dr. Rubin's Apportionment Opinions, Which are Divorced from the Facts of the Case, are Contrary to Federal Circuit Precedent ................................................. 10

V.    Conclusion .................................................................................................................. 12

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**
**CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY**

## TABLE OF AUTHORITIES

| CASES | PAGE(S) |
|---|---|

*ART+COM Innovationpool GmbH v. Google Inc.*,
   155 F. Supp. 3d 489 (D. Del. 2016) ................................................................... 10

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015) ........................................................................ 10

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ................................................................................. *passim*

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ........................................................................ 11

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ................................................................... 11, 12

*Hathaway v. Bazany*,
   507 F.3d 312 (5th Cir. 2007) ............................................................................. 8

*In re IH 1, Inc.*,
   2015 WL 5679724 (D. Del. Sept. 25, 2015) .................................................. 6, 10

*Kinergy Corp. v. Conveyor Dynamics Corp.*,
   2003 WL 26110512, (E.D. Mo. Oct. 14, 2003) ................................................. 8

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ............................................................................................ 4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) .............................................................................. 6

*M2M Solutions LLC v. Enfora, Inc.*,
   167 F.Supp.3d 665 (D. Del. 2016) ................................................................... 10

*Moore v. Ashland Chem. Inc.*,
   51 F.3d 269 (5th Cir. 1998) ............................................................................... 4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   904 F.3d 965, 977 (Fed. Cir. 2018) ................................................................. 11

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ................................................................................................ *passim*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**
**CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY**

## EXHIBIT LIST

| Exhibits | Documents |
|---|---|
| Exhibit 1 | Excerpts of Rubin Expert Report on Infringement to Samsung ("Rubin SEA Rep.") |
| Exhibit 2 | Excerpts of Rubin Expert Report on Infringement to Dell ("Rubin Dell Rep.") |
| Exhibit 3 | Excerpts of the July 10 Deposition Transcript of Dr. Rubin ("Rubin July 10 Tr.") |

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER
CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY

## I.   INTRODUCTION

Defendants Samsung and Dell hereby move to exclude the testimony of Plaintiff Cypress Lake Software, Inc.'s technical expert, Dr. Aviel Rubin, related to apportionment issues on the grounds that his opinions are based on no methodology at all. Rather, his opinions on this issue are subjective, untested, unscientific, and arbitrary—contrary to all the requirements of Federal Rule of Evidence 702. This is a textbook case for application of *Daubert*'s exclusionary rule.

Additionally, the same apportionment opinions appear **verbatim** in each of Dr. Rubin's expert reports to Samsung and Dell, despite the fact that different patents with different claims are asserted against each of these defendants and different classes of products are accused in each—smartphones and tablets in the Samsung case, and laptop computers in the Dell case. (Ex. 1, Rubin SEA Rep., ¶¶ 199-208; Ex. 2, Rubin Dell Rep., § VIII, ¶¶ 1-10.)[1] Thus, Dr. Rubin's apportionment opinions are untethered to the facts and contrary to Federal Circuit precedent, and should be excluded for this independent reason.

## II.   FACTUAL BACKGROUND

Cypress' technical expert, Dr. Rubin, offers unsupported economic opinions regarding the valuation of the patents-in-suit, particularly in connection with apportionment issues—i.e., determining what portion of the value of a commercial product is attributable to the patented technology. Dr. Rubin's expert reports to both Samsung and Dell include a section entitled "Apportionment of Value" in which he reaches conclusions regarding the supposed "features and benefits" of two types of third-party products ("casting dongles" and applications for presenting

---

[1] For convenience, Defendants cite below to only one of Dr. Rubin's reports herein, the Samsung Rubin Report, Ex. 1. But to be clear, Defendants seek exclusion of the entirety of the "Apportionment of Value" section in both reports. (Ex. 1, Rubin SEA Rep., ¶¶ 199-208; Ex. 2, Rubin Dell Rep., § VIII, ¶¶ 1-10.)

