# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| CYPRESS LAKE SOFTWARE, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:18-cv-0030-JDK |
| SAMSUNG ELECTRONICS AMERICA, INC. | § § § | (LEAD CONSOLIDATED CASE) |
| Defendant. | § § § | |
| CYPRESS LAKE SOFTWARE, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:18-cv-00138-JDK |
| DELL INC. | § § § | |
| Defendant. | § § § | |

**DEFENDANTS SAMSUNG ELECTRONICS AMERICA, INC. AND DELL INC. JOINT *DAUBERT* MOTION TO EXCLUDE DR. RUBIN FROM TESTIFYING REGARDING SECONDARY CONSIDERATIONS OF <u>COMMERCIAL SUCCESS AND LONG-FELT NEED</u>**

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ASSERTED CLAIMS ..................................................................................................... 2

III. LEGAL STANDARDS ................................................................................................... 3

    A. Rule 702 And *Daubert* ........................................................................................ 3

    B. Secondary Considerations Require A Nexus To The Asserted Claims ................ 3

IV. DR. RUBIN'S OPINIONS ON "COMMERCIAL SUCCESS" FAIL *DAUBERT'S* RELIABILITY TEST ...................................................................................................... 4

    A. Dr. Rubin Admits The Accused Devices Are Not Co-Extensive With The Asserted Claims And Fails To Address Any Of The Asserted Claims ................. 5

    B. Dr. Rubin Has No Evidentiary Basis For Concluding That The Claimed Inventions Have A Nexus To The Alleged Commercial Success .......................... 7

V. DR. RUBIN'S OPINIONS ON LONG-FELT NEED FAIL *DAUBERT'S* RELIABILITY TEST ...................................................................................................... 10

    A. Dr. Rubin's Opinions On Long-Felt Need Contain No Analysis Of The Asserted Claims ................................................................................................... 10

    B. Dr. Rubin's Opinions On Long-Felt Need Are Devoid Of Factual Support ........ 10

VI. CONCLUSION .............................................................................................................. 11

██████████████████████████

# TABLE OF AUTHORITIES

**CASES**   **PAGE(S)**

*ABT Sys., LLC v. Emerson Elec. Co.*,
   797 F.3d 1350 (Fed. Cir. 2015)..................................................................10

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010).....................................................................7

*Cot'n Wash, Inc. v. Henkel Corp.*,
   56 F. Supp. 3d 626 (D. Del. Aug. 26, 2014), *aff'd sub nom.*, *Cot'n Wash Inc. v. Sun Prod. Corp.*, 606 F. App'x 1009 (Fed. Cir. 2015) ...............................4

*Datatreasury Corp. v. Wells Fargo & Co.*,
   2010 U.S. Dist. LEXIS 150694 (E.D. Tex. Feb. 26, 2010) ............................4

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ..................................................................................3, 8

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
   851 F.2d 1387 (Fed. Cir. 1988).....................................................................5

*General Electric Co. v. Joiner*,
   522 U.S. 136 (1997) .....................................................................................2

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966).........................................................................................4

*In re Cree, Inc.*,
   818 F.3d 694 (Fed. Cir. 2016).......................................................................9

*In re Huang*,
   100 F.3d 135 (Fed. Cir. 1996).......................................................................9

*Johnson v. Arkema, Inc.*,
   685 F.3d 452 (5th Cir. 2012) ........................................................................3

*Lutron Elecs. Co. v. Crestron Elecs., Inc.*,
   970 F. Supp. 2d 1229 (D. Utah 2013)...........................................................9

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995).....................................................................1, 7

*Media Techs. Licensing, LLC v. Upper Deck., Co.*,
   596 F.3d 1334 (Fed. Cir. 2010)..................................................................................10

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006)....................................................................................6

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
   587 F.3d 1324 (Fed. Cir. 2009)..................................................................................11

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)....................................................................................1

*Rambus, Inc. v. Hynix Semiconductor, Inc.*,
   254 F.R.D. 597 (N.D. Cal. 2008)....................................................................4, 8, 9, 10

*Sonos, Inc. v. D & M Holdings Inc.*,
   297 F. Supp. 3d 501 (D. Del. 2017)..............................................................................8

*The Medicines Co. v. Mylan Inc.*,
   2014 WL 1227214 (N.D. Ill. March 25, 2014)............................................................4

*Vandenberg v. Dairy Equip. Co.*,
   740 F.2d 1560 (Fed. Cir. 1984)....................................................................................4