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER
CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY

multiple windows on a smartphone or tablet). Cypress' damages expert then relies on Dr. Rubin's flawed opinions to form the basis for apportionment in Cypress' damages case.[2]

Dr. Rubin first describes a "Presentation Focus Feature" which he identifies in an unaccused third-party product, the Wifi Display Dongle Miracast product. Dr. Rubin does not explain: (i) the selection criteria used for identifying the Miracast dongle, (ii) how the dongle relates to the asserted patent claims, or (iii) how it differs from the accused functionality in Defendants' products. (Ex. 1, Rubin SEA Rep., ¶¶ 199–200.) However, Dr. Rubin purports to opine on the degree to which the asserted claims of what he refers to as the "Presentation Focus Cluster" of patents purportedly read on the Wifi Display Dongle Miracast product. He does this by identifying a list of features in that third-party product and, for each, providing values for a "Weight of Feature," "Contribution of Patents to value," and "Apportionment of Patents in suit," as shown in the below table from Dr. Rubin's report:

| Feature Analysis of Casting Dongles | | | |
|---|---|---|---|
| List of Features | Weight of Feature | Contribution of Patents to value | Apportionment of Patents in suit |
| Ability to Present content on a second screen | 25% | 15% | 3.75% |
| Presenting on a screen without using a cord | 15% | 0% | 0% |
| Multiple presenters can present from multiple devices | 15% | 15% | 2.25% |
| Must have focus to play video | 10% | 20% | 2% |
| Ability to remotely control videos from first screen | 25% | 33% | 8.25% |
| Not showing the video on the first screen | 10% | 50% | 5% |
| Total Benefit | 100% | | 21.25% |

---

[2] Defendants have concurrently filed a motion to exclude the testimony of Cypress' damages expert, Walter Bratic, to the extent it relies on Dr. Rubin's flawed opinions.

(*Id.* at ¶ 203.)

Dr. Rubin offers similar unsupported opinions on the "Split-Screen Feature."  Here, he discusses two third-party software applications, "Multi-Window Pro … [and] Dual-Browser - Split Screen Browser."  (*Id.* at ¶¶ 204-05.)  As with the dongle he selected for the "Presentation Focus Feature," Dr. Rubin does not explain: (i) the selection criteria used for the "Split-Screen Feature" apps he considered, (ii) how the apps relate to the asserted patent claims, or (iii) how the apps differ from the accused functionality.  Dr. Rubin, nevertheless, goes on to opine on "a weighting of the relative technical contributions of the 'Split-Screen Cluster'" of asserted patents to each product feature,[3] in the same manner as above:

| Feature Analysis of Split-Screen Apps | | | |
|---|---|---|---|
| *List of Features* | *Weight of Feature* | *Contribution of Patents to value* | *Apportionment of Patents in suit* |
| Access two apps simultaneously | 70% | 100% | 70% |
| Swipe gestures for navigation | 5% | 0% | 0% |
| Ease of use | 15% | 50% | 7.5% |
| Increased productivity | 10% | 50% | 5% |
| Total Benefit | 100% | | 82.5% |

(*Id.* at ¶¶ 204, 208.)  As explained in his report, Dr. Rubin selected the values in the tables above based not on any discernible methodology, but instead based solely on his purported "experience and training." (*Id.* at ¶¶ 201, 206.)

---

[3] Dr. Rubin's report does not define the Split-Screen Cluster in his report.  At his deposition, he identified them as the '923, '938, '145, '838, and '954 patents. (Ex. 3, Rubin July 10 Tr., 165:4-18.)  Only the '954 patent is asserted against Dell; complementarily, only the other four patents (not the '954 patent) are asserted against Samsung. (Ex. 3, Rubin July 10 Tr., 163:6-9.)