*WesternGeco LLC v. ION Geophysical Corp.*,
   889 F.3d 1308 (Fed. Cir. 2018)....................................................................................1

**OTHER AUTHORITIES**

FED. R. EVID. 702..............................................................................................................3, 8, 11

██████████████████████████

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Excerpts from Rebuttal Expert Report of Dr. Aviel D. Rubin Re: Expert Report of Dr. Dan Schonfeld on Behalf of Dell Regarding Invalidity of U.S. Patent Nos. 8,422,858 and 9,817,558 and Re: Expert Report of Dr. Dan Schonfeld on Behalf of Samsung Regarding Invalidity of U.S. Patent No. 9,817,558, dated July 1, 2019 |
| B | Excerpts from Dr. Aviel Rubin's Deposition Transcript dated July 11, 2019 |

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

## I. INTRODUCTION

Defendant Samsung Electronics America, Inc. ("SEA") and Defendant Dell Inc. ("Dell") move to exclude Dr. Aviel Rubin, Plaintiff Cypress Lake Software, Inc.'s ("Cypress") technical expert, from testifying regarding secondary considerations of commercial success and long-felt need at trial. In seeking to overcome Defendants' showing that the asserted claims would have been obvious, Dr. Rubin opines that (1) the accused devices are commercially successful, and (2) the claimed inventions solved a long-felt but unmet need. But in relying on secondary considerations of non-obviousness, Cypress bears the burden of showing a "sufficient nexus between the *claimed invention*" and the secondary consideration. *WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1330 (Fed. Cir. 2018).[1] Dr. Rubin skips this threshold requirement.

Nowhere in Dr. Rubin's opinions on these secondary considerations does he address the claimed inventions as defined by the asserted claims, let alone explain how those asserted claims drive commercial success or solve a long-felt need. Instead, Dr. Rubin improperly relies on "general teachings" from the specifications of the asserted patents as a substitute for the actual claimed inventions. "[I]t is a bedrock principle of patent law that the claims of a patent define the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 12 (Fed. Cir. 2005). "[T]he specification itself does not delimit the right to exclude. That is the function and purpose of claims." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*). By failing to discuss, let alone analyze, any asserted claim in his opinions on commercial success and long-

---

[1] Emphasis added and internal quotations and citations omitted throughout unless indicated otherwise.

1

felt need, Dr. Rubin has not even attempted to satisfy the threshold nexus. This is reason alone to exclude his opinions.

Dr. Rubin's opinions are inadmissible for additional reasons—he admits that any commercial success of the accused devices is not co-extensive with the claimed inventions. (Ex. A at ¶¶ 240, 256.) He concedes that the alleged commercial success of the accused devices is only *"tied, in part,"* to the asserted claims. (*Id.* at ¶¶ 245, 251, 260, 266.) Despite these admissions, Dr. Rubin leaps to the unfounded conclusion that "the claimed inventions are incrementally important, and there exists a nexus between the patented inventions and the commercial success enjoyed by the infringing devices." (*Id.* at ¶¶ 240, 256.) Yet Dr. Rubin never addresses the actual claims; he does not explain how he determined that any of the claimed inventions are incrementally important to the accused devices; he never quantifies what incremental value any of the claimed inventions provide; and he never undertakes any analysis of whether any claimed invention is associated with any demand for the accused devices.

Instead, Dr. Rubin offers conclusory opinions that are unsubstantiated by any supporting facts or data. Speaking to such conclusory opinions, the Supreme Court instructs that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## II.    ASSERTED CLAIMS

Cypress asserts twelve claims against SEA, none of which are specifically discussed in Dr. Rubin's opinions on commercial success and long-felt need: (1) claim 17 of U.S. Patent No. 9,817,558 ("the '558 patent") from what Cypress calls the "presentation focus" patent family; (2) claims 9, 10, and 12 of U.S. Patent No. 9,423,923 ("the '923 patent"); (3) claims 7, 10, 15, 23,

and 28 of U.S. Patent No. 9,423,938 ("the '938 patent"), (4) claims 180 and 198 of U.S. Patent No. 9,823,838 ("the '838 patent"); and (5) claim 13 of U.S. Patent No. 9,870,145 ("the '145 patent") from what Cypress calls the "split-screen" patent family.[2]

Likewise, Dr. Rubin fails to discuss any of the asserted claims against Dell in his opinions on commercial success and long-felt need: (1) claims 1, 14, and 24 of the '558 patent; (2) claims 1, 3, 6, and 9 of U.S. Patent No. 8,422,858 ("the '858 patent") from the "presentation focus" family; and (3) claim 14 of U.S. Patent No. 9,423,954 ("the '954 patent") from the "split-screen" patent family.