3

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**
**CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY**

Moreover, these values do not in any way account for the fact that, as between the Dell and Samsung cases, both the asserted patents and the accused products are different. In the Samsung case, U.S. Patent Nos. 9,423,923; 9,423,938; 9,870,145; 9,823,838; and 9,817,558 are asserted against Samsung smartphone and tablet products. In the Dell case, U.S. Patent Nos. 8,422,858; 9,817,558; 8,983,264; 8,781,299; and 9,423,954 are asserted against Dell—i.e., just a single common patent ('558) is asserted against both Samsung and Dell, with no common patent claims— and the accused Dell products are laptop computers. (*See, e.g.*, Dkt. Nos. 177 and 181). In Dr. Rubin's "Presentation Focus Cluster," for example, Cypress asserts claims 1, 3, 6, and 9 of the '858 patent and claims 1, 14, and 24 of the '558 patent against Dell. (*Id.*) Against Samsung, Cypress asserts only one claim: claim 17 of the '558 patent. (*Id.*)

### III. APPLICABLE LEGAL STANDARDS

Under the Federal Rules of Evidence, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue," be "based on sufficient facts or data," and be "the product of reliable principles and methods" that are "reliably applied . . . to the facts of the case." Fed. R. Evid. 702(a)-(d). In applying these standards, district courts are charged to act as "gatekeepers" to ensure that expert testimony is reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The proponent of the expert testimony bears the burden of establishing the opinions are reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

*Daubert* identifies various non-exclusive factors for determining whether expert testimony is admissible under Rule 702. These include: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subject to peer review and publication; (3) the known or potential rate of error; and (4) whether the technique is generally accepted. 509

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER
CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY

U.S. at 593-94. "One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).

IV.   **ARGUMENT**

    A.   **Dr. Rubin's Apportionment Opinions Are Not the Product of Reliable Principles and Methods—*Or Any Methodology At All*—and his Opinions Should Therefore be Excluded under Fed. R. Evid. 702(c)**

Dr. Rubin's opinions on apportionment are not based on any methodology at all. Because the opinions are not "the product of reliable principles and methods," as required by Fed. R. Evid. 702(c), they should be excluded.

The results of Dr. Rubin's apportionment analysis are the values found in two tables in his expert report (shown above). (Ex. 1, Rubin SEA Rep., ¶¶ 203, 208.) These are the values for his identified "Weight of Feature," "Contribution of Patents to value," and "Apportionment of Patents in suit," which are the ultimate conclusions of his analysis and which are, in turn, relied upon by Cypress' damages expert. The critical inquiry here is *how* Dr. Rubin arrived at these values.

***Dr. Rubin plucked these values from thin air***. The values that populate Dr. Rubin's two apportionment charts were chosen without any objective measures, scientific rigor, approach or methodology, or evaluation process. The process for selecting of those numbers cannot be duplicated, reverse-engineered, gut-checked, or at all tested for accuracy. Dr. Rubin's report contains no analysis explaining how he selected those numbers; it skips from explaining the exercise to stating his conclusion with no facts or reasoning to substantiate the numbers. (*See id.* at ¶¶ 200-203, 205-208.) At his deposition, Dr. Rubin testified that he merely relied on his "experience" and "thought process" to "derive the numbers":

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER
CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY**

> Q. You didn't employ any particular scientific methodology to arrive at these weightings, did you?
>
> THE WITNESS: Again, I -- *I used my experience and thought process to derive these numbers*.
>
> Q. So in that sense it's something of a subjective analysis?
>
> Q. Is that right?
>
> A. *It's subjective*, but it's based on years of experience.

(Ex. 3, Rubin July 10 Tr., 169:25-174:16 (objection omitted).)[4]

The Federal Circuit makes clear that numbers that "appear[] to have been plucked out of thin air based on vague qualitative notions of the relative importance of the [patented technology]" must be rejected. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012). This is exactly what Dr. Rubin has done—plucked his valuations out of thin air with "no explanation provided as to why the numbers are chosen." *In re IH 1, Inc.,* 2015 WL 5679724, at *4 (D. Del. Sept. 25, 2015)

During his deposition, Dr. Rubin was asked repeatedly to describe the underlying methodologies he employed to arrive at these figures. And, repeatedly, Dr. Rubin answered simply that his conclusions were based on his "thought process" and "experience." (*See, e.g.,* Ex. 3, Rubin July 10 Tr. 181:5-11, 192:10-11 ("I used my experience and my thought process"), 201:2-5 ("I used my years of experience in the field, my thought process, my discussion with colleagues [i.e., his litigation team] to determine values for this table.").) And when further pressed on whether he employed any "scientific methodology," Dr. Rubin testified as follows:

> Q. *You didn't employ any particular scientific methodology* to arrive at these weightings, did you?
>
> A. Again, I – *I used my experience and thought process to devise these numbers*.