### III. LEGAL STANDARDS

#### A. Rule 702 And *Daubert*

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Federal Rule of Evidence 702 empowers trial judges to act as "gatekeepers" to ensure that expert testimony is "not only relevant, but reliable." *Id.* at 589. Expert testimony is admissible only if it: (1) "will help the trier of fact," (2) "is based on sufficient facts or data," (3) "is the product of reliable principles and methods," and (4) "the expert reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. The party offering the expert's opinion "must prove by a preponderance of the evidence that the testimony is reliable." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).

#### B. Secondary Considerations Require A Nexus To The Asserted Claims

Secondary considerations of non-obviousness are one factor that may be considered to

---

[2] Defendants do not agree with Cypress's description of the two patent families, but adopt Cypress's terminology only for purposes of this motion.

3

determine whether an asserted claim would have been obvious. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). Secondary considerations include the commercial success of products that practice the claimed invention and a long-felt but unmet need for the claimed invention. *Id.* The law is clear that a "nexus must be established between the merits of the claimed invention" and any alleged secondary consideration "before that issue becomes relevant to the issue of obviousness." *Vandenberg v. Dairy Equip. Co.*, 740 F.2d 1560, 1567 (Fed. Cir. 1984).

Failure to establish a nexus between any alleged secondary consideration and the claimed invention warrants exclusion of an expert's testimony. *Datatreasury Corp. v. Wells Fargo & Co.*, 2010 U.S. Dist. LEXIS 150694 at *54-56 (E.D. Tex. Feb. 26, 2010) (excluding expert testimony on commercial success for failure to establish nexus to claimed invention); *Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 626, 650 (D. Del. Aug. 26, 2014), *aff'd sub nom.*, *Cot'n Wash Inc. v. Sun Prod. Corp.*, 606 F. App'x 1009 (Fed. Cir. 2015) ("Because no nexus has been demonstrated between the commercial success of the [accused] products and the '319 patent's 7.5% water content limitation, the court excludes [the experts'] testimony regarding commercial success."); *The Medicines Co. v. Mylan Inc.*, 2014 WL 1227214 at *4-6 (N.D. Ill. March 25, 2014) (excluding expert testimony on commercial success for failure to establish nexus between claimed invention and increased sales or market share); *Rambus, Inc. v. Hynix Semiconductor, Inc.*, 254 F.R.D. 597, 608 (N.D. Cal. 2008) (excluding commercial success opinion for failure to "link [expert's] testimony back to why specific claimed inventions are, in his opinion, not obvious").

IV. **DR. RUBIN'S OPINIONS ON "COMMERCIAL SUCCESS" FAIL *DAUBERT'S* RELIABILITY TEST**

Dr. Rubin's opinions on commercial success are unreliable because: (1) he admits that any commercial success of the accused devices is not co-extensive with the claimed inventions;

4

(2) he does not tie the claimed inventions as defined by the asserted claims to the alleged commercial success of the accused devices; (3) instead, he improperly ties the alleged commercial success to the "general teachings" of the asserted patents; and (4) he nonetheless concludes—without facts, data, or any evidentiary basis—that a nexus exists because the claimed inventions are somehow "incrementally important" to the accused devices. (Ex. A at ¶¶ 240, 256.) Dr. Rubin's opinions on commercial success are pure *ipse dixit* that cannot be cured by cross examination at trial.

### A. Dr. Rubin Admits The Accused Devices Are Not Co-Extensive With The Asserted Claims And Fails To Address Any Of The Asserted Claims

By Dr. Rubin's own admission, the accused devices are **not co-extensive** with the claimed inventions. As Dr. Rubin concedes, "obviously there are many features in a smartphone, and thus no single feature drives the entire demand or beneficial value to a user":

> In my opinion, the technical aspects of the claimed inventions contribute to the sales and market success of the accused devices. *Although obviously there are many features in a smartphone, and thus no single feature drives the entire demand or beneficial value to a user, the claimed inventions are incrementally important, and there exists a nexus between the patented inventions and the commercial success enjoyed by the infringing devices.*

(Ex. A at ¶¶ 240, 256) Dr. Rubin also admits that the alleged commercial success of the accused devices are (at best) only *"tied, in part,"* to the claimed inventions. (*Id.* at ¶¶ 245, 251, 260, 266.)