---

[4] All emphases are added unless otherwise noted.

(Ex. 3, Rubin July 10 Tr. 181:5-11 (objection omitted).)

As just one example of how he arrived at these numbers, for the "ease of use" feature listed in his Feature Analysis of Split-Screen Apps table, Dr. Rubin selected a 50% value for his "Contribution of Patents to value" column in his analysis of the split-screen apps. (Ex. 1, Rubin SEA Rep., ¶ 208.) He described the entirety of his "analysis" as follows:

> Q. For this one, you assigned a value of 50 percent for the column contribution of patents to value. How did you arrive at 50 percent?
>
> A. Again, I – I used my expertise and experience and I thought about how much the contribution of the patents are to ease of use; for example, if you think about working in an environment where you have a split screen and a divider that you can slide, how much easier to use is that than when you don't have that, and I decided that the contribution there was 50 percent.

(Ex. 3, Rubin July 10 Tr., 195:10-24.) He arrived at all of the numbers in his apportionment charts in this same way. (*Id.* at 169:25-171:11, 181:9-182:6.) All thirty of the values in the charts for his identified "Weight of Feature," "Contribution of Patents to value," and "Apportionment of Patents in suit" are, therefore, just as arbitrary and unsupported.

Even the setup and basic premise for his number-selecting exercise was without any reasoned methodology. The opinions contain no principled evaluation of the third-party products that he identifies. For example, Dr. Rubin does not explain the basis and criteria for selecting the products that he did, why the identified products are more relevant to these cases than other products, or how that determination was made. He also does not establish that these third-party products are covered by any of the asserted patents, or why they are even germane to either case. (*See id.* at 188:17-190:1 ("This part of my work was not an infringement analysis").)

In the end, Dr. Rubin perhaps put it best himself when he described his approach as "a method of thinking about it and using my experience and talking about it with my colleagues and

7

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER
CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY

coming up with numbers." (*Id*. at 192:25-193:3, 182:1-4.) "Thinking about it" and "coming up with numbers" is not a scientific method—it is *ipse dixit* that must be excluded. "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). As one court explained when holding an expert's "thought process" an inadmissible methodology:

> At the *Daubert* hearing, after considerable wrangling with counsel on the issue of his subjective analysis, [the expert] concluded that the only process he utilized to come up with his conclusions was to look at the machines, ***go through a thought process in his head, and write his report. What is called his methodology is in reality his conception of whatever he wants it to be***. Thus, it is obvious that his opinions are based only upon his subjective beliefs and unsupported speculation. It is not based on anything that can be measured or compared.

*Kinergy Corp. v. Conveyor Dynamics Corp*., 2003 WL 26110512, at *26 (E.D. Mo. Oct. 14, 2003)

*Daubert* requires the Court to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid…." 509 U.S. at 592-593. Based on the complete lack of methodology and science in Dr. Rubin's opinions, they should be excluded.

### B. Dr. Rubin's Apportionment Opinions Do Not Satisfy Any of the *Daubert* Factors

The factors identified in *Daubert* and the related case law further support exclusion of Dr. Rubin's apportionment opinions:

***Dr. Rubin's technique is not generally accepted in the scientific community***. "[I]dentification of a relevant scientific community and an express determination of a particular degree of acceptance within that community" of the methods used can have a bearing on the admissibility inquiry. *Daubert*, 509 U.S. at 593. Because Dr. Rubin could not articulate any methodology, his approach is necessarily not generally accepted in the scientific community. In fact, Dr. Rubin conceded that he devised his approach during his work on this case. (Ex. 3, Rubin July 10 Tr., 200:9-10.) He also repeatedly testified that he "did not perform any scientific surveys,"

8

and was relying instead on, e.g., "anecdotal experience." (*Id*. at 145:19-23, 146:7-12, 146:7-21, 147:7-11.)