"When the thing that is commercially successful is not coextensive with the patented invention—for example, if the patented invention is only a component of a commercially successful machine or process—the patentee *must show prima facie a legally sufficient relationship between that which is patented and that which is sold.*" *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). Dr. Rubin has made no such

5

showing, nor can he because he failed to address the claimed inventions as defined by the asserted claims.

"Evidence of commercial success … is only significant if there is a nexus between the *claimed invention* and the commercial success." Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311-12 (Fed. Cir. 2006). "[I]f the commercial success is due to an unclaimed feature of the device," then any alleged "commercial success is irrelevant" because the invention did not drive the success. *Id.* at 1312. "So too if the feature that creates the commercial success was known in the prior art, the success is not pertinent." *Id.*

Despite the fundamental predicate of analyzing the "claimed invention" for purposes of commercial success, Dr. Rubin does not analyze the asserted claims, much less explain how the asserted claims drive the sales of the accused devices. (Ex. A at ¶¶ 235–266) (no analysis of any asserted claim of any asserted patents). Instead, Dr. Rubin relies on the "general teachings" from the specifications as a substitute for the actual claimed inventions:

> The '558 Patent, for example, *generally teaches* prioritization of a device's presentation focus, and also enables the seamless casting of various media from multiple devices. These teachings prevent videos from simultaneously playing over one another on a user's device, eliminate the need for a user to manually pause one video on their device in order to play another, allow users to cast multiple forms of media onto a shared presentation device without playing over one another simultaneously, allow collaboration between multiple users utilizing the same presentation device, and enable a user to set down and pick up different forms of media in a presentation. *Such features are not trivial or irrelevant in the context of the overall functionality of an infringing device; rather, in my opinion, they are technological features which a meaningful segment of the purchasing public would seek out in making purchasing decisions.*

*Id.* at ¶ 241; ¶ 246 (referring to *general teachings* of the split-screen patents asserted against SEA); ¶ 257 (referring to *general teachings* of '558 patent asserted against Dell); ¶ 261 (referring

6

to *general teachings* of '954 patent asserted against Dell).[3]

It is hornbook law that "the specification itself does not delimit the right to exclude. That is the function and purpose of claims." *Markman*, 52 F.3d at 980. "Claims define and circumscribe, the written description discloses and teaches." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1347 (Fed. Cir. 2010) (en banc). By failing to discuss any asserted claim in his opinion on commercial success, Dr. Rubin has not even attempted to satisfy the threshold nexus. This is reason alone to exclude his opinions.

### B. Dr. Rubin Has No Evidentiary Basis For Concluding That The Claimed Inventions Have A Nexus To The Alleged Commercial Success

Dr. Rubin offers no facts or data to support his ultimate conclusion that a nexus exists supposedly because "the claimed inventions are incrementally important" to the accused devices and "the technical aspects of the claimed inventions contribute to the sales and market success of the accused devices." (Ex. A at ¶¶ 240, 256.) Instead, Dr. Rubin summarily concludes:

> In my opinion, the technical aspects of the claimed inventions contribute to the sales and market success of the accused devices. Although obviously there are many features in a smartphone, and thus no single feature drives the entire demand or beneficial value to a user, the claimed inventions are incrementally important, and there exists a nexus between the patented inventions and the commercial success enjoyed by the infringing devices.

(*Id.*) Nor does Dr. Rubin cite any evidence to support his conclusion that the asserted claims provide technological features that "a meaningful segment of the purchasing public would seek out in making purchasing decisions." (Ex. A at ¶¶ 241, 246, 257, 264.) Dr. Rubin simply states this as his unsupported opinion:

> Such features are not trivial or irrelevant in the context of the

---

[3] The only claim Dr. Rubin mentions in his commercial success opinions is unasserted claim 14 of the '954 patent against Dell, for which he only discusses generally without pointing to any claim limitations. (*See* Ex. A at ¶¶ 261-266).

7

> overall functionality of an infringing device; rather, in my opinion, they are technological features which a meaningful segment of the purchasing public would seek out in making purchasing decisions.

(*Id.*) This is pure *ipse dixit* that must be rejected under *Daubert* and Rule 702.