***Dr. Rubin's method has not been subjected to peer review or publication***. "Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication." *Daubert*, 509 U.S. at 593. Dr. Rubin agreed that his thought process for arriving at the values in his apportionment tables has never been subjected to peer review or publication. (*Id*. at 181:20-182:4, 197:16-22.)

***Dr. Rubin's method cannot be, and has never been, tested.*** "[A] key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593. Dr. Rubin's subjective opinions cannot be tested. When pressed during his deposition about whether it is possible for a third party to test his analysis, Dr. Rubin offered that, "a third party could interview me and look at my resume and decide whether or not they like the answer that I gave." (*Id*. at 198:8-11.) Of course, that is not the sort of scientific rigor contemplated by Rule 702.

***Dr. Rubin could not identify a potential error rate for his method***. "[I]n the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error." *Daubert*, 509 U.S. at 594. Because his method has never been objectively employed, Dr. Rubin could not identify a potential error rate. (Ex. 3, Rubin July 10 Tr., 174:18-175:17, 185:12-186:12.)

***Dr. Rubin's technique was devised specifically for his testimony in this case***. "One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert*, 43

9

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER
CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY

F.3d at 1317. Dr. Rubin conceded that he devised his approach specifically for his testimony in this case—yet another factor in favor of exclusion. (Ex. 3, Rubin July 10 Tr., 200:9-10.)

Dr. Rubin's opinions on apportionment fail every one of the factors described in *Daubert* and commonly used by trial judges to decide whether they can, in their role as gatekeeper, allow expert testimony to be presented to a jury. Dr. Rubin's apportionment opinions included no analysis, and no discernible methodology, beyond his admittedly subjective number-picking. The opinions should be excluded. As the Federal Circuit explains, "given the great financial incentive parties have to exploit the inherent imprecision in patent valuation, courts must be proactive to ensure that the testimony presented—using whatever methodology—is sufficiently reliable to support a damages award." *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.,* 809 F.3d 1295, 1301 (Fed. Cir. 2015); *see also M2M Solutions LLC v. Enfora, Inc.,* 167 F.Supp.3d 665, 678 (D. Del. 2016) ("Without any meaningful analysis, [experts'] conclusions of technological comparability are nothing more than *ipse dixit*."); *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 515–16 (D. Del. 2016) (rejecting number from expert where "[t]here is no document that supports this number, nor is there any calculation" and he "states the result of an analysis, not the method from which that result is obtained"); *IH 1,* 2015 WL 5679724, at *4 (rejecting expert's opinion where he "seems to pick numbers out of a hat. (At least, there is no explanation provided as to why the numbers are chosen.)").

    **C.**    **Dr. Rubin's Apportionment Opinions, Which Are Divorced From the Facts of the Case, Are Contrary to Federal Circuit Precedent**

Setting aside the utter lack of methodology, another significant flaw in Dr. Rubin's apportionment opinions is that they are contrary to Federal Circuit precedent because they are not tethered to the different facts of these two different cases against Samsung and Dell.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**
**CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY**

A reasonable royalty award "must be based on the incremental value that the patented invention adds to the ***end product***." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). "The patentee must in every case give evidence tending to separate or apportion … damages between the patented feature and the unpatented features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson*, 773 F.3d at 1226. Importantly, this apportionment "must be reliable and tangible, and not conjectural or speculative." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310 (Fed. Cir. 2018).

Dr. Rubin's effort to apportion the contribution of the asserted patents to the accused functionality fails, by definition, because his apportionment analysis and the values that result are ***identical*** for both Samsung and Dell. Dr. Rubin does not account for the entirely different classes of products—smartphones and tablets as to Samsung, and laptop computers as to Dell—that are alleged to infringe in each case. Dr. Rubin also fails to take into account that different patents are asserted against Samsung and Dell—not a single patent claim is commonly asserted against both Samsung and Dell, and only one common patent, U.S. Patent 9,817,558, is asserted, with four patents asserted against just Samsung and two others against just Dell.