Dr. Rubin provides no analysis as to how he reached these conclusory opinions. He does not quantify how much success is attributable to the claimed inventions. Dr. Rubin does not even attempt to quantify what the supposed "incremental" value is. Further, Dr. Rubin cites no evidence and performs no analysis as to whether and how much the claimed inventions contribute to customer demand. Likewise, Dr. Rubin does not identify or quantify what he means by a "meaningful segment of the purchasing public," and he fails to cite any evidence or identify any methodology that he performed to substantiate that opinion. Absent from Dr. Rubin's report is any explanation that corroborates the relationship between the asserted claims and the relevant markets for smartphones, tablets, and laptops. While Dr. Rubin may be familiar with the technical features of the asserted patents, that does not mean he has any reason to know that the claimed inventions had anything to do with the commercial success of the accused devices. *See Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 512 (D. Del. 2017) (excluding opinion on commercial success because expert "may well be familiar with the technical features of [the accused product]," but that "does not mean that he has any reason to know, without reference to any supporting evidence" that the claimed invention "was the primary reason for the commercial success"). Dr. Rubin's "subjective belief" and "unsupported speculation" without any underlying "methods and procedures of science" is inadmissible. *Daubert*, 509 U.S. at 590.

District courts routinely exclude such conclusory and unsupported opinions. For example, in *Rambus*, the district court precluded an expert for testifying about commercial

8

[REDACTED]

success when "it is clear from [the expert's] report that he did no analysis. His reasoning appears to be: the Manufacturers' *products incorporate [the] claimed inventions; those products have been successful; ergo [the] inventions caused the products' success.*" *Rambus*, 254 F.R.D. at 605. Likewise, in *Lutron*, the district court excluded expert opinion on commercial success because an "expert must be qualified to do more than state a product incorporates a claimed invention; the product is successful; therefore the invention must have caused the commercial success." *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229, 1239 (D. Utah 2013). Dr. Rubin's opinion is functionally identical to the flawed opinions excluded in *Rambus* and *Lutron*.

Finally, Dr. Rubin's reference to survey and marketing materials cannot redeem his opinions. Dr. Rubin makes no attempt to tie those materials to the claimed functionality in the asserted claims themselves. (Ex. A at ¶¶ 241, 246, 248, 250.) Dr. Rubin characterizes one survey as indicating that Samsung [REDACTED]

[REDACTED] Even assuming that the survey may have related to casting functionality in general, Dr. Rubin concedes that the "concept of casting is -- is *not* the invention of these two ['558 and '858] patents." (Ex. B at 441:22-23.) Rather, Dr. Rubin recognizes that "there are elements in the asserted claims beside just mirroring or casting." (*Id.* at 443:4-5.) Dr. Rubin, however, has not shown "a correlation between the claimed invention and the sales numbers." *In re Cree, Inc.*, 818 F.3d 694, 703 (Fed. Cir. 2016). Thus, "his characterization of a nexus is 'nothing more than an allegation or a conclusory statement.'" *Id.*; *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) ("[Patentee] simply has not carried his burden to prove that a nexus existed between any commercial success and the novel features claimed in the application" because the

9

patentee had no evidence "that the sales were a direct result of the unique characteristics of the claimed invention.").

## V. DR. RUBIN'S OPINIONS ON LONG-FELT NEED FAIL *DAUBERT'S* RELIABILITY TEST

Dr. Rubin's conclusory and unreliable opinions on "long-felt need" should also be excluded as unreliable given the absence of (1) any analysis of the asserted claims, and (2) any factual support.

### A. Dr. Rubin's Opinions On Long-Felt Need Contain No Analysis Of The Asserted Claims

As with commercial success, evidence of long-felt need must correspond to the claimed invention. *ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1362 (Fed. Cir. 2015) (requiring evidence of long-felt need to correspond with the asserted claims and rejecting such evidence where it "ignores the scope of claim 1"); *Media Techs. Licensing, LLC v. Upper Deck., Co.*, 596 F.3d 1334, 1338 (Fed. Cir. 2010) (evidence of long-felt need must correspond to claimed invention). Dr. Rubin makes no mention of the asserted claims anywhere in his opinions on long-felt need. This is reason alone to exclude those opinions.