Even in the common '558 patent, the sole claim asserted against Samsung is a dependent claim of a claim asserted against Dell. Thus, the Samsung-asserted claim is by definition narrower than its Dell counterpart, *see* 35 U.S.C. § 112(d), not to mention the six other claims asserted against Dell. Yet Dr. Rubin treats both cases exactly the same in his apportionment opinions—a point he conceded during his deposition. (Ex. 3, Rubin July 10 Tr., 208:1-18.) Dr. Rubin even

admitted that *he did not account for the accused products at all* in his apportionment exercise. Instead, he compared the asserted patents to arbitrary third-party products. (*Id.* at 204:22-25.)

A well-reasoned opinion regarding apportionment, and the values derived therefrom, that is properly tied to the facts of the cases against Samsung and Dell could not possibly result in the exact same analysis and numbers—given that smartphones, tablets, and laptops have different uses, different non-accused features, and any relative value of the accused features to the products as a whole will be different across each of the product categories. (*See* Ex. 1, Rubin SEA Rep., ¶¶ 44-55 (describing the Samsung accused phones and split screen functionality); Ex. 2, Rubin Dell Rep., ¶¶ 42-65 (describing the Dell accused Chromebooks and casting functionality).) And given Dr. Rubin's failure to provide any methodology behind the numbers, there is no explanation offered for how the apportionment values could be the same despite all of the fundamental differences as to asserted patents and accused products. Dr. Rubin clearly has not "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(d).

Accordingly, because Dr. Rubin's apportionment analysis fails to result in assessing damages based on only the patented features of the accused products—or any features at all, to the exclusion of unpatented features—the opinions should be excluded. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310 (Fed. Cir. 2018).

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court exclude the proffered testimony of Cypress' expert Dr. Rubin on issues of apportionment.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER
CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY**

Dated: July 22, 2019

/s/ Neil P. Sirota

Neil P. Sirota
neil.sirota@bakerbotts.com
Robert L. Maier
robert.maier@bakerbotts.com
Aaron H. Jagoda
aaron.jagoda@bakerbotts.com
Albert J. Boardman
albert.boardman@bakerbotts.com
BAKER BOTTS LLP
30 Rockefeller Plaza, 44th Floor
New York, NY 10112

Timothy S. Durst
SBN: 00786924
tim.durst@bakerbotts.com
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, TX 75201

Katharine Mary Burke
katharine.burke@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave. NW, #120
Washington, DC 20004

Michael E. Jones (SBN: 10929400)
mikejones@potterminton.com
POTTER MINTON
110 N. College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311

Sasha Mayergoyz
smayergoyz@jonesday.com
JONES DAY
77 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 782-3939

**Attorneys for Defendant Samsung Electronics America, Inc.**

/s/ Krista S. Schwartz

Krista S. Schwartz
Krista.Schwartz@hoganlovells.com
Hogan Lovells US LLP
3 Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 374-2300

Sasha Mayergoyz
smayergoyz@jonesday.com
JONES DAY
77 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 782-3939

Michael E. Jones
SBN: 10929400
mikejones@potterminton.com
POTTER MINTON
110 N. College, Suite 500
Tyler, Texas 75702

Deron R. Dacus
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701

Roger J. Fulghum
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002

**Attorneys for Defendant Dell Inc.**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER
CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY

### CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the parties have complied with the meet and confer requirement in Local Rule CV-7(h). On July 18, 2019, a telephonic "meet and confer" between counsel for all parties occurred concerning the relief sought in this motion. The attendees who participated in that conference include the following: Randall Garteiser for Plaintiff Cypress Lake; Neil Sirota and Mike Jones for Defendant Samsung; and Sasha Mayergoyz and Mike Jones for Defendant Dell. Follow up emails were exchanged on July 19, 2019. Counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by this motion. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Neil P. Sirota*
Neil P. Sirota

### CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and supporting materials are authorized to be filed under seal pursuant to the Protective Order entered in this matter.

*/s/Neil P. Sirota*
Neil P. Sirota

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record are being served with a copy of this document via electronic mail on July 22, 2019.

*/s/Neil P. Sirota*
Neil P. Sirota