### B. Dr. Rubin's Opinions On Long-Felt Need Are Devoid Of Factual Support

The entirety of Dr. Rubin's opinions on long-felt need are limited to two paragraphs with no identification of any objective evidence of long-felt need, such as prior art, industry literature, or reaction in the marketplace. (Ex. A at ¶¶ 186-187). "A sufficient showing should include some minimum effort to survey industry publications or consider the efforts of multiple persons in the field to solve" an alleged problem. *Rambus*, 254 F.R.D. at 608. Dr. Rubin's report provides none of this. Instead, Dr. Rubin refers generally to self-serving teachings from the specification of the asserted patents and concludes without evidence that "users (prior to the

10

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**
**CONFIDENTIAL AND RESTRICTED—ATTORNEYS' EYES ONLY**

inventions by Mr. Morris) were frustrated" and "[t]he need for these solutions is apparent." (Ex. A at ¶¶ 186-187.) (merely referring to specification of asserted '558 and '923 patents). Likewise, he simply refers to his validity opinions generally and those of Cypress's other expert, Rahul Vihj, with "no evidence to explain how long this need was felt, or when the problem first arose." *Id.*; *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1332 (Fed. Cir. 2009).

The Federal Circuit requires that "long-felt need [be] analyzed as of the date of an articulated problem and evidence of efforts to solve that problem." *Perfect Web*, 587 F.3d at 1332. Dr. Rubin's opinions are devoid of any such evidence or analysis. The absence of facts or data in Dr. Rubin's long-felt need opinions cannot be "the product of reliable principles or methods" or "help the trier of fact." FED. R. EVID. 702. This Court should therefore exclude Dr. Rubin's unreliable and unsupported opinions on long-felt need.

## VI.     CONCLUSION

For the foregoing reasons, this Court should exclude Dr. Rubin's opinions on commercial success and long-felt need in their entirety for failing to pass the test for reliability under *Daubert* and Rule 702.

Dated: July 22, 2019

/s/ *Neil P. Sirota, with permission by Michael E. Jones*

Neil P. Sirota
neil.sirota@bakerbotts.com
Robert L. Maier
robert.maier@bakerbotts.com
Aaron H. Jagoda
aaron.jagoda@bakerbotts.com
Albert J. Boardman
albert.boardman@bakerbotts.com
BAKER BOTTS LLP
30 Rockefeller Plaza, 44th Floor
New York, NY 10112

Timothy S. Durst
SBN: 00786924
tim.durst@bakerbotts.com
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, TX 75201

Katharine Mary Burke
katharine.burke@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave. NW, #120
Washington, DC 20004

Michael E. Jones (SBN: 10929400)
E. Glenn Thames (SBN: 00785097)
Patrick C. Clutter (SBN: 24036374)
POTTER MINTON
110 N. College, Suite 500
Tyler, Texas 75702
mikejones@potterminton.com
glennthames@potterminton.com
patrickclutter@potterminton.com

Sasha Mayergoyz
smayergoyz@jonesday.com
JONES DAY
77 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 782-3939

/s/ *Sasha Mayergoyz, with permission by Michael E. Jones*

Krista S. Schwartz
Krista.Schwartz@hoganlovells.com
Hogan Lovells US LLP
3 Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 374-2300

Sasha Mayergoyz
smayergoyz@jonesday.com
Rita J. Yoon
ryoon@jonesday.com
JONES DAY
77 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 782-3939

Michael E. Jones (SBN: 10929400)
E. Glenn Thames (SBN: 00785097)
Patrick C. Clutter (SBN: 24036374)
POTTER MINTON
110 N. College, Suite 500
Tyler, Texas 75702
mikejones@potterminton.com
glennthames@potterminton.com
patrickclutter@potterminton.com

Deron R. Dacus
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701

Roger J. Fulghum
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002

**Attorneys for Defendant Dell Inc.**

**Attorneys for Defendant Samsung Electronics America, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on July 22, 2019.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on July 22, 2019.

/s/ Michael E. Jones

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ Michael E. Jones

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the parties have complied with the meet and confer requirement in Local Rule CV-7(h). On July 18, 2019, a telephonic "meet and confer" between counsel for all parties occurred concerning the relief sought in this motion. The attendees who participated in that conference include the following: Randall Garteiser for Plaintiff Cypress Lake; Neil Sirota and Mike Jones for Defendant Samsung; and Sasha Mayergoyz and Mike Jones for Defendant Dell. Follow up emails were exchanged on July 19, 2019. Counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by this motion. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/Sasha Mayergoyz

/s/ Michael E. Jones